IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEMOCRACY NORTH CAROLINA,      )
THE LEAGUE OF WOMEN VOTERS      )
OF NORTH CAROLINA,             )
DONNA PERMAR, JOHN P. CLARK,   )
MARGARET B. CATES,             )
LELIA BENTLEY, REGINA WHITNEY  )
EDWARDS, ROBERT K. PRIDDY II,  )
SUSAN SCHAFFER, and            )
WALTER HUTCHINS,               )
                               )
          Plaintiffs,          )
                               )
     v.                        )          1:20CV457
                               )
THE NORTH CAROLINA STATE       )
BOARD OF ELECTIONS,            )
DAMON CIRCOSTA, in his         )
official capacity as CHAIR     )
OF THE STATE BOARD OF          )
ELECTIONS, STELLA ANDERSON,    )
in her official capacity as    )
SECRETARY OF THE STATE         )
BOARD OF ELECTIONS,            )
KEN RAYMOND, in his official   )
capacity as MEMBER OF THE      )
STATE BOARD OF ELECTIONS,      )
JEFF CARMON III, in his        )
official capacity as MEMBER    )
OF THE STATE BOARD OF          )
ELECTIONS, DAVID C. BLACK,     )
in his official capacity as    )
MEMBER OF THE STATE BOARD      )
OF ELECTIONS, KAREN BRINSON    )
BELL, in her official          )
capacity as EXECUTIVE          )
DIRECTOR OF THE STATE BOARD    )
OF ELECTIONS, THE NORTH        )
CAROLINA DEPARTMENT OF         )

TRANSPORTATION, J. ERIC          )
BOYETTE, in his official         )
capacity as TRANSPORTATION       )
SECRETARY, THE NORTH             )
CAROLINA DEPARTMENT OF           )
HEALTH AND HUMAN SERVICES,       )
and MANDY COHEN, in her          )
official capacity as             )
SECRETARY OF HEALTH AND          )
HUMAN SERVICES,                  )
                                 )
                Defendants.      )
                                 )
        and                      )
                                 )
PHILIP E. BERGER, in his         )
official capacity as             )
PRESIDENT PRO TEMPORE OF THE     )
NORTH CAROLINA SENATE, and       )
TIMOTHY K. MOORE, in his         )
official capacity as SPEAKER     )
OF THE NORTH CAROLINA HOUSE      )
OF REPRESENTATIVES,              )
                                 )
        Defendant-Intervenors.   )


## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

Defendants Philip E. Berger and Timothy K. Moore ("Legislative Defendants") have filed two related motions. The first motion requests leave to take depositions prior to a hearing on Plaintiffs' motion for preliminary injunction. (Doc. 49.) In the second motion, Legislative Defendants move to strike declarations filed with Plaintiffs' reply brief to their amended motion for preliminary injunction or, alternatively, to be

- 2 -

granted leave to depose the declarants or for leave to file a surreply. (Doc. 77.)

I.    <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

    A.    <u>**Factual Background**</u>

Democracy North Carolina and the League of Women Voters of North Carolina (the "Organizational Plaintiffs") are alleged to be nonpartisan organizations "dedicated to increasing voter access and participation" in the election process. (Second Am. Complaint ("2nd Am. Compl.") (Doc. 30) ¶¶ 14–15.) The individual Plaintiffs are nearly all identified as registered voters who intend to vote in the November 2020 election. (<u>Id.</u> ¶¶ 16–23.) Each of the individual Plaintiffs who plan on voting are subject to health issues which either directly affect their ability to vote or which are alleged to place them at high risk from COVID-19 if required to exercise their right to vote under the current election process. (<u>See</u> <u>id.</u> ¶¶ 16–22.)

Plaintiffs seek a preliminary injunction prohibiting Defendants from "administering and enforcing for the November 3, 2020, general election" the following statutes:

> i.   N.C. Gen. Stat. §§ 163-82.6(d) and 163-82.20(g), (h), imposing 25-day voter registration deadlines;
>
> ii.  N.C. Gen. Stat. § 163-230.2(a), requiring requests for absentee ballots be made by a form created by the State Board of Elections;

- 3 -

> iii. N.C. Gen. Stat. § 163-230.2(a)(4), (f), to the
>       extent that it limits the proof of residency
>       documents that voters must submit with their
>       absentee ballot request forms to only a North
>       Carolina driver's license number, special
>       identification card number, or the last four
>       digits of his or her Social Security number, and
>       instead allow election officials to accept any
>       proof of residency document acceptable under the
>       Help America Vote Act (HAVA);
>
> iv.  N.C. Gen. Stat. §§ 163-226.3(a)(4),
>       163-226.3(a)(5), 163-226.3(a)(6), 163-230.2(e)(4),
>       163-231(a), and 163-231(b)(1), imposing
>       restrictions on assistance for absentee ballot
>       request return, absentee ballot marking and
>       completion, and absentee ballot submission;
>
> v.   N.C. Gen. Stat. § 163-231(a) as amended by HB
>       1169, Session Law 2020-17, An Act to Make Various
>       Changes to the Laws Related to Elections and To
>       Appropriate Funds to the State Board of Elections
>       in Response to the Coronavirus Pandemic, imposing
>       the witness certification requirement;
>
> vi.  N.C. Gen. Stat. § 163-227.6(c), requiring uniform
>       hours in precincts; and
>
> vii. N.C. Gen. Stat. § 163-42(b) as amended by HB
>       1169, requiring poll workers to come from the
>       county in which they serve.

(Pls.' Amended Mot. for Preliminary Injunction ("Pls.' Am.

Mot.") (Doc. 31) at 4-6.)[1] Plaintiffs also request mandatory

injunctive relief requiring extension of the voter registration

deadline, expansion of online voter registration, contactless

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

drop boxes, and telephone absentee ballot requests, among others. (Id. at 6-8.)

Additional facts will be addressed as necessary in the analysis of the evidence.

### B. **Procedural History**

Plaintiffs filed their original complaint on May 22, 2020, challenging various election laws in light of the issues caused by COVID-19. (Doc. 1.) On June 5, 2020, Plaintiffs filed an Amended Complaint, (Doc. 8), and a motion for preliminary injunction, (Doc. 9), accompanied by a brief and declaration in support of that motion, (Docs. 10, 11, 12). The original defendants named in the complaints are all state executive organizations and officials ("Executive Defendants"), who were served with process and entered an appearance through counsel. (Docs. 6, 13, 14, 91.) Thereafter, the Legislative Defendants moved to intervene, (Doc. 16), and, by orders entered June 12 and June 15, 2020, that motion was allowed. (Text Order 06/12/2020; Order (Doc. 26).)

On June 18, 2020, Plaintiffs filed a Second Amended Complaint, (Doc. 30), and an Amended Motion for Preliminary Injunction, (Pls.' Am. Mot. (Doc. 31)). Plaintiffs did not file a new brief or new declarations, instead choosing to rest on the

supporting brief and declarations, (Docs. 10, 11, 12), filed on
June 5, 2020. (See Pls.' Am. Mot. (Doc. 31) at 8.)

Plaintiffs requested expedited briefing and consideration
of the motion. (See, e.g., Doc. 9 at 7.) In accordance with that
request, the parties submitted a joint status report and
briefing schedule, requesting a hearing on the preliminary
injunction on July 2, 7, or 8. (Doc. 18.)

After the parties filed extensive briefs in response to the
motions for preliminary injunction, (Docs. 51, 58, 74), this
court held a hearing on July 1, 2020, to set a hearing date. At
that hearing, the parties tentatively agreed to a hearing during
which only oral argument would be presented. (Minute Entry
07/01/2020). That agreement appeared to moot Legislative
Defendants' motion for leave to take depositions, (Doc. 49).
However, on July 2, 2020, Plaintiffs filed a number of new
declarations in support of their reply. (See Doc. 73.) On
Monday, July 6, Legislative Defendants filed the motion to
strike those declarations or, in the alternative, to take
discovery or file a surreply. (Doc. 77.) It does not appear
Legislative Defendants' original request for discovery, (Doc.
49), is moot as was originally believed on July 1.

Plaintiffs, on multiple occasions, have argued that these
motions filed by Legislative Defendants are dilatory tactics.

- 6 -

(See Doc. 61 at 5 ("[T]he Intervenors' belated discover[y] request would almost certainly delay the preliminary injunction hearing."); Plaintiffs' Opp'n to Motion to Strike ("Pls.' Strike Resp.") (Doc. 80) at 19 ("Such measures are not only unnecessary and unwarranted—they appear designed entirely to cause delay."), and 21 (The "motion to strike appears purely dilatory.").) This court has carefully reviewed Plaintiffs' arguments and finds they are without merit. Legislative Defendants have raised substantive issues of significant concern to the court and those issues do have merit as will be explained herein.

This court finds the motions are neither unjustifiably filed nor unwarranted, nor do these motions reflect dilatory intent on the part of Legislative Defendants. The original Complaint may have been filed on May 22, 2020, (Doc. 1), but the motion for preliminary injunction was not filed until June 5, 2020, (Doc. 9). Plaintiffs also filed the amended motion for preliminary injunction and a second amended complaint on June 18, 2020, (Docs. 30, 31), such that the issues Plaintiffs raise have only been justiciable for a period of less than three weeks. Briefing on the motion for preliminary injunction, based upon a schedule agreed-to by the parties, concluded on July 3, 2020.

## II.  <u>ANALYSIS</u>

The court will first address Legislative Defendants' Motion for Leave to Take Depositions in Advance of the Preliminary Injunction Hearing, (Doc. 49), which the court construes as a motion for prehearing discovery ("Leg. Defs.' Discovery Mot.") (Doc. 49), and will address Legislative Defendants' Motion to Strike, ("Leg. Defs.' Mot. to Strike") (Doc. 77)).

### A.  <u>Legislative Defendants' Motion for Prehearing Discovery</u>

Plaintiffs responded to the Legislative Defendant's motion requesting leave to take discovery. (Doc. 61.) In that response, Plaintiffs argue that LR 65.1(b) anticipates a preliminary injunction will be decided upon the papers and does not mention discovery. (<u>Id.</u> at 2-3.) Plaintiffs further argue a preliminary injunction should not require preparation for trial, (<u>id.</u> at 3-4), and that the motion was made late by parties allowed permissive intervention, (<u>id.</u> at 4-5). These arguments are not persuasive.

LR 65.1, upon which Plaintiffs rely to suggest discovery should not be permitted, is not persuasive because Plaintiffs rely upon a narrow interpretation of the rule. The rule does not, nor is it intended to, limit whether discovery and/or an evidentiary hearing are necessary; that matter is left to the court. LR 65.1(b) provides in full:

- 8 -

> **(b) Hearing.** A motion seeking a preliminary injunction will be considered and determined on the official court file including affidavits, briefs and other documents filed in support thereof without oral argument or testimony unless otherwise ordered by the Court. A request for leave to present oral argument or testimony in support of or in opposition to such motion must be included in the motion or response.

LR 65.1(b). The rule "govern[s] practice in the District Court for the Middle District of North Carolina consistent with the Federal Rules of Civil Procedure." LR 1.1. LR 65.1 therefore must be read consistently with Fed. R. Civ. P. 65. Fed. R. Civ. P. 65(a)(2) provides:

> Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

Fed. R. Civ. P. 65(a)(2). This court does not find LR 65.1 or Fed. R. Civ. P. 65 provides a substantive reason to reject Legislative Defendants' request for discovery.

Fed. R. Civ. P. 43(c) states that when a court takes evidence on a motion, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions. When read together, LR 65.1, Fed. R. Civ. P. 65 and 43 all permit a preliminary injunction hearing to proceed to a ruling on the merits by consideration of the official court file, on

- 9 -

oral testimony or depositions, or by advancing to trial on the merits and consolidating it with the preliminary injunction hearing. Legislative Defendants' request for discovery is consistent with, and supported by, the processes available to resolve a motion for preliminary injunction.

Nor do Plaintiffs' alternative arguments suggest Legislative Defendants' request for discovery should be rejected on other procedural grounds. Legislative Defendants are parties to this case and entitled to make a reasonable request for an evidentiary hearing and related discovery. The fact that they were permitted to intervene does not dictate otherwise. Furthermore, Legislative Defendants' motion was not made late, it was timely; it was made the day before their response was due and filed, <u>see</u> LR 65.1, and was made at a time when it appears none of the parties had resolved the issue of whether an evidentiary hearing was necessary, (<u>see e.g.</u>, Doc. 18 at 2-3).

Furthermore, Legislative Defendants make a compelling argument in support of their request for discovery. Specifically, Legislative Defendants argue:

> allowing the requested depositions to proceed will help ensure that the Court is deciding Plaintiffs' motion for a preliminary injunction . . . on a full and complete record that has been subjected to the adversarial process and in which Legislative Defendants have had a fair opportunity to rebut the case being mounted against the election laws the General Assembly has passed. "Any time a State is

- 10 -

enjoined by a court from effectuating statutes enacted
by representatives of its people, it suffers a form of
irreparable injury." Maryland v. King, 567 U.S. 1301
(2012) (Roberts, C.J. in chambers) (cleaned up).
Before the Court considers whether to enjoin any of
the statutes enacted by the General Assembly, it
should be sure that it has before it as complete a
record as possible as to the impact of and necessity
for the requested injunctive relief — not just the
facts and opinions that Plaintiffs have chosen to
selectively offer.

(Leg. Defs.' Discovery Mot. (Doc. 49) at 4.) Plaintiffs have not

disputed this argument by Legislative Defendants.

However, even though this court finds that argument

compelling, the argument does not fully address the standard

this court should apply to a discovery request prior to a

hearing on the preliminary injunction. A district court in South

Carolina has persuasively described the standard as follow:

According to the Federal Rules of Civil
Procedure, "[a] party may not seek discovery from any
source before the parties have conferred as required
by Rule 26(f), except . . . when authorized by these
rules, by stipulation, or by court order." Fed. R.
Civ. P. 26(d)(1). The Court has discretion when
deciding matters related to the timing and scope of
discovery. See Fed. R. Civ. P. 26(b) & (d). When
presented with a motion to commence discovery prior to
the Rule 26(f) conference, courts generally apply a
reasonableness or good-cause standard, taking into
account the totality of the circumstances in which the
motion is presented. See Dimension Data N. Am., Inc.
v. NetStar-1, Inc., 226 F.R.D. 528, 531 (E.D.N.C.
2005); 8A Charles Alan Wright, Arthur R. Miller &
Richard L. Marcus, Federal Practice and Procedure
§ 2046.1 (3d ed. 2010). Factors considered under the
reasonableness test include: "(1) whether a
preliminary injunction is pending; (2) the breadth of
the discovery requests; (3) the purpose for requesting

- 11 -

the expedited discovery; (4) the burden on the
defendants to comply with the requests; and (5) how
far in advance of typical discovery process the
request was made." Disability Rights Council of
Greater Washington v. Washington Metro. Area Transit
Auth., 234 F.R.D. 4, 6 (D.D.C. 2006).

JTH Tax, Inc. v. M & M Income Tax Serv., Inc., C/A No. 6:13-CV-
00265-GRA, 2013 WL 460316, at *2 (D.S.C. Feb. 6, 2013).

    With respect to the factors described in JTH Tax, there is
no dispute that a preliminary injunction is pending, nor is
there any dispute that the request is made in advance of the
typical discovery process contemplated by Fed. R. Civ. P. 26.
Before turning to the remaining factors, this court will turn to
Legislative Defendants' motion to strike the declarations filed
in support of Plaintiffs' reply brief (the "Reply" (Doc. 73)).

## B.    **Legislative Defendants' Motion to Strike Declarations Filed in Support of the Reply**

    On July 2, Plaintiffs' filed nine declarations in support
of their Reply. (Doc. 73.) Those declarations included seven
declarations supplementing original declarations filed in
support of the motion for preliminary injunction, (Docs. 11,
12), in addition to two new declarations. (See Doc. 73.) In
response to those declarations, Legislative Defendants filed a
motion to strike the declarations or, alternatively, for
discovery and/or the opportunity to file a surreply. (Doc. 77.)

- 12 -

Fed. R. Civ. P. 6 requires that "[a]ny affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c)(2). "[A]ny opposing affidavit must be served at least 7 days before the hearing, unless the court permits otherwise." Id. The rule does not, however, address, or appear to contemplate, the filing of reply declarations. Therefore,

> Rule 6(c)(2) "does not preclude affidavits supporting a reply brief when they respond to evidence supporting an opposition brief." Robinson v. Empire Equity Grp., Inc., No. WDQ-09-1603, 2009 WL 4018560, at *2 & n.14 (D. Md. Nov. 18, 2009).
>
> In other words, affidavits may accompany a reply brief if they support the reply rather than the original motion. Reply affidavits should not present new issues to which the opposing party will not have an opportunity to respond.

Aldridge v. Marion Cty. Coal Co., Civil Action No. 1:17CV79, 2017 WL 3446530, at *5 (N.D. W. Va. Aug. 10, 2017). Plaintiffs, in opposing Legislative Defendants' motion, argue that the Reply declarations are proper because

> "[Rule 6(c)(2)] does not preclude affidavits supporting a reply brief when they respond to evidence supporting an opposition brief." Robinson v. Empire Equity Grp., Inc., No. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) (quoting Kaiser-Flores v. Lowe's Home Ctrs., Inc., No. 5:08-CV45-V, 2009 WL 762198, at *8 (W.D.N.C. Mar. 19, 2009)); Aldridge v. Marion Cty. Coal Co., No. 1:17CV79, 2017 WL 3446530, at *5 (N.D. W. Va. Aug. 10, 2017).

(Pls.' Strike Resp. (Doc. 80) at 5.) Plaintiffs further argue there is no risk of "unfair surprise," (id.), and that

- 13 -

Legislative Defendants have had "adequate time — seven days — to prepare a response to such evidence." (Id. at 18.)

This court rejects the argument that Legislative Defendants have had "adequate time . . . to prepare a response." (See id.) First, the filing of declarations in a reply precludes the non-moving party, Legislative Defendants, from providing a factual response to any information contained in the Reply declarations if those reply declarations contain new evidence that supports the original motion. Even assuming Legislative Defendants have sufficient time to respond, they do not have a means to respond to new facts filed in support of the initial motion because that evidence is presented for the first time in a reply. Second, Plaintiffs filed the Reply declarations at 9:53 p.m. on July 2, 2020. (Doc. 73, Notice of Electronic Filing.) The oral argument on the preliminary injunction was scheduled for 9:30 a.m. on July 9, 2020. (See Minute Entry 07/01/2020.) Legislative Defendants have had less than seven days under any reasonable calculation of time, particularly because of the intervening national holiday on July 4. At 9:53 p.m. on July 2, Plaintiffs filed 160 pages of declarations after the close of business on the day before the July 4 holiday. Plaintiffs' late filing, and this court's order for a response on Monday, July 6, 2020, obviously required Legislative Defendants to work over that

- 14 -

holiday weekend. However, for Plaintiffs to count those three days – July 3, 4, and 5 – and argue Legislative Defendants have seven days to prepare is disingenuous at best. Legislative Defendants have had less than seven days to prepare, at least under reasonable considerations. Legislative Defendants have been prevented from responding factually to information contained in the Reply declarations and from having a reasonable time to prepare to respond at oral argument.

Nevertheless, declarations in support of a reply are appropriate if filed in response to evidence supporting an opposition brief. Aldridge, 2017 WL 3446530, at *5. However, "[r]eply affidavits should not present new issues to which the opposing party will not have an opportunity to respond." Id. As another district court has explained:

> [T]he clear purpose of Rule 6(d) is to prevent unfair surprise by eleventh hour filings. Orsi v. Kirkwood, 999 F.2d 86 (4th Cir. 1993). That is, a party may not file a motion unsupported by any evidence only to spring the evidence on the opposing party on a later date. Instead, Rule 6(d) requires the supporting affidavits be filed simultaneously with the motion it supports, affording the opposing party an opportunity to address the motion fully and squarely on its merits.

Case 1:20-cv-00457-WO-JLW   Document 116   Filed 07/27/20   Page 15 of 48

McGinnis v. Se. Anesthesia Assocs., P.A., 161 F.R.D. 41, 42 (W.D.N.C. 1995).[2]

The parties here dispute whether the Reply declarations constitute new evidence in support of the motion for preliminary injunction as opposed to evidence properly raised in response to evidence presented by Legislative Defendants in support of their responsive brief. To determine whether Plaintiffs presented in reply declarations evidence which was in fact in support of their original motion requires a determination of what a declaration is, what constitutes evidence in support of a motion, and whether evidence was submitted in support of the motion for preliminary injunction or withheld to the filing of the Reply. This court agrees with the parties' concession at oral argument that an affidavit or declarations must be based upon personal knowledge and the declaration of an expert witness must disclose not only the expert opinion but also the basis for that opinion.

---

[2] Rule 6(d) was later changed in 2007 to what is now Rule 6(c) "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules," for stylistic reasons. Fed. R. Civ. P. 6 advisory committee's note to 2007 amendment.

Generally speaking, an affidavit or declaration must be based on personal knowledge.[3] Del Zotto v. Universal Physician Servs., LLC, 214 F. Supp. 3d 499, 503 (D.S.C. 2016) (affidavits); Soutter v. Equifax Info. Servs. LLC, 299 F.R.D. 126, 129 (E.D. Va. 2014) (declarations). Fed. R. Civ. P. 56(c)(4), addressing affidavits and declarations in support of summary judgment, provides certain criteria for affidavits and declarations to be used in a motion for summary judgment. See Fed. R. Civ. P. 56(c)(4). While this is a motion for preliminary injunction, not a motion for summary judgment, those criteria guide the consideration of affidavits or declarations in support of motions other than summary judgment. As a district court in Maryland persuasively explains:

> Although the affidavit was submitted in support of a motion to dismiss for subject matter jurisdiction, the court will look to Rule 56(e)'s requirements for affidavits for guidance in determining its sufficiency. See McLaughlin v. Copeland, 435 F. Supp. 513, 521 n.1 (D. Md. 1977) (noting that "in the case of the affidavits, the Federal Rules of Civil Procedure do not contain prerequisites for documents appended to responses to

_____

[3] "The terms 'declaration' and 'affidavit' are used interchangeably in common parlance and in case law as well. An affidavit is made under oath; a declaration is not sworn, but is subject to the penalty of perjury." Soutter v. Equifax Info. Servs. LLC, 299 F.R.D. 126, 128 n.4 (E.D. Va. 2014). Further, "28 U.S.C. § 1746 permits the use of a declaration in lieu of an affidavit." Id. The court will therefore use "declaration," because the documents at issue are all declarations.

- 17 -

motions to dismiss" and that "Rule 56(e), which courts
have used in judging affidavits on Rule 12(b) motions,
provides guidance for this court in viewing the
documents here").

Goode v. STS Loan & Mgmt., Inc., No. Civ.A. DKC 2004-0999, 2005
WL 106492, at *2 (D. Md. Jan. 14, 2005).[4]

Therefore, regardless of whether the motion is one for
summary judgment or, as here, a motion for preliminary
injunction, presenting statements in a declaration that are not
based on personal knowledge is not presenting evidence in
support of the motion. Where a declaration or affidavit fails
"to make 'an affirmative showing that this information was
within [her] personal knowledge and competence to testify,'" a
motion to strike will be granted. Id. at *3. An affidavit or
declaration which does not contain firsthand knowledge or
otherwise fails to demonstrate the declarant is competent to
testify about the matters contained in the affidavit or
declaration is of no evidentiary weight and may be struck.

Similarly, presenting an affidavit that contains the
opinion of an expert witness, but fails to provide the basis for

---

[4] A motion for preliminary injunction does not require that
a declaration set out facts that would be admissible in
evidence. However, the requirements that a declaration be based
on personal knowledge and show the declarant is competent to
testify on the matters stated provides guidance in reviewing the
declarations submitted as evidence in support of the amended
motion for preliminary injunction in this case.

that opinion constitutes a failure to present evidence in support of a motion where the motion relies upon that expert opinion. At argument on the motion to strike, the parties agreed that, to be considered as evidence in support of a motion, an expert's declaration must disclose the expert's opinion and basis for that opinion. This court agrees.

Fed. R. Civ. P. 26 adopts a standard that requires an expert's report disclose "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). While Fed. R. Civ. P. 26 is a discovery disclosure rule that does not apply to this preliminary injunction proceeding, the purpose served by the rule does apply here. "The disclosure requirement is designed to afford opposing parties 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" Osunde v. Lewis, 281 F.R.D. 250, 257 (D. Md. 2012) (quoting Fed. R. Civ. P. 26 Advisory Committee Note (1993)). The failure to include the basis for an expert witness's opinion deprives the opposing party of a reasonable opportunity to respond to that expert witness's opinion. "[T]he clear purpose of Rule 6(d) is to prevent unfair surprise by eleventh hour filings," McGinnis, 161 F.R.D. 41, 42,

- 19 -

and to withhold the basis of an expert opinion to a reply constitutes unfair surprise.

These standards will be applied here to determine whether Plaintiffs submitted "evidence in support of the motion," Fed. R. Civ. P. 6(c)(2), or whether Plaintiffs withheld such evidence until that evidence could be filed in support of a reply and thereby preclude Legislative Defendants from a fair opportunity to respond to evidence presented in support of the motion for preliminary injunction. This court will first outline the issues raised in the amended motion for preliminary injunction, (Pls.' Am. Mot. (Doc. 31)), and then review each of the declarations in turn.

### 1. Declarations in Support of the Amended Motion for Preliminary Injunction and Reply

As previously summarized, Plaintiffs seek injunctive relief against several of North Carolina's election laws, including the following: the 25-day mail-in or online voter registration deadline, the requirement that absentee ballot requests be made on the State Board of Elections' form, the restrictions on the types of acceptable residency documentation to be included in an absentee ballot application, restrictions on assistance with and return of absentee ballot requests and absentee ballots (the "Organizational Assistance Ban"), the one-witness requirement for absentee ballots, the requirement that poll workers reside

in the county in which they serve, the requirement providing for uniform hours in all precincts (the "Uniform Hours Requirement"), as well as other mandatory relief, such as the implementation of more online voter registration portals, and contactless drop boxes for absentee ballots, among others. (Pls.' Am. Mot. (Doc. 31) at 4-7.)

The court will now turn to the declarations Plaintiffs submitted in support of their Reply.

### (a)   Declarations of Leila Bentley

Plaintiffs presented the declaration of Lelia Bentley ("Bentley") in support of the motion for preliminary injunction, (Declaration of Lelia Bentley in Supp. of Pls.' Mot. for Prelim. Inj. ("Bentley Decl.") (Doc. 11-6)), and a second declaration in support of the reply, (Reply Declaration of Lelia Bentley ("Bentley Reply Decl.") (Doc. 73-3)). Bentley's first declaration was cited in the brief in support of the original motion for preliminary injunction as evidence of the undue burden caused by the Organizational Assistance Ban, (Pls.' Mem. in Supp. of Mot. for Prelim. Inj. ("Pls.' Prelim. Inj. Br.") (Doc. 10) at 32), the two-witness requirement for absentee ballots, (id. at 34), the need for drop boxes, (id. at 36), and the need for a process to cure errors, (id.). Bentley's first declaration may constitute evidence in support of those issues.

- 21 -

(See Bentley Decl. (Doc. 11-6).) However, in that declaration, Bentley did not address or express any hardship in obtaining an application for an absentee ballot. (See id.) The only impediment Bentley listed to obtaining an absentee ballot was her concern with the "risk of catching COVID-19 through the witnessing process." (Id. ¶ 9.) Notably in her original declaration, Bentley stated that she last went to the grocery store on March 15 and "[s]ince then, if I have needed groceries, I order them online and have them delivered." (Id. ¶ 4.)

However, in her declaration provided in support of the reply, Bentley brings forward a new hardship, alleging that "[a]ccessing an online ballot request form . . . would also be very difficult." (Bentley Reply Decl. (Doc. 73-3) at ¶ 7.) Not only are these new facts, but these new facts also appear inconsistent with her original declaration. (Compare Bentley Decl. (Doc. 11-6) ¶ 9, with Bentley Reply Decl. (Doc. 73-3) ¶ 7.) Although Bentley stated in her original declaration that she orders her groceries online as needed and has them delivered, (Bentley Decl. (Doc. 11-6) ¶ 4), Bentley states in the new declaration that:

> [m]y only access to the Internet is through a "hot spot" . . . [M]y service is so poor that I frequently get disconnected. Sometimes, people call my cellphone but it goes straight to voicemail . . . .
>
>      . . . .

As for my grocery deliveries, I initially submitted an order online, and it is automatically renewed and sent every week.

(Bentley Reply Decl. (Doc. 73-3) ¶¶ 7, 9.) Bentley's new information, including (1) a change from ordering groceries online when needed to a straightforward automatically renewing order of groceries and (2) the inclusion of previously undisclosed details of a hardship in obtaining an absentee ballot online, in part due to her poor internet service, constitutes the submission of new evidence in the case. That new evidence conflicts with the original evidence and offers new evidence in support of the motion. This is not a "clumsy" attempt to anticipate arguments about the use of remote technology as argued by Plaintiffs. (Pls.' Strike Resp. (Doc. 80) at 8.) Instead, Bentley's reply declaration presents evidence in support of the original motion and raises "new issues to which the opposing party will not have an opportunity to respond." Aldridge, 2017 WL 3446530, at *5.

### (b)  Declarations of Gary Bartlett

Gary Bartlett's ("Bartlett") first declaration, submitted with the original motion, included his curriculum vitae ("CV"), which suggests that Plaintiffs tendered Bartlett as an expert witness in elections law. (See Declaration of Gary Bartlett in Supp. of Pls.' Mot. for Prelim. Inj. ("Bartlett Decl.") (Doc.

- 23 -

12-3) at 1-5, 15.) With respect to the 25-day deadline for voter registration as challenged by Plaintiffs, Bartlett states in his original declaration the following opinion:

> In my experience, given the challenges that the coronavirus pandemic is presenting to voter registration, the 25 day deadline before an election for voter registration should be extended through to the close of One-Stop Absentee Voting (Early Voting) to allow eligible individuals the opportunity to register to vote.

(Id. ¶ 16.) This 25-day deadline was first implemented by statute in 1994. See 1994 N.C. Sess. Laws Ch. 762, Art. 7A (H.B. 1776). Bartlett was Executive Director of the North Carolina State Board of Elections from 1993 to 2013, (Bartlett Decl. (Doc. 12-3) ¶ 2), and was therefore familiar with the 25-day deadline and any purposes served by that deadline. However, Bartlett's opinion described above amounts to nothing more than an unexplained assertion that the coronavirus pandemic requires extension of the 25-day deadline "to allow eligible individuals the opportunity to register to vote." (See id. ¶ 16.)

Nevertheless, in Bartlett's reply declaration, Bartlett provides the following opinions, and bases for those opinions, in great detail as to the 25-day deadline:

> 5. I have reviewed the concerns expressed by Executive Director Bell and the county board of elections members Devore and Hawkins regarding extending the voter registration deadline, from 25 days before the election to allowing registration up until the Saturday before the Election. I find these concerns

to be overstated and speculative, and they fail to account for the burden on voter registration that is imposed by not extending this deadline during the pandemic.

6. For example, it is unrealistic to worry that voters will seek to register through a voter registration form or the DMV and then, within mere days, try to register again or vote at a one-stop site. If voters are considering early voting at all, and are unregistered, they will almost certainly know of the same-day registration option as well, as this is a well-known feature of early voting and is prominently advertised on the Board of Elections website. <u>See</u> https://www.ncsbe.gov/Voting-Options/One-Stop-Early-Voting.

7. By contrast, the individuals that will need the extension of the 25-day deadline to register are likely those who will be unable to take advantage of early voting. This would include those who need to vote by absentee mail-in ballot who are as yet unregistered. If the deadline is extended, these individuals will be able to but register and request an absentee ballot at the same time within that period. The extension also benefits those who are unregistered and need to vote on election day. These individuals, while only a portion of the population, are individuals qualified to register and vote who will be disenfranchised without an extension of the 25-day deadline.

8. In any event, if there are any instances of overlap in registrations, county boards can use Supplemental Voter Registration Lists, which are already used by several counties, to prevent administrative burdens from registrations. Furthermore, early voters can continue to use Provisional Ballots if their registration has not been processed or logged, which would be the procedure even if the deadline were not extended.

(Doc. 73-6 ¶¶ 5-8.) Bartlett's reply declaration raises new facts, opinions, and bases for those opinions that were not

presented in the original declaration or motion. Indeed, these facts and opinions have been presented in a manner which forecloses Legislative Defendants' ability to fairly respond because they were withheld until filed in support of the Reply. The expert witness disclosure requirement is "designed to afford opposing parties 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses,'" Osunde, 281 F.R.D. at 257, and by failing to present the basis for Bartlett's opinion in support of the original motion for preliminary injunction, Plaintiffs deprived Legislative Defendants of a fair opportunity to respond. Reply declarations should not present new issues to which the opposing party will not have an opportunity to respond. Aldridge, 2017 WL 3446530, at *5. An expedited request for a preliminary injunction is not an excuse to withhold material parts of an expert witness's opinion until a reply brief is filed.

### (c)  Declaration of Kenya Myers

The Organizational Assistance Ban, and the question of who can provide assistance in completing absentee voting, by mail and otherwise, are matters challenged by Plaintiffs. (See Pls.' Prelim. Inj. Br. (Doc. 10) at 30-36.) Plaintiffs argue in their original motion for preliminary injunction that "the multi-

- 26 -

partisan assistance teams cannot remedy these barriers in certain North Carolina counties where their availability has been inadequate under the best of circumstances." (Id. at 33.)

The evidence cited in support of that argument, the declaration of Allison J. Riggs, states that "[a]ttached hereto as Exhibit 10 is a true and correct copy of a February 28, 2020 Letter from Disability Rights North Carolina . . . ." (Declaration of Allison J. Riggs in Supp. of Pls.' Mot. for Prelim. Inj. ("Riggs Declaration") Doc. 12-6 ¶ 12.) This letter (the "Disability Rights NC letter") was authored and sent by Kenya Myers (Doc. 12-7 at 56), but no declaration was filed by Kenya Myers attesting to the substantive information in the Disability Rights NC letter. Instead, Riggs' declaration only attests to the fact that the exhibit is a "true and correct copy of a February 28, 2020 Letter . . . regarding Davidson County's failure to assemble a Multipartisan Assistance Team ["MAT"]." (Doc. 12-6 ¶ 12.)

Riggs' declaration is insufficient to establish whether the information contained in the Disability Rights NC letter is correct, whether the Disability Rights NC letter was in fact sent, or even that the Davidson County Board of Elections' failure to assemble a MAT is an insurmountable "barrier," (Pls.' Prelim. Inj. Br. (Doc. 10) at 33), for certain voters to cast a

- 27 -

vote as argued. Even assuming Davidson County did not assemble a MAT as stated in the Disability Rights NC letter, the letter requests that the letter's authors receive confirmation of the statutory ability of representatives of Disability Rights NC, as non-excluded individuals under the Organizational Assistance Ban, to assist the voter. (Doc. 12-7 at 55) ("Davidson County has not assembled a MAT and has given no indication one will be formed in time to assist the voter in requesting and casting her absentee ballot in the primary election taking place on March 3rd," (id. at 55), and "Please advise immediately if you will permit representatives of Disability Rights NC or other non-partisan organizations to assist voters with disabilities residing in facilities in Davidson County with voting via absentee ballot," (id. at 56).)

Although Riggs' declaration and the Disability Rights NC letter appear to contain evidence that might otherwise support arguments made in the motion for preliminary injunction, the declaration provides no facts to indicate Riggs is competent to make the declaration or that Riggs has any personal knowledge of the facts contained in an otherwise-unverified letter. Where a declaration fails "to make 'an affirmative showing that this information was within [her] personal knowledge and competence

to testify,'" a motion to strike will be granted. <u>Goode</u>, 2005 WL 106492, at *3.

Plaintiffs were therefore aware of the opinion of Kenya Myers, issues with a MAT in Davidson County, and Myers's advocacy on that issue as well as her request to assist a voter. Plaintiffs do not dispute that Myers was available to provide a declaration in support of the amended preliminary injunction motion at the time the motion was filed. Nevertheless, Plaintiffs did not file a declaration from Myers in support of the motion for preliminary injunction. Instead, Plaintiffs chose to file a copy of a letter of unknown foundation and veracity and withheld evidence as to the substance of the letter until the filing of the Reply and the declaration of Myers filed in support of that Reply. (Doc. 73-8.)

Myers's declaration contains new evidence. In her declaration, Myers first alleges that "[t]he Davidson County Board of Elections and the State Board of Elections did not take any action in response to our communications and failed to provide a MAT to assist the resident of the skilled nursing

facility to vote." (Id. ¶ 7.)[5] That information may very well be firsthand knowledge of the substantive information contained in the previously unverified letter.

In addition to attesting to the substance of the previously unverified Disability Rights NC letter, Myers alleges that during those same 2020 Primary Elections, she was apparently told that the Burke County Board of Elections did not offer a MAT when she called to request voting assistance, (id. ¶ 8), and that on May 29, 2020, the Northampton County Board of Elections admitted it had not assembled a MAT for the 2020 Primary Election and had "yet to discuss assembling a MAT for the 2020 Presidential Election," (id. ¶ 9). The reply declaration of Myers thus contains new information which arguably now makes the Disability Rights NC letter subject to consideration as evidence in support of the amended motion for preliminary injunction. Opposing parties have had neither a chance to respond nor an

---

[5] At trial, Plaintiffs sought to introduce email communications between the state board's counsel and Myers through the testimony of Karen Brunsen Bell. These emails provided additional information relating to the information first disclosed in the Myers reply declaration. As a result, the court sustained Legislative Defendants' objection. Although excluded, this court did review the emails and finds the communications included in the emails relate to the declaration and letter at issue here and, because the declaration is struck, additional information relating to that declaration is struck as well.

opportunity to conduct discovery as to these various allegations.

Plaintiffs do not argue they were not aware of Myers's information at the time they filed the motion for preliminary injunction. Obviously, they were. The tactics here – the filing an unverified letter without authentication of the contents of a letter followed by the filing of a declaration in support of a reply which includes personal knowledge and new allegations by a declarant – is not acceptable. The reply declaration of Kenya Myers unfairly deprives Defendants an opportunity to respond. "Reply affidavits should not present new issues to which the opposing party will not have an opportunity to respond." Aldridge, 2017 WL 3446530, at *5.

The process adopted in this case also permits Plaintiffs to withhold the possibility of Legislative Defendants responding and perhaps discovering other relevant facts. The voter described in the Disability Rights NC letter is not identified. In the declaration filed in support of the Reply, Myers does not disclose whether "representatives of Disability Rights NC or other non-partisan organizations" did in fact assist the voter as requested in the Disability Rights NC letter. (See Doc. 73-8) Myers' failure to explain whether this resident was or was not able to vote, whether Myers or her organization assisted, and

- 31 -

whether she did in fact vote are facts which might have some relevance in determining whether the challenged statutes constitute an unconstitutional burden on the right to vote. Furthermore, Myers's reply declaration includes hearsay allegations with respect to the absence of MATs in other counties and does not reflect personal knowledge as to these allegations. In fact, the provision of the letter in the opening brief is in fact misleading to this court as it suggests the statute, N.C. Gen. Stat. § 163-226.3(a)(4) may have worked as intended, purportedly allowing an individual to act in the absence of a MAT. Myers fails to explain whether it did or did not.

### (d)   Declaration of Jake Quinn

Jake Quinn ("Quinn") did not file a declaration in support of the motion for preliminary injunction but did file a declaration in support of the Reply, (Declaration of Jake Quinn in Supp. of Pls.' Mot. for Prelim. Inj. ("Quinn Declaration") (Doc. 73-9).

In their original motion, Plaintiffs argued that the Uniform Hours Requirement has already proven to cause polling locations to close as follows: "After North Carolina imposed this requirement in June 2018, the costs of implementing this measure caused 43 counties to reduce the number of early

- 32 -

voting sites in the 2018 general election compared to 2014 and over two-thirds of counties to reduce weekend hours." (Pls.' Prelim. Inj. Br. (Doc. 10) at 50 (citing Doc. 11-1 ¶ 7; Doc. 12-6 ¶¶ 18—19).) Tomas Lopez, the Executive Director of Democracy North Carolina, states the following in his declaration:

> [A]fter North Carolina enacted S325 in June 2018 mandating uniform hours across all early voting sites within each county, the costs of implementing this measure caused 43 counties to reduce the number of early voting cites in the 2018 election compared to 2014 and over two thirds of counties to reduce weekend hours.

(Declaration of Tomas Lopez in Supp. of Pls.' Mot. for Prelim. Inj. ("Lopez Decl.") (Doc. 11-1) ¶ 7 (footnote omitted).) Importantly, Lopez is not a board of elections employee in any capacity; he is Executive Director of Democracy North Carolina, a plaintiff in this case. (Id. at 1.) In his declaration, Lopez points to no facts to support his opinion or conclusion that the costs of the Uniform Hours Requirement caused the reduction in polling sites, nor does Lopez provide any basis upon which to conclude his opinion is based on personal knowledge or that he is otherwise competent to offer this opinion. Lopez is not qualified as an expert and even if he were permitted to offer his opinion as an expert or lay witness, the absence of any

- 33 -

foundation for this opinion make the weight of his opinion limited at best.

Riggs' declaration cites to two publications; one is a transcript of testimony by Lopez, (Doc. 12-6 ¶ 18), and the second is an article published by ProPublica, (id. ¶ 19). The testimony provided by Lopez with respect to the Uniform Hours Requirement mentions the reductions in number of voting sites in 2018, and provides other statistics, but, like his declaration, offers no factual basis for the reasons he concludes the reduction in polling places is caused by the Uniform Hours Requirement. (Doc. 12-8 at 31-32.) The ProPublica article is simply that: a news article, unsworn, and therefore of no evidentiary weight on the issue of whether or not the costs associated with the Uniform Hours Requirement necessitated the closing of polling places.

Riggs' declaration neither professes nor provides any basis upon which to conclude Riggs has any personal knowledge of the facts contained in the article. Neither the ProPublica article nor Lopez's declaration mention Buncombe County in any fashion. Further, any statements attributed to elections officials in the article are not authenticated in any fashion, and the article is thus accorded no weight in support of Plaintiffs' motion for preliminary injunction. (See Doc. 12-8.) Where a declaration

- 34 -

fails "to make 'an affirmative showing that the information was within [her] personal knowledge and competence to testify,'" a motion to strike will be granted. Goode, 2005 WL 106492, at *3.

Plaintiffs filed the declaration of Quinn in support of their Reply. (Quinn Decl. (Doc. 73-9).) Quinn has served as the Chair of the Buncombe County Board of Elections ("the Board") since February 2019. (Id. ¶ 1.) Quinn states that the "uniform hours requirement that was implemented in 2017 has forced the Board to spend extra money and time staffing polling places." (Id. ¶ 5.) As a result, Quinn alleges, the Board has been forced "to decrease the number of early voting sites for General Elections." (Id. ¶ 7.)

In response to Legislative Defendants' motion to strike, Plaintiffs do not argue that they did not have access to Quinn's information and declaration at the time the motion for preliminary injunction was filed. Instead, Plaintiffs contend the declaration "specifically rebuts those declarants' assertions about the efficacy of the uniform hours requirement . . . ." (Pls.' Strike Resp. (Doc. 80) at 6-7.) But the declaration does more than that. It constitutes evidence presented, for the first time by Plaintiffs, from a possibly competent witness alleging firsthand knowledge of the reasons why one county did not have or fund certain polling sites as a

- 35 -

result of the Uniform Hours Requirement. By filing the declaration of Quinn with their Reply, Plaintiffs did not present competent evidence from an individual with personal knowledge that the Uniform Hours Requirement resulted in a reduced number of polling places, at least in Buncombe County with the original motion. The withholding of a board of elections member's declaration under these circumstances is tantamount to, if not exactly the process of, "filing a motion unsupported by any evidence only to spring the evidence on the opposing party on a later date." Masters v. Lin, Civil Action No. 6:14-2473-TMC, 2015 WL 12830505 at *6 (D.S.C. Jan. 23, 2015).

### (e)   Reply Declaration of Paul Gronke

Dr. Paul Gronke ("Gronke") is a Professor of Political Science and has been tendered by Plaintiffs as an expert. (Declaration of Paul Gronke in Supp. of Pls.' Mot. for Prelim. Inj. ("Gronke Decl.") (Doc. 12-2) ¶¶ 1-6.) In his initial declaration, filed in support of the original motion for preliminary injunction, Gronke offers an opinion on a variety of issues raised by the motion, including voting by mail, early voting, and the effect of COVID-19 on this election. (See id. ¶¶ 5-6.) But Gronke's declaration submitted in support of Plaintiffs' Reply, (Declaration of Paul Gronke in Supp. of Pls.'

- 36 -

Amended Mot. for Prelim. Inj. ("Gronke Reply Decl.") Doc. 73-5),
does not simply respond to Legislative Defendants — it adds new
opinions.

In Gronke's original declaration, he states that "County
boards will also need sufficient time to be able to recruit poll
workers," (Gronke Decl. (Doc. 12-2) ¶ 58), and offers a
statistical basis for the opinion as an explanation. He also
alleges that "[r]ecruitment of replacement workers will be
difficult across the state." (Id. ¶ 59.) He concludes that if
"[t]he requirement that a majority of Election Day poll workers
reside within an election precinct is also unnecessarily
burdensome . . . were relaxed, it will allow County boards more
latitude to recruit sufficient Election Day poll workers." (Id.
¶ 60.)

After Gronke's original declaration was filed on June 5,
2020, (see Gronke's Decl. (Doc. 12-2)), North Carolina passed a
new statute, H.B. 1169, on June 12, 2020. 2020 N.C. Sess. Laws
2020-17 (H.B. 1169). That statute modified the requirement that
a majority of poll workers were required to reside in the
precinct and allowed poll workers to come from anywhere in the
county where they resided. Id. § 1.(b). Inexplicably, when
Plaintiffs filed their amended motion for preliminary injunction
on June 18, 2020, (Doc. 31), Plaintiffs did not amend their

original brief in support of the motion for preliminary injunction nor did they amend any of the declarations. (See id. at 8.) Plaintiffs thereby withheld providing notice of the way Gronke's opinion might change as a result of the passage of H.B. 1169.

This court has reviewed the record, specifically with respect to Gronke's declaration, because his declaration was modified in response to H.B. 1169 specifically. Plaintiffs moved to file a Second Amended Complaint and an Amended Motion for Preliminary Injunction on June 18, 2020. (Doc. 27.) In that motion, Plaintiffs specifically alleged that the Second Amended Complaint was necessary in response to HB 1169. (Id. at 5.) In further argument as to the Amended Motion for Preliminary Injunction, Plaintiffs represented:

> Plaintiffs do not request leave to submit an amended Memorandum in Support of the Motion for Preliminary Injunction, and intend instead to address these changes in their Reply Brief, in the interest of judicial economy and to the extent permitted under Local Civil Rule 7.2.

(Id. at 7.) LR 7.2 requires that briefs contain a statement of facts, and each fact should be supported by reference to a part of the official record in the case. LR 7.2(a). "Reply briefs filed with the court . . . may contain [a concise statement of the facts] to the limited extent of responding to factual matters newly raised in the response." Id. Neither the parties'

- 38 -

agreement, as described in the motion to amend, (Doc. 27), nor
the Local Rules permit the introduction of new evidence in
support of a motion for preliminary injunction for the first
time in a reply brief. More significantly, Plaintiffs only
sought to address changes "in their reply brief," and gave no
notice to suggest, nor sought any agreement that might allow,
the presentation of new expert opinions as part of a reply
brief.

Nevertheless, Plaintiffs submitted a new expert opinion
from Gronke in support of their Reply. In his declaration in
support of the Reply, Gronke declares that, in his opinion,
unless "the requirement that poll workers are registered in the
county where they are working [is removed], North Carolina will
experience poll worker shortages." (Gronke Reply Decl. (Doc.
73-5) ¶ 12.) This is a new opinion from an expert, and therefore
constitutes new evidence presented for the first time in a
reply. As Legislative Defendants argue,

> Gronke's prior declaration did not address the Home
> County Requirement because before HB1169, there was no
> such requirement; the prior law required a majority of
> poll workers at any site to be from the precinct. And
> yet, when Plaintiffs' amended their complaint and
> preliminary injunction motion in mid-June, they did
> not make a single change to their brief, nor did they
> submit any declaration from Gronke or anyone else
> discussing the Home County Requirement.

- 39 -

(Doc. 78 at 13.) As reflected in the discussion above, the parties apparently agreed Plaintiffs could stand on the original brief in support of the amended motion for preliminary injunction; the parties will have to abide by whatever may have been settled by that agreement. However, no one agreed, nor will this court permit, the presentation of a new expert opinion for the first time as part of a reply.[6]

The expert witness disclosure requirement is "designed to afford opposing parties 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses,'" Osunde, 281 F.R.D. at 257, and by failing to present a current opinion by Gronke in support of the amended motion for preliminary injunction, Plaintiffs deprived Legislative Defendants of a fair opportunity to respond. Reply declarations should not present new issues to which the opposing party will not have an opportunity to respond. Aldridge, 2017 WL 3446530, at *5.

---

[6] During the evidentiary hearing held on July 20-22, 2020, Plaintiffs sought to introduce through testimony Dr. Gronke's opinion in either the same or a similar form to that which was excluded by the terms of this Memorandum Opinion and Order. Because the testimony of this expert was presented in a manner so as to preclude Legislative Defendants from responding during the briefing process, this court excluded the testimony at the evidentiary hearing for the same reasons set forth herein.

- 40 -

## 2. Motion to Strike Analysis

The parties do not significantly dispute the standard this court should apply in determining whether any of the declarations filed in support of the reply should be struck.

> Rule 6(c)(2) "does not preclude affidavits supporting a reply brief when they respond to evidence supporting an opposition brief.' Robinson v. Empire Equity Grp., Inc., No. WDQ-09-1603, 2009 WL 4018560, at *2 & n.14 (D. Md. Nov. 18, 2009).
>
> In other words, affidavits may accompany a reply brief if they support the reply rather than the original motion. Reply affidavits should not present new issues to which the opposing party will not have an opportunity to respond.

Aldridge, 2017 WL 3446530, at *5.

This court finds Legislative Defendants' motion to strike, (Doc. 77), should be granted in part and denied in part.

The court finds the declarations of Kenya Myers, (Doc. 73-8), and Jake Quinn, (Doc. 73-9), should be struck in their entirety. The court finds Plaintiffs withheld evidence in support of their motion for preliminary injunction where that evidence was likely based on firsthand knowledge and did not submit that evidence until the Reply, in effect withholding evidence in support of the motion until the filing of a reply.

This court finds the reply declaration of Lelia Bentley, (Doc. 73-3), should be struck in part; paragraphs 7, 8, and 9 will be stricken for the reasons described herein.

- 41 -

The reply declaration of Gary Bartlett, (Doc. 73-6), will be struck in part as the declaration in support of the amended motion for preliminary injunction withheld the basis for an expert opinion of the declarant and paragraphs 5, 6, 7, and 8 will be struck.

Finally, the declaration of Dr. Paul Gronke, (Doc. 73-5), will be struck in part for introducing an expert opinion for the first time in support of the Reply; paragraphs 11, 12, and 13 are struck.

The court finds the remaining declarations and opinions should not be struck as requested; that relief is denied. After careful review of the remaining declarations, this court finds those declarations constitute responses to evidence offered in support of the opposition briefs filed by Executive and Legislative Defendants.

This court declines to permit consideration of those declarations, or the parts of the declarations that have been struck by this order.

The fact some limited discovery, at this late date in the process, is underway as will be explained hereafter has caused the court to consider whether the declarations should be considered and addressed as part of the discovery process

instead of being struck. For the following reasons, the court declines to do so.

First, it is Plaintiffs, not Legislative Defendants, that have caused delay to these proceedings. Had Plaintiffs provided the facts addressed in this Memorandum Opinion and Order in support of the amended motion for preliminary injunction, this matter could likely have been avoided. Plaintiffs suggested during argument that much of this evidence only responded to Defendants' evidence; Plaintiffs remain free to rely upon their evidence submitted with the original motion for preliminary injunction and the accepted evidence submitted with the Reply. However, the evidence submitted in support of the original motion and responses have framed these proceedings; Plaintiffs were satisfied with that and this court does not find it appropriate to expand the record by permitting the presentation of evidence improperly withheld until the Reply.

Second, the factual issues and the related discovery have been framed by the declarations filed by all parties. Because, in some instances, Plaintiffs chose to file evidence in support of the amended motion for preliminary injunction as explained hereinabove, Plaintiffs deprived Legislative Defendants of a fair opportunity to respond to substantive evidence with their own declarations during the briefing process. This court, as

- 43 -

well as the Executive Defendants, has understood that the parties desire to move in an expeditious manner. (See Doc. 61 at 5 ("There is simply no way to reconcile the burdensome discovery process requested by Intervenors with an expedited resolution of this matter, as requested by the original parties."); Doc. 79 at 3 ("[T]he State defendants' understanding throughout the pendency of this matter, particularly with regard to the preliminary injunction motion, has been that the Court and the parties understandably desire to move as expeditiously as possible.").) In fairness to all parties, if the court were to allow consideration of the declarations that have been struck, the court would feel compelled, in the interests of fairness, to permit Legislative Defendants an opportunity to file a surreply which would further delay these proceedings. The court finds such further delay is neither necessary nor an appropriate balance of fairness and the interests of justice.

The court will therefore grant Legislative Defendants' motion to strike, (Doc. 77), in part.

C.  <u>**Legislative Defendants' Motion for Leave to Take Depositions**</u>

Finally, Legislative Defendants requested leave to take discovery to "help ensure that the Court is deciding Plaintiffs' motion for a preliminary injunction . . . on a full and complete record that has been subjected to the adversarial process."

- 44 -

(Leg. Defs.' Discovery Mot. (Doc. 49) at 4.) Legislative

Defendants argue that discovery would help clarify the

presentation to the court. (Id.) This court agrees discovery

would be helpful to the court.

As a district court in West Virginia persuasively explains,

in the preliminary injunction context, the party seeking

injunctive relief bears the burden of offering evidence beyond

the pleadings, the evidentiary rules are "less formal," Univ. of

Tex. v. Camenisch, 451 U.S. 390, 395 (1981), and

> Statements contained in an uncontroverted
> affidavit may be accepted as true, Elrod v. Burns, 427
> U.S. 347, 350 n.1, 96 S. Ct. 2673, 49 L. Ed. 2d 547
> (1976) ("For purposes of our review . . .
> uncontroverted affidavits filed in support of the
> motion for a preliminary injunction are taken as
> true."), "but if there are genuine issues of material
> fact raised in opposition to a motion for a
> preliminary injunction, an evidentiary hearing is
> required," Cobell v. Norton, 391 F.3d 251, 261 (D.C.
> Cir. 2004); Blackwelder Furniture Co., 550 F.2d [189]
> at 192 n.1 [4th Cir. 1977] (noting that if "everything
> turns on what happened and that is in sharp dispute,"
> the court should ordinarily hold an evidentiary
> hearing and require live testimony, rather than rely
> on the parties' submissions (quoting Semmes Motors,
> Inc. v. Ford Motor Co., 429 F.2d 1197, 1204 (2d Cir.
> 1970))). Moreover, the weight to be accorded affidavit
> testimony is within the discretion of the court, and
> statements based on belief rather than personal
> knowledge may be discounted. Federal Practice &
> Procedure § 2949 (collecting authority).

Imagine Medispa, LLC v. Transformations, Inc., 999 F. Supp. 2d

862, 868–69 (S.D. W. Va. 2014).

- 45 -

After reviewing the record, this court finds there are disputed issues of fact and an evidentiary hearing is necessary.

Returning to the factors applied in determining when discovery is necessary, taking into account the totality of the circumstances, this court will consider: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of typical discovery process the request was made." JTH Tax, 2013 WL 460316, at *2 (quoting Disability Rights Council of Greater Wash., 234 F.R.D. at 6).

This court first finds the purposes of the requested discovery — to address contested issues, to ensure a complete record, and to assist in clarifying the issues for factual resolution – weigh in favor of permitting limited discovery. Second, the court does not find that a limited discovery process prior to the evidentiary hearing on the motion for preliminary injunction would cause undue burden on the parties. And third, this court finds that discovery can be narrowly tailored to the issues before the court regarding the motion for preliminary injunction.

This court therefore finds limited discovery should be permitted and an evidentiary hearing held.[7] The parties have met, conferred, and reached agreement as to an appropriate discovery process in light of the considerations outlined herein. (See Docs. 88, 90, 92; Minute Entry 07/13/2020.) In light of this court's findings, both in this order and as expressed during a telephone conference on July 13, 2020, the court approves the discovery process and the procedure for an evidentiary hearing.

III. <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Legislative Defendants' motion to strike, (Doc. 77), is **GRANTED IN PART.** This court **STRIKES** the declarations of Kenya Myers, (Doc. 73-8), and Jake Quinn, (Doc. 73-9), in their entirety. The declaration of Lelia Bentley, (Doc. 73-3), is **STRUCK IN PART** and paragraphs 7, 8, and 9 are **STRUCK.** The declaration of Gary Bartlett, (Doc. 73-6), is **STRUCK IN PART** and paragraphs 5, 6, 7, and 8 are **STRUCK.** The declaration of Dr. Paul Gronke, (Doc. 73-5), is **STRUCK IN PART** and paragraphs 11, 12, and 13 are **STRUCK.**

The court finds the remaining declarations and opinions should not be struck as requested, and that relief is denied.

---

[7] As of July 24, 2020, the parties have engaged in discovery and the court held an evidentiary hearing on July 20-22, 2020. (<u>See</u> Minute Entries 07/20/2020, 07/21/2020, 07/22/2020.)

- 47 -

**IT IS FURTHER ORDERED** that Legislative Defendants' motion for leave to take depositions, construed as a motion for prehearing discovery, (Doc. 49), is **GRANTED IN PART** and discovery shall be permitted in accordance with the discovery plans presented by the parties as described herein.

This the 27th day of July, 2020.

_____
United States District Judge