| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, DONNA PERMAR, JOHN P. CLARK, MARGARET B. CATES, LELIA BENTLEY, REGINA WHITNEY EDWARDS, ROBERT K. PRIDDY II, WALTER HUTCHINS, AND SUSAN SCHAFFER,<br><br>     *Plaintiffs,*<br><br>     *vs.*<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; KEN RAYMOND, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; DAVID C. BLACK, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; THE NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; J. ERIC BOYETTE, in his official capacity as TRANSPORTATION SECRETARY; THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES; MANDY COHEN, in her official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>     *Defendants,* | Civil Action No. 20-cv-457<br><br><br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION AND MODIFICATION OF PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT THEREOF** |

1

PHILIP E. BERGER, in his official
capacity as PRESIDENT PRO TEMPORE OF
THE NORTH CAROLINA SENATE; TIMOTHY
K. MOORE, in his official capacity
as SPEAKER OF THE NORTH CAROLINA
HOUSE OF REPRESENTATIVES,

     *Defendant-Intervenors.*

**PLAINTIFFS' MOTION FOR RECONSIDERATION AND MODIFICATION OF
PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT THEREOF**

**INTRODUCTION & SUMMARY**

By this Court's August 4, 2020 Order granting in part
and denying in part Plaintiffs' Amended Motion for a
Preliminary Injunction, Plaintiff Walter Hutchins is the one
and only resident in the state of North Carolina who can rely
on nursing home staff to assist him in marking, completing,
and submitting his mail-in absentee ballot. ECF No. 124 at
170-78. Indeed, even at Plaintiff Hutchins' own nursing home—
The Davis Community, which in compliance with Executive Order
No. 138 has been on lockdown during this pandemic—it is still
unlawful for *other residents* to obtain the same assistance
that Mr. Hutchins can.

This Court has found that N.C. Gen. Stat. §§ 163-
226.3(a)(4)-(6) and 163-231(b)(1) violate Section 208 of the

Voting Rights Act by unlawfully restricting who may assist Section 208-covered nursing home residents in marking, completing, and submitting their mail-in absentee ballots. These laws "suffer[ed] from a fatal constriction" and thus violated Section 208. ECF No. 124 at 175-76. As a result of the Court's legal conclusion, *all* nursing home residents who "require[] assistance to vote by reason of blindness, disability, or inability to read or write" should be permitted to receive "assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. Because there is no reason to differentiate between nursing home residents who are similarly-situated in all material respects, Plaintiffs respectfully request that the Court expand its injunction to cover *all* Section 208-covered nursing home residents in North Carolina.

The Court's order, which provides relief for only Plaintiff Hutchins and not all Section 208-covered nursing home residents, was clearly erroneous and will lead to manifest injustice. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)(law of the case guides a court's discretion in reconsidering an interlocutory order,

3

thus the court can reconsider its interlocutory orders because of (1) substantially different evidence presented at a subsequent trial, (2) new controlling precedent, or (3) clear error that "would work manifest injustice") (quoting *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).

This Court has acknowledged that other nursing home residents in locked-down facilities, like The Davis Community, are injured by the same federal law violation and cannot secure assistance from nursing home staff. *See* ECF No. 124 at 175-76 ("*In the present circumstances, many nursing homes are locked down and will likely continue to have restricted access for the foreseeable future*; 208-voters in these type of adult care facilities may only come into contact with "an owner, manager, director, [or] employee" of their residence and therefore may not have any options for assistance.") (emphasis added). There is no factual basis to distinguish Plaintiff Hutchins from other Section 208-covered residents at The Davis Community and all other North Carolina nursing homes on lockdown.

Further, no federal court has ever held that all Section 208-covered voters must be individually identified or bring

4

individual actions; nor has any court required that a class be certified in order to obtain relief enforcing Section 208. North Carolina's statutory restrictions violate and are preempted by Section 208 where a voter "requires assistance to vote by reason of blindness, disability, or inability to read or write," but is barred from securing that assistance from the person of their choice. 52 U.S.C. § 10508. Only three facts regarding the Section 208 claim are relevant: (1) there are North Carolina voters who are residents of nursing homes; (2) some voters at nursing homes require assistance in voting, pursuant to Section 208 of the Voting Rights Act, on account of their blindness, disability, or inability to read or write; and (3) nursing homes are on lockdown due to the Covid-19 pandemic and as required by Governor Cooper's Executive Order Nos. 138, 141, and 155, meaning that nursing home residents who are entitled to such assistance under Section 208 must be able to choose an assistant who is within the facility. These indisputable facts warrant this Court's extension of the existing preliminary injunction. If a voter meets those three criteria (at a nursing home that is on lockdown and in need of voting assistance), then that voter is, in all material

5

respects, no different from Plaintiff Hutchins and entitled to the same declaratory and injunctive relief.

**ARGUMENT**

This Court should extend its preliminary injunction to redress the full scope of the Section 208 violation alleged by Plaintiffs and found by this Court. The pleadings and record in this case make clear that the part of the injunction dealing with the Section 208 claim should embrace and protect all voters who are disenfranchised in the same way that Plaintiff Hutchins is. The prayer for relief in the Second Amended Complaint requested that this Court "[d]eclare that N.C. Gen. Stat. §§ 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-230.2(e)(4), 163-231(a) as amended by HB 1169 § 1(a), and 163-231(b)(1) violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508" and enjoin those provisions. ECF No. 30 at 79. It did not seek relief solely for Plaintiff Hutchins.

Similarly, Count Nine of the Second Amended Complaint asserts a claim on behalf of all voters who require, but cannot request, assistance from the person of their choosing due to North Carolina's statutory restriction of assistors to near relatives, legal guardians, or MATs:

6

183. North Carolina restricts absentee voters to only assistance from their near relatives, verifiable legal guardians, or MAT team members, for absentee ballot request return, absentee ballot marking and completion, and absentee ballot return. Unlike for completing an absentee ballot request form, there is no similar exception for any of these steps for absentee voters who need assistance by reason of their blindness, disability, or inability to read or write. See N.C. Gen. Stat. §§ 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-230.2(e)(4), 163-231(b)(1).

184. By imposing additional restrictions on who can assist a Section 208-covered voter who needs assistance with submitting their absentee ballot request form, marking and completing their absentee ballots, and returning their absentee ballots, specifically, by limiting valid assistors to the voter's near relative, legal guardian, or MAT team members, N.C. Gen. Stat. §§ 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-230.2(e)(4), and 163-231(b)(1) violate Section 208 of the VRA by failing to allow these voters to choose any assistor who is not their employer or union representative.

185. Defendants' failure to allow eligible voters who need assistance by reason of their blindness, disability or ability to read or write in any part of the absentee voting process, from any person of their choice, other than their employers or union officials, as described herein, is a violation of Section 208.

*Id*. at 76. Allegations as to Plaintiff Hutchins were intended to establish standing, not to restrict the requested relief to that one individual. This Court concluded that Plaintiff Hutchins has standing to challenge N.C. Gen. Stat. §§ 163-226.3(a)(4)-(6) and 163-231(b)(1) only to the extent they

7

restrict nursing home residents' ability to secure assistance from nursing home staff in marking, completing, and submitting their ballots, but Hutchins' claim sought to invalidate those statutes as to all voters who are entitled to assistance under Section 208 of the Voting Rights Act, not just himself.

The Court agreed that these statutes "suffer[] from a fatal constriction" and thus violate Section 208. ECF No. 124 at 175. The Court continued:

> Thus, *208-voters* must rely on either a near relative, a legal guardian, or a MAT if they are available before they may choose any other person to assist them.
>
> The court finds these regulations impermissibly narrow Section 208's dictate that *a voter* may be assisted 'by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.' 52 U.S.C. § 10508. *In the present circumstances, many nursing homes are locked down and will likely continue to have restricted access for the foreseeable future*; **208-voters in these type of adult care facilities may only come into contact with "an owner, manager, director, [or] employee" of their residence and therefore may not have any options for assistance.** More significantly, it does not appear to this court that *a 208-voter* — one who is blind, *like Plaintiff Hutchins,* can be prohibited by state law from choosing the individual to assist them in voting. With those facts in mind, the court is satisfied that **North Carolina's laws violate Section 208.**

8

*Id.* (emphases added). The Court rightly identified the problem, finding that "many nursing homes are locked down and will likely continue to have restricted access" such that "208-voters," of which Mr. Hutchins is just one example, will not be able to request assistance from a person of their choosing. *Id.* The Court's factual findings and legal conclusions (*e.g.*, that "North Carolina's laws violate Section 208") inexorably point to the conclusion that the injunctive relief should cover all 208-voters who are in the same situation as Plaintiff Hutchins. The Court need not specifically identify each and every person in that situation to issue adequate, uniform relief enfranchising all individuals who simply cannot secure help from relatives, guardians, or MATs from inside a locked-down nursing home facility.

This Court's existing remedy is far narrower than the legal violation it has found. *See Califano v. Yamasaki,* 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established[.]"); *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) ("An injunction should be carefully addressed to the circumstances of the case" (citing *Hayes v. N. State Law*

9

*Enforcement Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993));
*cf. Ostergren v. Cuccinelli,* 615 F.3d 263, 288-89 (4th Cir.
2010) ("Once a constitutional violation is found, a federal
court is required to tailor the scope of the remedy to fit
the nature and extent of the constitutional violation."
(quoting *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420
(1977)). Restricting relief to Mr. Hutchins is neither
commensurate with nor adequate to redress the widespread
denial of federal statutory rights identified by this Court.

Based on the record evidence and other facts of which
this Court may take judicial notice,[1] Plaintiff Walter
Hutchins' situation is no different from that of countless
voters living in nursing homes across North Carolina who
require assistance pursuant to Section 208. As long as this
Court takes judicial notice of three facts that are beyond
dispute, it becomes clear that the preliminary injunction
that issued to enforce Mr. Hutchins' rights under Section 208
should be extended to cover all similarly-situated

---

[1] Federal Rule of Evidence 201(b) provides that this Court
may take judicial notice of "a fact that is not subject to
reasonable dispute because it: (1) is generally known within
the trial court's territorial jurisdiction; or (2) can be
accurately and readily determined from sources whose accuracy
cannot reasonably be questioned."

10

individuals throughout the state, even in the absence of any certified class. These facts include that: (1) there are North Carolina voters who are residents of nursing homes; (2) some voters at nursing homes require assistance in voting, pursuant to Section 208 of the Voting Rights Act, on account of their blindness, disability, or inability to read or write; and (3) nursing homes are on lockdown due to the Covid-19 pandemic and as required by Governor Cooper's Executive Order Nos. 138, 141, and 155, meaning that nursing home residents who are entitled to such assistance under Section 208 must be able to choose an assistant who is within the facility. "[T]here are no relevant regional or localized facts that would counsel in favor of limiting the scope of the injunction" and leaving other courts free to hear different Section 208 claims applied to different factual scenarios. *Roe*, 359 F. Supp. 3d at 422.

As to the first and third facts, Plaintiff Hutchins' declaration makes clear that he is a Section 208 voter at a nursing home who requires assistance to mark, cast, and submit his mail-in ballot. *See* ECF No. 11-9, Hutchins Decl. ¶¶ 1, 6, 9-12. Indeed, this Court has already acknowledged in its Order

11

that Mr. Hutchins is far from alone in these circumstances. ECF No. 124 at 175-76.

As to the second fact, Section 7.A of Governor Cooper's Executive Order No. 138, which has been extended through September 11, 2020, by Executive Order Nos. 141 and 155,[2] prohibits visitation at facilities like Mr. Hutchins': "Long term care facilities shall restrict visitation of all visitors and non-essential health care personnel, except for certain compassionate care situations, for example, an end-of-life situation."[3] These three Executive Orders, which successively incorporate and extend Section 7 of Executive Order No. 138, make it unlawful for nursing homes like The Davis Community to open to visitation in any circumstance other than death; voting assistance is not a permissible, enumerated exception to the rule. The Court has already found that "*many nursing homes are locked down and will likely*

---

[2] Executive Order No. 141 ("Phase 2 Order") (May 20, 2020), Section 10.B, https://files.nc.gov/governor/documents/files/EO141-Phase-2.pdf; Executive Order No. 155 (Aug. 5, 2020), Section I, https://files.nc.gov/governor/documents/files/EO155-Extension-of-Phase-2.pdf (extending EO No. 141 through September 11, 2020).

[3] Executive Order No. 138 (May 5, 2020), https://files.nc.gov/governor/documents/files/EO138-Phase-1.pdf.

*continue to have restricted access for the foreseeable future*; 208-voters in these type of adult care facilities may only come into contact with 'an owner, manager, director, [or] employee' of their residence and therefore may not have any options for assistance. . . . **With those facts in mind**, the court is satisfied that North Carolina's laws violate Section 208." ECF No. 124 at 175-76 (emphasis added). Accordingly, this Court has already found all the facts that it needs to accord full relief to all residents of locked-down long-term care facilities in North Carolina who are entitled to voting assistants of their choice under Section 208. In finding that other nursing home residents like Mr. Hutchins will experience the same denial of their rights and the same injury, this Court has already found that nursing home residents are in a catch-22, caught between the state law restriction on assistance and the lockdown order for their facilities in Executive Order No. 138.

An extension of this Court's injunctive relief is warranted, even in the absence of a certified class. Because these state laws and orders are applicable uniformly and on a statewide basis, this case necessarily concerns "more than disparate incidents." *See, e.g.*, *Nick v. Bethel*, Case No.

13

3:07-cv-0098 TMB, 2008 WL 11456134, at *5 (D. Alaska July 30, 2008) (issuing broadly-applicable injunctive relief for denial of Section 208 rights to voters who require assistance during in-person voting, even in absence of certified class).

The law in the Fourth Circuit holds that class certification is not required to obtain relief that covers all individuals injured by a challenged law or policy. In *Thomas v. Washington County School Board*, the Fourth Circuit explained that

> [t]he fact that [the plaintiff] did not bring a class action is of no moment. . . . This is so because the settled rule is that whether plaintiff proceeds as an individual or on a class suit basis, the requested [injunctive] relief generally will benefit not only the claimant but all other persons subject to the practice or the rule under attack[.]

915 F.2d 922 (4th Cir. 1990) (quoting *Sandford v. R.L. Coleman Realty Co.*, 573 F.2d 173 (4th Cir. 1978)); *see also Allen v. Lloyd's of London*, No. CIV. A. 3:96CV522, 1996 WL 490177, at *62 (E.D. Va. Aug. 23, 1996) (noting that in countless cases finding violation of § 14(a) of the 1934 Securities Exchange Act, scope of the relief was shareholder-wide, even though none of those cases were brought as class actions and collecting cases), *rev'd on other grounds*, 94 F.3d 923 (4th Cir. 1996). Other circuits have concurred, noting that

14

"[w]hile injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification, 'an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit-even if it is not a class action . . .'" *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987) (emphasis in *Bresgal*)).

Courts have particularly found broader injunctive relief beyond that issued for the named plaintiffs is warranted to address harms felt generally and statewide. Where "there are no relevant regional or localized facts that would counsel in favor of limiting the scope of the injunction to the named plaintiffs," courts are free to order relief that covers all individuals injured by a law or policy of statewide application, regardless of whether all injured individuals are before the Court or whether a class has been certified. *Roe v. Shanah*an, 359 F. Supp. 3d 382, 422 (E.D. Va. 2019), *aff'd sub nom. Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020), *as amended* (Jan. 14, 2020). Indeed, this Court has held that injunctions protecting the rights of non-parties

15

are not overbroad and has rejected the notion that such
injunctions "may impede the 'percolation' of legal issues
through the court system, depriving higher courts of the
benefit of additional voices and fact patterns." *Guilford
College v. Wolf*, No. 1:18CV891, 2020 WL 586672, at *11
(M.D.N.C. Feb. 6, 2020). In *Guilford College v. Wolf*, this
Court rejected the government's argument for limiting the
injunction to the named plaintiffs, noting that "Plaintiffs'
challenge 'presents purely . . . narrow issue[s] of law'"
which are "not fact-dependent and will not vary from one
locality to another." *Id*. (citing *City of Chi. v. Sessions*,
888 F.3d 272, 290-91 (7th Cir. 2018) ("There are some legal
issues which benefit from consideration in multiple courts.
. . . But a determination as to the plain meaning of a sentence
in a statute is not such an issue.")).

This precedent governs the issuance of injunctions in
many civil rights, anti-discrimination, and voting rights
cases. *See, e.g.*, *Evans v. Harnett County Bd. of Educ.*, 684
F.2d 304, 305 (4th Cir. 1982) ("An injunction warranted by a
finding of unlawful discrimination is not prohibited merely
because it confers benefits upon individuals who are not
plaintiffs or members of a formally certified class");

16

*Sandford*, 573 F.2d at 179 (ordering "remand[ ] to the District Court for the entry of such injunctive relief in favor of the plaintiff Issac and any other blacks who, in the future, may be denied equal access to housing under the defendant's control").

To the extent this Court's decision to issue far narrower relief rested on an understanding of whether this case was facial or as-applied, Plaintiffs submit that the "facial versus as applied" dichotomy does not map particularly well onto conflict preemption claims like this one. *See United States v. South Carolina*, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) ("To the extent the plaintiffs are able to establish that portions of [the challenged state law] are preempted by federal law pursuant to the rules of preemption . . . , the 'facial' nature of plaintiffs' challenge is not important."), *modified in part*, 906 F. Supp. 2d 463 (D.S.C. 2012), *aff'd*, 720 F.3d 518 (4th Cir. 2013). In *Doe v. Reed*, the Supreme Court made clear that a claim can have both "facial" and "as-applied" aspects, and that if such a claim challenges a statute with respect to a subgroup of people or conduct to which it applies, then the "standards for a facial challenge" must be satisfied, but only "*to the extent of that*

17

*reach*." 561 U.S. 186, 194 (2010) (emphasis added). In full, Chief Justice Roberts wrote:

> The parties disagree about whether Count I is properly viewed as a facial or as-applied challenge. Compare Reply Brief for Petitioners 8 ("Count I expressly made an as-applied challenge") with Brief for Respondent Reed 1 ("This is a facial challenge to Washington's Public Records Act"). It obviously has characteristics of both: The claim is "as applied" in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is "facial" in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions.
>
> The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow—an injunction barring the secretary of state "from making referendum petitions available to the public," App. 16 (Complaint Count I)—reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach. *See United States v. Stevens*, 559 U.S. 460, 472 – 473, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010).

*Id.*

Applying that framework here, to be sure, Plaintiff Hutchins has not sought full facial invalidation of N.C. Gen. Stat. §§ 163-226.3(a)(4)-(6) and 163-231(b)(1). But the only voters in nursing homes with standing to bring a Section 208 claim will be those to whom N.C. Gen. Stat. §§ 163-226.3(a)(4)-(6) and 163-231(b)(1) are unlawfully applied. Accordingly, whether this preemption challenge is labeled

18

"facial" or "as applied" is immaterial, because as to the group of voters in nursing homes who need and are entitled to assistance under Section 208—the only individuals with standing to bring this claim—there are zero lawful applications of the challenged laws, N.C. Gen. Stat. §§ 163-226.3(a)(4)-(6) and 163-231(b)(1). Accordingly, this Court has already found facts and reach legal conclusions establishing that, "to the extent of [the Section 208 claim's] reach," *Doe v. Reed*, 561 U.S. at 194, which embraced *all* nursing home residents in North Carolina entitled to assistance under Section 208, there are no lawful applications of the challenged laws.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that their Motion for Reconsideration and Modification of the Preliminary Injunction be granted and that the preliminary injunction be modified to afford the same relief provided to Plaintiff Walter Hutchins to *all* residents of facilities subject to N.C. Gen. Stat. §§ 163-226.3(a)(4)-(6) and 163-231(b)(1) who are entitled to voting assistance pursuant to Section 208 of the Voting Rights Act.

Dated: August 24, 2020.          Respectfully submitted,

/s/ _Jon Sherman_
Jon Sherman
D.C. Bar No. 998271
Michelle Kanter Cohen
D.C. Bar No. 989164
Cecilia Aguilera
D.C. Bar No. 1617884
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 450
Washington, D.C. 20006
Telephone: (202) 331-0114
Email:
jsherman@fairelectionscenter.or
g
mkantercohen@fairelectionscente
    r.org
caguilera@fairelectionscenter.o
    rg

/s/ _Allison J. Riggs_
Allison J. Riggs (State Bar
#40028)
Jeffrey Loperfido (State
Bar #52939)
Hilary Klein (State Bar
#53711)
Southern Coalition for
Social Justice
1415 West Highway 54, Suite
101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942
Email:
Allison@southerncoalition.
org
jeff@southerncoalition.org

/s/ _George P. Varghese_
George P. Varghese (Pa. Bar
No. 94329)
Joseph J. Yu (NY Bar No.
4765392)
Stephanie Lin (MA Bar No.
690909)
Rebecca Lee (DC Bar No.
229651)
Richard A. Ingram (DC Bar
No. 1657532)
WILMER CUTLER PICKERING HALE AND
DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
Email:
george.varghese@wilmerhale
    .com
joseph.yu@wilmerhale.com
stephanie.lin@wilmerhale.c
    om
rebecca.lee@wilmerhale.com
rick.ingram@wilmerhale.com

## **WORD CERTIFICATION**

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the word count for PLAINTIFFS' MOTION FOR RECONSIDERATION AND MODIFICATION OF PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT THEREOF is 3,718 words. The word count excludes the case caption, signature lines, cover page, and required certificates of counsel. In making this certification, the undersigned has relied upon the word count of Microsoft Word, which was used to prepare the brief.

*/s/ Jon Sherman*

Jon Sherman

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on August 24, 2020, PLAINTIFFS' MOTION FOR RECONSIDERATION AND MODIFICATION OF PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT THEREOF was served on all counsel of record by electronic filing via the CM/ECF system.

*/s/ Jon Sherman*
Jon Sherman