**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, DONNA PERMAR, JOHN P. CLARK, MARGARET B. CATES, LELIA BENTLEY, REGINA WHITNEY EDWARDS, ROBERT K. PRIDDY II, WALTER HUTCHINS, AND SUSAN SCHAFFER,<br><br>     *Plaintiffs,*<br><br>     *vs.*<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; KEN RAYMOND, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; DAVID C. BLACK, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; THE NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; J. ERIC BOYETTE, in his official capacity as TRANSPORTATION SECRETARY; THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES; MANDY COHEN, in her official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>     *Defendants,* | Civil Action No. 20-cv-457<br><br><br><br><u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ENFORCE ORDER GRANTING IN PART PRELIMINARY INJUNCTION, OR, IN THE ALTERNATIVE, MOTION FOR CLARIFICATION, AND TO EXPEDITE CONSIDERATION OF SAME**</u> |

1

PHILIP E. BERGER, in his official
capacity as PRESIDENT PRO TEMPORE OF
THE NORTH CAROLINA SENATE; TIMOTHY
K. MOORE, in his official capacity
as SPEAKER OF THE NORTH CAROLINA
HOUSE OF REPRESENTATIVES,

     *Defendant-Intervenors.*

Plaintiffs Democracy North Carolina, The League of Women
Voters of North Carolina, Donna Permar, John P. Clark,
Margaret B. Cates, Lelia Bentley, Regina Whitney Edwards,
Robert K. Priddy II, Walter Hutchins, and Susan Schaffer
("Plaintiffs") hereby move the Court for an order enforcing
the Memorandum Opinion and Order on Preliminary Injunction,
Doc. 124 (the "PI Order") granted on August 4, 2020 directing
Defendant the State Board of Elections ("SBE") to neither
disallow nor reject – nor permit the disallowance or rejection
of - absentee ballots in North Carolina. In the alternative,
Plaintiffs respectfully request that the Court clarify its PI
Order to specify the procedure by which voters are to be
afforded due process in compliance with that Order, as set
forth below. Plaintiffs further request expedited briefing
and consideration of this motion in order to ensure the timely
processing of absentee ballots.

Plaintiffs have attempted to give the SBE sufficient time to implement necessary measures and train county boards to comply with the Court's order before bringing these issues to the Court's attention. However, over last weekend, two lawsuits were filed in the U.S. District Court for the Eastern District of North Carolina, which challenged the entire absentee ballot cure process. Given the confusion already created by the SBE' failure to implement a cure procedure that complies with the PI Order and the confusion caused by the two new lawsuits, Plaintiffs can no longer wait to seek enforcement of the Court's order. The Court should act now to ensure that the due process rights of North Carolina's voters are protected.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiffs initiated this action on May 22, 2020 alleging that State Defendants' enforcement of certain restrictions in North Carolina's election code and failure to provide other accommodations during the COVID-19 pandemic present violations of the First and Fourteenth Amendments as well as various federal laws. Doc. 1. Plaintiffs thereafter filed an Amended Complaint, Doc. 8, and Motion for Preliminary Injunction and Consent Request to Expedite

3

Briefing/Consideration of same, Doc. 9, on June 5, 2020. Defendant-Intervenors filed a Motion to Intervene on June 10, 2020, Doc. 16, which was granted by the Court on June 12, 2020. 6/12/2020 TEXT ORDER.

Plaintiffs filed a Second Amended Complaint, Doc. 30, and an Amended Motion for Preliminary Injunction, Doc. 31, on June 18, 2020. Following discovery in the form of witness depositions as well as other motions practice, the Court held an evidentiary hearing and heard oral argument on Plaintiffs' Amended Motion for Preliminary Injunction on July 20, 21, and 22, 2020.

On August 4, 2020, this Court issued the PI Order, granting in part Plaintiffs' Amended Motion for Preliminary Injunction, and issuing, in relevant part, the following relief:

> IT IS ORDERED that Defendants, including the North Carolina State Board of Elections, are PROHIBITED AND ENJOINED from the disallowance or rejection, or permitting the disallowance or rejection, of absentee ballots without due process as to those ballots with a material error that is subject to remediation. This injunction shall remain in force until such time as Defendants implement a law or rule which provides a voter with notice and an opportunity to be heard before an absentee ballot with a material error subject to remediation is disallowed or rejected.

Order, Doc. 124 at 187.

4

Starting on August 6, 2020, Plaintiffs sought to confer with counsel for the State Defendants regarding the relief granted by the Court. *See* Ex. 1 (Email Correspondence), Ex. 2 (August 12, 2020 Letter), Ex. 4 (August 26, 2020 Letter). In this correspondence, counsel for Plaintiffs conveyed their understanding of what was required by the Court's PI Order, including an enforceable rule or law that would ensure timely and adequate notice to voters of material errors subject to remediation, as well as enforcement and monitoring to ensure this law or rule would be implemented uniformly in all counties throughout the state. *See generally* Ex. 2 (August 12, 2020 Letter).

Over one month ago, on August 21, 2020, Defendant Executive Director Karen Brinson Bell issued Numbered Memo 2020-19 regarding "Absentee Processes," attached hereto as Exhibit 3, "direct[ing] the procedure county boards must use to address deficiencies in absentee ballots." This memo set forth a process by which counties are required to notify voters of any curable deficiency within one day of county staff identifying the issue. *Id*. at 1. It allowed voters to cure any issue with voter information or signature using a "Cure Affidavit," and gave the option to voters whose ballots

5

had witness-related deficiencies to either vote with a new absentee ballot or vote in person. *Id.* at 2. It further provided voters an opportunity to be heard in person during the county canvass period. *Id.* at 4.

On September 4, 2020, counties began sending out absentee mail-in ballots to voters who had requested them. One week later, on September 11, 2020, Associate General Counsel for the State Board of Elections (the "SBE") Kelly Tornow contacted the directors of all county boards of elections asking them to stop notifying voters "for the next few hours" and promising updated guidance "by the end of the day." *See* Ex. 5 (September 11, 2020 Letter from Ms. Tornow).

The SBE did not issue any updated guidance to counties until September 22, 2020, when Director Bell issued a Revised Numbered Memo 2020-19, Doc. 143-1. As a result, the notice process to voters was formally on hold for almost two weeks. This revised guidance was issued the same day that the SBE reached a consent agreement in *N.C. Alliance for Retired*

*Americans v. N.C. State Board of Elections*, No. 20-CVS-8881 (Wake Cty. Super. Ct).[1]

Revised Numbered Memo 2020-19 allows voters to cure deficient witness information in addition to the voter information using a "Cure Certification" and extends the deadline for absentee ballots postmarked on or before election day to be received from November 6 to November 12, 2020. Doc. 143-1. Neither the original nor Revised version of Numbered Memo 2020-19 provides a required timeline for county boards of elections to review absentee ballots for deficiencies that would ensure timely notice to voters; nor do they provide any information as to how the SBE will monitor or assure uniform absentee ballot processing. As of the date of this filing, no law, emergency or other rule, or provision in North Carolina's administrative code has been issued mandating that North Carolina voters be provided notice and an opportunity to be heard before an absentee ballot with a material error subject to remediation is disallowed or rejected.

---

[1] This motion is available at
https://s3.amazonaws.com/dl.ncsbe.gov/Requests/Joint%20Moti
on%20for%20Entry%20of%20Consent%20Judgment.pdf.

On September 26, 2020, two actions were filed in the Eastern District of North Carolina challenging the cure process set forth in Revised Numbered Memo 2020-19: (1) *Moore v. Circosta*, No. 5:20-cv-507 (E.D.N.C. Sept. 26, 2020) ("*Moore v. Circosta*"); and (2) *Wise v. N.C. State Board of Elections*, No. 5:20-cv-505 (E.D.N.C. Sept. 26, 2020) ("*Wise v. NCSBOE*").[2]

In *Moore v. Circosta*, the Defendant-Intervenors in this matter as well as three individuals allege, as relevant here, that Revised Numbered Memo 2020-19 violates the Elections and Equal Protection Clauses of the U.S. Constitution by allowing for absentee ballots without a witness and by extending the absentee ballot receipt deadline by six days. Ex. 9, Complaint ¶¶ 81-82, 93, *Moore v. Circosta* (Sept. 26, 2020). While plaintiffs in *Moore v. Circosta* only identify these two issues with Revised Numbered Memo 2020-19, they seek a declaratory judgment finding Revised Numbered Memo 2020-19 is unconstitutional as a whole and to "enjoin[] Defendants from

---

[2] Both cases have been assigned to the Honorable Judge Dever of the Eastern District of North Carolina. *See* 9/29/2020 TEXT ORDER, *Wise v. SBOE*; Order, *Moore v. Circosta*, Doc. 18.

enforcing and distributing Numbered Memo 2020-19." *Id.* at 22 ¶¶ (a), (d), and (e).

Plaintiffs in *Moore v. Circosta* also filed a Motion for a Temporary Restraining Order that similarly requests the court "enjoin[] Defendants from enforcing and distributing Numbered Memo 2020-19." Ex. 10, Motion, *Moore v. Circosta*, Doc. 9 at 23. In a Response to Defendants' Motion to Transfer Venue, the plaintiffs in *Moore v. Circosta* stated they are "not challenging here Numbered Memo 2020-19 in its original form, but only as amended on September 22 to eviscerate the witness requirement." Ex. 12, *Moore v. Circosta*, Doc. 21 at 6. However, when counsel for Plaintiffs before this Court asked counsel for Defendant-Intervenors to confirm they were only seeking to enjoin specific provisions of Numbered Memo 2020-19 and to amend the prayer for relief accordingly, Defendant-Intervenors confirmed that they were indeed asking to enjoin the *entire* Revised Numbered Memo 2020-19 instead of specific provisions therein and, declined to answer whether they would amend the prayer for relief to make this clear to the court in that matter. Ex. 14 (Email from Nicole Moss to Hilary Klein, September 29, 2020).

9

In *Wise v. NSCBOE*, the plaintiffs allege, as relevant here, that the revisions to Numbered Memo 2020-19 "unilaterally negate[] the Witness Requirement" in violation of the Elections Clause and Article II § 1 of the U.S. Constitution and the Fourteenth Amendment. *See* Ex. 7, Complaint, *Wise v. NCSBOE*, Doc. 1 at ¶¶ 88, 96, 104. However, plaintiffs request in their prayer for relief a "permanent injunction prohibiting Defendants from implementing and enforcing . . . the related Numbered Memos" including Numbered Memo 2020-19, *id.* at 33 ¶ (b), and similarly filed a Motion for a Temporary Restraining Order to "prevent . . . enforcement of the Numbered Memos described below" including Numbered Memo 2020-19. Ex. 8, Motion, *Wise v. NCSBOE*, Doc. 3 at 2.

On September 28, 2020, the defendants in *Wise v. NCSBOE* and *Moore v. Circosta* (who are also a subset of the State Defendants in this matter) filed motions to transfer the cases to this Court, arguing that the issues in the aforementioned cases "substantially overlap with those present and already considered" in the case before this Court. Ex. 13, Motion to Transfer, *Moore v. Circosta*, Doc. 15, at 13; Ex. 11, Motion to Transfer, *Wise v. NCSBOE*, Doc. 7, at 13. On September 30,

10

2020, the Honorable Judge Dever denied the motion to transfer filed in *Moore v. Circosta* and set the response deadline for plaintiff's motion for TRO by 9:00 A.M. on Thursday, October 1, 2020. Plaintiff then may reply by 9:00 A.M. on Friday, October 2, 2020. Ex. 15, Order Denying Transfer Motion, *Moore v. Circosta*, Doc. 26, at 4. The court has not yet ruled on the motion to transfer filed in *Wise v. NCSBOE*.

The delay in revising Numbered Memo 2020-19 has caused confusion and delay by county boards of election in providing voters with due process regarding material errors subject to remediation with their ballots. *See generally* Ex. 16, Declaration of Talia Ray ("Ray Decl."); *see also Trump Campaign Tells Election Boards Across NC to Ignore State Guidance on Absentee Ballots,* WRAL (Sept. 29, 2020), https://www.wral.com/trump-campaign-tells-elections-boards-across-nc-to-ignore-state-guidance-on-absentee-ballots/19311239/. County boards of elections began holding public meetings each Tuesday starting September 29, 2020, for the purpose of approving and disapproving absentee ballot

11

applications. N.C. Gen. Stat. § 163-230.1(f), as amended by H.B. 1169 (S.L. 201-239), Section 4.[3]

**QUESTIONS PRESENTED**

1. Has the SBE failed to implement a law or rule providing North Carolina voters with notice and an opportunity to be heard before an absentee ballot with a material error subject to remediation is disallowed or rejected as required by the PI Order such that the Court should either:

      a. issue an order prohibiting the disallowance or rejection of absentee ballots with material errors statewide; or

      b. issue a more definitive statement in the form of an order adopting and requiring the implementation of the cure process?

2. Would an order specifying the process for providing voters with due process ensure compliance with the PI Order and reduce the potential for conflicting orders in this matter as well as the *Moore v. Circosta* and *Wise v. NCSBOE* matters?

---

[3] Absentee ballot "applications" are on the ballot envelope and contain all the witness and voter certifications.

3. Given that county boards of election have already begun meeting weekly to act upon absentee ballots as of September 29, 2020, and there is significant confusion as to the current processing of absentee ballots, should this motion be subject to expedited briefing?

**ARGUMENT**

The PI Order is clear and unambiguous: State Defendants, including the SBE, must assure due process as to those absentee ballots with a material error that are subject to remediation, and may not disallow or reject such ballots, or permit their disallowance or rejection, until implementing a law or rule providing voters with notice and an opportunity to be heard. PI Order, Doc. 124 at 187.

As of the date of this filing, the SBE has failed to implement any such rule or law, and the direction issued to county boards in Numbered Memo 2020-19 fails to satisfy due process in both its content and implementation. Furthermore, the SBE has failed to assure uniform compliance with the guidance put in place. Thus even if Numbered Memo 2020-19 did qualify as a rule or law, and did satisfy due process requirements, the SBE has failed to implement this process fully enough to satisfy the order. Accordingly, Plaintiffs

13

respectfully request the Court enter an order detailing the
remedy necessary to enforce the PI Order to ensure uniformity
and avoid confusion arising from the filing of *Moore v.
Circosta* and *Wise v. NCSBOE*.

## I. Defendants Have Failed To Implement A "Law Or Rule" As Required By The PI Order.

The PI Order requires Defendants to implement a "law or
rule" to protect voters' procedural due process rights. PI
Order, Doc. 124 at 187. Revised Numbered Memo 2020-19 is the
only direction provided by Defendants since the Court issued
its Order regarding the processing of absentee ballots by
county boards of elections, including the notification of
material errors to voters. It does not qualify as either a
law under the North Carolina General Statutes or a rule under
the North Carolina Administrative Code in its current form.

In footnote 1 of Revised Numbered Memo 2020-19, Director
Bell states that the direction therein is issued pursuant to
the SBE's general supervisory authority over elections as set
forth in N.C. Gen. Stat. § 163-22(a), its ability to "compel
observance" by county boards pursuant to § 163-22(c), and the
authority of the Executive Director in § 163-26. Doc. 143-1
at 1. However, neither of these statutes provide that Numbered
Memos qualify as either rules or laws that would be

14

independently enforceable beyond the discretion of the SBE or Executive Director.

## II. The SBE Has Failed To Implement Numbered Memo 2020-19 So As To Assure Full Compliance In North Carolina.

Numbered Memo 2020-19 is devoid of any indication as to how the cure process will be or has been implemented by the SBE. There are no provisions explaining how Revised Numbered Memo 2020-19 will be monitored and enforced, or how county staff will be trained on the enforcement process. *See* PI Order at 187 ("This injunction shall remain in force until such time as Defendants *implement* a law or rule . . . ." (emphasis added)). Accordingly, there is no assurance that the process set forth in either the original or Revised Numbered Memo 2020-19 is being properly implemented and followed by county boards of elections.

To the contrary, there is evidence that the SBE has failed to implement adequately even the guidance set forth in the either version of Numbered Memo 2020-19. There is significant confusion among county board officials as to the process, and directors have reported not only delaying notice to voters but have expressed confusion as to how to execute the guidance provided. Ex. 16, Ray Decl. ¶¶ 4-8. At least one county director believes the director must wait until *after*

15

county boards have met to assess absentee ballots before notifying voters of issues and providing an opportunity to cure while others have started this process immediately, and others have expressed a need for further guidance on the process. *See* Ex. 16, Ray Decl. ¶ 8. This demonstrated lack of clarity indicates that the guidance put in place is not being adequately implemented across the state.

Plaintiffs have endeavored to allow time for the SBE to implement best practices and train county boards before bringing these issues to the Court's attention. However, in light of the two lawsuits filed days ago in the U.S. District Court for the Eastern District of North Carolina challenging the *entire* absentee ballot cure process and the commencement of absentee voting, Plaintiffs can no longer afford to wait to request enforcement of the Court's order. Given the confusion already created by the SBE's failures in promulgating and implementing a cure process in compliance with this Court's preliminary injunction and the multiple lawsuits addressing or challenging the cure process threatening further upheaval and voter confusion, the Court should act now to provide certainty to North Carolina voters and ensure that their due process rights are protected. This

16

will also provide finality and certainty for North Carolina's election administrators who are responsible for ensuring an orderly administration of the cure process.

Accordingly, direction from this Court regarding a procedure for voter notification, opportunity to cure and/or to be heard is necessary to effectuate this Court's due process ruling and PI Order.

### III. The Court Should Quickly Issue Clarification Setting Forth a Procedure Affording Timely and Adequate Notice and An Opportunity To Be Heard.

The Court indicated in the PI Order that due process requires voters to have timely notice of any issues that would cause their ballots to be rejected, as well as an opportunity to be heard such that voters may cure those deficiencies and have their votes properly counted. *See* PI Order, Doc. 124 at 155 ("[D]ue process is not provided when the election procedures do not give some form of post-deprivation notice to the affected individual so that any defect in eligibility can be cured and the individual is not continually and repeatedly denied so fundamental a right." (quoting *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990)); *id.* at 158 ("While the Court recognizes that the risk of an erroneous deprivation is by no means

17

enormous, permitting an absentee voter to resolve an alleged signature discrepancy nevertheless has the very tangible benefit of avoiding disenfranchisement. Accordingly, the probative value of additional procedures is high in the present case." (quoting *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1339 (N.D. Ga. 2018) (internal citation omitted))).

The guidance provided in either the original or Revised Numbered Memo 2020-19 fails to fulfill these due process requirements as it does not assure timely notice to voters and fails to provide voters with an adequate opportunity to be heard. There are three specific deficiencies outlined below that this Court must address to ensure compliance with its due process ruling. Accordingly, the Court should quickly issue a clarification of the PI Order adopting and setting forth in detail the procedure the SBE must follow to comply with this district court's ruling on the due process claim, and retain jurisdiction to enforce its preliminary injunction.

     A. Numbered Memo 2020-19 Fails To Require Timely Notice To Voters Of Material Errors Subject To Remediation.

Neither version of Numbered Memo 2020-19 assures that voters will receive timely notice of material errors subject

to remediation. While Section 3 requires notification of voters within 1 business day of the county identifying an issue, it does not specify a timeline by which counties must review absentee ballot applications for deficiencies upon receipt. *See* Ex. 4 at 3; Doc. 143-1 at 3. Accordingly, counties may technically comply with this guidance despite waiting until the eve of the election to review absentee ballot applications and notify voters, thereby depriving voters of a realistic opportunity to cure any deficiencies, vote with a new absentee ballot, or vote in person instead.

At least one county board of elections has delayed notifying voters of deficiencies, choosing to simply refrain from engaging in this process until there is more certainty to what the final cure process will require. Ex. 16, Ray Decl. ¶ 4. This delay initially came at the direction of the SBE and has been exacerbated by the filing of the above-mentioned lawsuits. Overall, this delay and uncertainty risks disenfranchising voters who, per this Court's order from August, are entitled to be contacted and given an opportunity to cure if there is a deficiency with their absentee ballot.

Accordingly, the Court should issue an order clarifying its PI Order and requiring that county boards of election

review absentee ballot envelopes within 3 business days of receipt and notify voters within 1 business day of any identified material errors subject to remediation.

B. The Original Numbered Memo 2020-19 Fails To Provide Voters With Adequate Notice.

The original notification procedures in Section 3 were unclear and appear to require only written notice via mail with only two exceptions: (1) if the voter has an email address "on file," counties are directed to send a cure affidavit via email; and (2) where a new ballot would need to be reissued October 30, 2020 or later, counties are directed to notify the voter by phone or email as well as by mail of the deficiency and their ability to either vote in person or contest the ballot's status during the canvass period. *See* Ex. 3 at 3. The apparent reliance on the USPS up until October 30, 2020 will not ensure timely or adequate notice to voters in light of the USPS's July 30, 2020 warning to North Carolina's Secretary of State that current state law requirements and deadlines are "incompatible with the Postal Service's delivery standards" and recommendation that election officials allow one week for delivery of absentee ballots to voters and one week for voters to return the

20

absentee ballot. *See* Letter from Thomas J. Marshall to Elaine Marshall (July 30, 2020).[4]

As this letter indicates, it could take a week for voters to learn of any issues with their ballot once notification is sent by the county board of elections, and thus voters who have mailed their ballot on October 28 or 29 will not learn of such deficiencies until after voting has ceased on November 3, 2020. Such voters whose ballots have witness certification issues will thus not be able to submit a new ballot or vote in person if they only receive notification after voting has closed.

Revised Numbered Memo 2020-19 addresses this issue by requiring counties to use phone numbers and email addresses to notify voters of deficiencies. *See* Doc. 143 at 3. Accordingly, this notice provision must be retained in any procedure implemented by the SBE and ordered by this Court. This Court should adopt this provision, so that it is clear this is necessary to vindicate voters' rights to due process

---

[4] Available at
https://wwwcache.wral.com/asset/news/state/nccapitol/2020/08/14/19235952/GC_US_Postal_Service_Letter-DMID1-5nui7a95y.pdf

and cannot be collaterally attacked in the separate federal challenges in the Eastern District of North Carolina.

Additionally, voters should be able to use the online tracking tool for absentee ballots, BallotTrax, to learn whether their ballot has been rejected and how they can cure it. This mechanism for notice is not provided in either version of Numbered Memo 2020-19.

### C. Numbered Memo 2020-19 Fails To Provide An Adequate Opportunity For Voters To Be Heard.

Neither the original nor Revised Numbered Memo 2020-19 provides voters with an adequate opportunity to be heard at the county canvass regarding deficiencies if they so choose. This opportunity to address alleged deficiencies at the county canvas is a crucial aspect to due process because many voters may not receive a notice of deficiency or be able to submit a cure certificate on a timely basis, especially since notice and cure will apparently rely on the USPS. *See* Part III.B, *supra* (discussing USPS's July 20, 2020 letter to North Carolina's Secretary of State regarding state's "incompatib[ilities] with the Postal Service's delivery standards"); *see also* Ex. 6, Opinion and Order, *Democratic National Committee v. Bostelmann*, No. 20-cv-249-wmc (W.D. Wisc. Sept. 21, 2020) at 21 (discussing report by USPS

22

Inspector General's Office finding "high risk" that "ballot[s] will not be delivered, completed and returned in time to be counted," and USPS "budget shortfalls," challenges introduced by COVID-19 rates among postal workers, and "major operational changes . . . that could slow down mail delivery.").

Section 5 of the original Numbered Memo 2020-19 requires voters to appear in person at the county canvass to contest the rejection of their deficient ballot. *See* Ex. 3 at 4. This in-person requirement does not provide an adequate opportunity to be heard to those voters who are unable to appear in person, especially those voters who have decided to vote by mail in order to avoid exposure to the novel coronavirus. For example, those voters who are at high risk from COVID-19 exposure, who are living in congregate living facilities on lockdown, who are hospitalized, or who are incarcerated (but not disenfranchised and still eligible to vote) will not have a reasonable opportunity to be heard. Furthermore, there is no indication that opportunities for voters to be heard will be made available at times that will accommodate voters who work and/or have childcare responsibilities, such as evening and weekend hours.

23

Revised Numbered Memo 2020-19 eliminates any opportunity for voters to be heard during canvassing (or otherwise) regarding a deficiency on their ballot. *See generally*, Doc. 143-1.

In order to assure an adequate opportunity to be heard that comports with due process, the Court should issue an order requiring that the SBE allow voters to attend county canvass remotely and offer times that will provide a reasonable opportunity to voters with varying schedules so that they can cure any material errors subject to remediation. *See Ray v. Franklin Cty. Bd. of Elections*, No. 2:08-cv-1086, 2008 U.S. Dist. LEXIS 116433, at \*19-20 (S.D. Ohio Nov. 17, 2008) (enjoining county board of elections to make reasonable accommodations to homebound plaintiff's disabilities finding it had improperly required her to visit the board in person to protect the validity of her absentee ballot).

D. Other Provisions In Revised Numbered Memo 2020-19 Should Be Adopted by this Court.

In addition to the expanded notice provisions discussed above, there are additional revisions in Revised Numbered Memo 2020-19 that should be adopted by this Court. These include (1) the direction in Section 1 that signature verification should not be used by counties, (2) the

24

additional guidance in footnotes 2 and 3 regarding how to evaluate names and addresses on envelopes; and (3) the direction in Section 2 pertaining to witness signatures that are in the wrong location or missing witness information that the SBOE determines does not constitute a material defect or, if deemed a material defect, may be cured by a voter after notification.

    E. This Court Should Retain Jurisdiction to Ensure Compliance with its Order.

Given the SBE's first attempt at complying with this Court's PI Order has been insufficient to date, and the one hundred county boards of elections throughout the state have so far endured a confusing process that has been mired in additional litigation, even after the parties in this action declined to appeal, respectfully, this Court should retain jurisdiction to ensure uniform and faithful compliance with the detailed cure procedure it sets forth. The PI Order should not be dissolved or lifted until the entry of a permanent injunction or this case is terminated.

## REQUEST FOR EXPEDITED CONSIDERATION

Plaintiffs respectfully request expedited briefing and consideration of this motion. Pursuant to N.C. Gen. Stat. §

163-230.1(f), as amended by H.B. 1169 (S.L. 201-239), Section 4, county boards of elections began holding public meetings each Tuesday beginning Tuesday, September 29, 2020, for the purpose of approving and disapproving absentee ballot applications. Plaintiffs sought repeatedly and over the course of several weeks in good faith to confer with the SBE on the relief ordered by the Court and to give Defendants time to implement a law or rule that would comply with the PI Order. *See* Exs. 1, 2, 3. However, given the delay in notification and additional confusion introduced by the two federal lawsuits, Plaintiffs believe the requested relief is warranted as soon as possible to ensure certainty for voters and election officials alike and constitutionally adequate due process for mail-in absentee voting in the upcoming general election.

Accordingly, there is good cause to expedite briefing of this motion in order to assure an adequate opportunity for processing absentee ballots and to provide clarity to county boards of elections as to the process required by the Court's PI Order as soon as possible, and Plaintiffs respectfully request that the Court shorten the requirements of Local Civil Rule 7.3(f).

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court issue an order enforcing and the PI Order by adopting and setting forth a detailed cure procedure as set forth above, and for expedited consideration of this Motion.

Dated: September 30, 2020.

Respectfully submitted,

/s/ *Jon Sherman*
Jon Sherman
D.C. Bar No. 998271
Michelle Kanter Cohen
D.C. Bar No. 989164
Cecilia Aguilera
D.C. Bar No. 1617884
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 450
Washington, D.C. 20006
Telephone: (202) 331-0114
Email:
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org

/s/ *Allison J. Riggs*
Allison J. Riggs (State Bar #40028)
Jeffrey Loperfido (State Bar #52939)
Hilary Klein (State Bar #53711)
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942
Email:
Allison@southerncoalition.org
jeff@southerncoalition.org

/s/ *George P. Varghese*
George P. Varghese (Pa. Bar No. 94329)
Joseph J. Yu (NY Bar No. 4765392)
Stephanie Lin (MA Bar No. 690909)
Rebecca Lee (DC Bar No. 229651)
Richard A. Ingram (DC Bar No. 1657532)
WILMER CUTLER PICKERING HALE AND

27

DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
Email:
george.varghese@wilmerhale
    .com
joseph.yu@wilmerhale.com
stephanie.lin@wilmerhale.c
    om
rebecca.lee@wilmerhale.com
rick.ingram@wilmerhale.com

28

## WORD CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the word count for PLAINTIFF'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO ENFORCE THE PRELIMINARY INJUNCTION is 4818 words. The word count excludes the case caption, signature lines, cover page, and required certificates of counsel. In making this certification, the undersigned has relied upon the word count of Microsoft Word, which was used to prepare the brief.

*/s/ George P. Varghese*
George P. Varghese