UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, <br><br> *Defendants*, <br><br> and <br><br> PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, *et al.*, <br><br> *Defendant-Intervenors.* | Civil Action No. 20-cv-00457 <br><br><br> **DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE ORDER** |

Defendant-Intervenors Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official capacity as speaker of the North Carolina House of Representatives ("Legislative Defendants"), respectfully submit this response to Plaintiffs' Motion to Enforce Order Granting in Part Preliminary Injunction, Or, In the Alternative, Motion for Clarification, and to Expedite Consideration of Same (Doc. 147) addressing the four questions set forth in the Court's October 1, 2020 Order (Doc. 149).

I.  **Question 1**

The Supreme Court, invoking its decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) "has repeatedly emphasized that lower federal courts should ordinarily not alter the election

1

rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). That is because "practical considerations sometimes require courts to allow elections to proceed despite pending legal challenges." *Riley v. Kennedy*, 553 U.S. 406, 426 (2008). For example, "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls," a risk that will increase "[a]s an election draws closer." *Purcell*, 549 U.S. at 4–5.

Plaintiffs' motion, submitted at the eleventh-hour, violates these principles. *See Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (explaining that, under *Purcell*, "courts will generally decline to grant an injunction to alter a State's established election procedures" on the eve of an election, which is "especially true when a plaintiff has unreasonably delayed bringing his claim"). The Court issued its Memorandum Opinion and Order prohibiting and enjoining the North Carolina State Board of Elections ("NCSBE") "from the disallowance or rejection, or permitting the disallowance or rejection, of absentee ballots without due process as to those ballots with a material error that is subject to remediation" on August 4, 2020. *Democracy N.C. v. N.C. State Bd. of Elections*, No. 20-cv-457, 2020 WL 4484063, at *64 (M.D.N.C. Aug. 4, 2020). In response, seventeen days later on August 21, the NCSBE issued the original Numbered Memo 2020-19 to

2

"direct[] the procedure county boards must use to address deficiencies in absentee ballots." N.C. State Bd. of Elections, Numbered Memo 2020-19 at 1, Doc. 148-3 (Aug. 21, 2020) ("August Memo"). The August Memo explained that deficiencies that required an absentee ballot to be spoiled, and that could not "be cured by affidavit, because the missing information comes from someone other than the voter," included if a witness did not print her name, if a witness did not print her address, if a witness did not sign the ballot, and if a witness signed the ballot on the wrong line. *Id.* at 2. The NCSBE directed county boards that if they received a ballot with one of these deficiencies, they were to "spoil the ballot and reissue a ballot along with a notice explaining the county board['s] action." *Id.*

The August Memo remained in effect for 32 days until September 22, when the NCSBE, without further prompting from this Court, issued a revised Numbered Memo 2020-19. N.C. State Bd. of Elections, Numbered Memo 2020-19, Doc. 143-1 (revised Sept. 22, 2020) ("September Memo"). Contrary to the August Memo, the September Memo changed course and now explained that the same witness requirement deficiencies that required an absentee ballot to be spoiled pursuant to the August Memo could be cured "by sending the voter a certification" pursuant to the September Memo. *Id.* at 2. Eight days later, at the eleventh-hour on September 30, 2020, Plaintiffs submitted their motion. Consequently, as of the

3

date of Plaintiffs' motion, the August Memo had been in force and publicly available for 40 days, and the September Memo for 8 days.

Changing the election rules once again—after voting has already started, a paltry 13 days before in-person early voting begins, and a mere 32 days from election day—will engender substantial confusion among both voters and election officials, thereby violating *Purcell*. *See, e.g.*, *Tex. All. for Retired Ams. v. Hughs*, No. 20-40643, 2020 WL 5816887, at *1 (5th Cir. Sept. 30, 2020) (per curiam) (staying a district court order, on *Purcell* grounds, that changed election laws eighteen days before early voting was set to begin). "Time and time again over the past several years, the Supreme Court has stayed lower court orders that change election rules on the eve of an election." *Id.*; *see, e.g.*, *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (staying a lower court order that changed election laws thirty-three days before the election); *Husted v. Ohio State Conf. of the NAACP*, 573 U.S. 988 (2014) (staying a lower court order that changed election laws sixty days before the election); *Veasey v. Perry*, 135 S. Ct. 9 (2014) (denying application to vacate court of appeals' stay of district court injunction that changed election laws on eve of election); *Purcell*, 549 U.S. 1 (staying a lower court order changing election laws twenty-nine days before the election).

To date, North Carolina voters have requested 1,116,696 absentee ballots and cast 319,209 absentee ballots,[1] ballots that require a witness signature on their face. County boards have been, at one point or another, required to spoil absentee ballots with witness requirement deficiencies, *see* August Memo at 2–3, send voters who submitted absentee ballots with witness requirement deficiencies cure affidavits, *see* September Memo at 2–4, and hold absentee ballots with witness requirement deficiencies in limbo pending further guidance, *see* N.C. State Bd. of Elections, Numbered Memo 2020-27 (Oct. 1, 2020), https://bit.ly/34ipnnN (attached hereto as Ex. 1). The *Purcell* principle counsels strongly against judicial intervention at this late hour. The NCSBE has itself admitted that altering the election rules this close to the election would create considerable administrative burdens, confuse poll workers and local election officials, and engender disparate treatment of voters in the ongoing election. *See* Reply Br. of the State Bd. Defs.–Appellants at 3, Doc. 103, *N.C. State Conf. of the NAACP v. Raymond*, No. 20-1092 (4th Cir. July 27, 2020) ("[A]t this point in time, changes to the current [absentee voting] process would run a substantial risk of confusion and disparate treatment of voters for this election cycle. Thus, any mandate that the Court issues reversing the injunction should be given effect only after

---

[1] Absentee Data, N.C. STATE BD. OF ELECTIONS (Oct. 2, 2020), *available at* https://bit.ly/33SKzAw.

5

the current election cycle."); *id.* at 4 ("The proximity to the election . . . make[s] it practically impossible for the State Board to fairly and effectively administer the November 2020 elections under the [challenged election law], particularly in light of the significant administrative and voter-outreach efforts that would be required to do so."); *id.* at 22–30 (discussing the difficulty of changing election procedures in close proximity to the election and acknowledging that late-stage changes "may engender increased confusion among voters and poll workers," *id.* at 29); *cf.* Pls.' Opp'n to Legislative Defendants' Motion at 19–21, *Holmes v. Moore*, No. 18 CVS 15292 (N.C. Super. Ct. July 24, 2020) (arguing that changing the election rules "less than six weeks before early voting begins on September 4" would "leav[e] insufficient time for voter education[] [and] pollworker training" and cause "voter confusion") (attached hereto as Ex. 2). And these statements were made back in July.

II. <u>Question 2</u>

At minimum, this Court should restrain the NCSBE from relying on this Court's August 4 Memorandum Opinion and Order to issue the September Memo. Again, this Court ordered the NCSBE to "implement a law or rule which provides a voter with notice and an opportunity to be heard before an absentee ballot with a material error subject to remediation is disallowed or rejected." *Democracy N.C.*, 2020 WL 4484063, at *64. The NCSBE complied with the Court's order by

6

issuing the August Memo, which set forth "the procedure county boards must use to address deficiencies in absentee ballots." August Memo at 1.

But the NCSBE then went one step further. "[U]nder the guise of compliance with this [C]ourt's order," it issued the September Memo, which "may be reasonably interpreted to eliminate the one-witness requirement." Order, Doc. 145 at 3 (Sept. 30, 2020). But the Court's order provides no basis for the September Memo. Indeed, this Court has explained that it "does not find [the September Memo] consistent" with the Court's August 4 order, *id.*, because it "did not include any finding that *an absent witness signature was or is a curable defect*," *id.* at 6. Accordingly, to the extent that the NSCBE is erroneously using the Court's August 4 order as justification for the September Memo, this Court should restrain the NCSBE from doing so and clarify that the August 4 order does not countenance eliminating the witness requirement. *See Cobell v. Norton*, 355 F. Supp. 2d 531, 533, 541-42 (D.D.C. 2005) (admonishing defendant for using court's order to justify actions that went well beyond its scope).

### III. Question 3

To determine what constitutes a "curable" defect, this Court need look no further than the NCSBE's own definition in the August Memo. A curable deficiency is one that requires information or action by the voter, such as the voter failing to sign the voter

7

certification or signing the voter certification in the wrong place. August Memo at 2. By contrast, an uncurable deficiency is one that requires missing information "from someone other than the voter," such as a witness failing to sign the absentee ballot or failing to print their name and address, or situations in which an absentee ballot arrives at the county board office with an unsealed envelope or an envelope that appears to have been opened and resealed. *Id.*

Whatever definition of "curable defect" this Court adopts, however, it must not cover missing witness signatures. The General Assembly has determined that, for the November 2020 election, all absentee ballots must be witnessed by one person who is at least 18 years old. Bipartisan Elections Act of 2020, 2020 N.C. Sess. Laws 2020-17 ("HB1169") § 1.(a). Allowing a voter to "cure" a missing witness signature in any way other than spoiling the deficient ballot and issuing a new one would serve as an end-run around this requirement. The NCSBE's Executive Director herself has acknowledged this fact, testifying under oath in this Court that an absentee ballot with "no witness signature" could not be cured and therefore that election officials would have to "spoil that particular ballot" and require the voter to vote a new one. Doc. 113 at 122. This Court, too, has made clear that the findings in its August 4 order "did not include any finding that *an absent*

*witness signature was or is a curable defect.*" Order, Doc. 145 at 6.

The guidance the NCSBE provided to county boards of elections in the August Memo was entirely sufficient to address all curable defects. The August Memo instructed election officials when review for deficiencies was to occur, what deficiencies qualified as curable with an affidavit, how and when voters were to be contacted regarding deficiencies, how and when the cure affidavit was to be received, and the process for a voter to contest the disapproval of her deficient ballot at the county canvass. August Memo at 2-4. Nothing changed after the NCSBE issued the August Memo to justify substantially broadening the scope of the cure process in the September Memo.

### IV. Question 4

The September Memo, interpreted according to its plain and most natural reading, unambiguously eliminates the witness requirement for the November 2020 election, allowing for the transmogrification of an entirely unwitnessed (and hence invalid) ballot into a lawful, compliant ballot. It does so by explaining that an absentee ballot entirely devoid of witness information may be cured with a certification from the voter. September Memo at 2-4. But all that certification requires is that the voter merely affirm that she "voted and returned [her] absentee ballot for the November 3, 2020 general election and that [she] ha[s] not voted

9

and will not vote more than one ballot in this election." *Id.* at 7. In addition to failing to require an actual witness signature on the absentee ballot, the certification does not require voters to affirm that they had their ballots witnessed in the first place or even attempted to follow this important aspect of the law. Consequently, the September Memo vitiates HB1169 § 1.(a).

Accordingly, Legislative Defendants submit that the Court should order the NCSBE to return to the guidance contained in its August Memo—the status quo that was in effect prior to absentee ballots being sent out on September 4—which conforms with the General Assembly's duly enacted witness requirement and implements the Court's August 4 order. This would be faithful to *Purcell* and ensure that there is an operative cure process in place for all voters during the November 2020 election. As it currently stands, the NCSBE has ordered all county boards "that receive an executed absentee container-return envelope with a missing witness signature [to] take no action as to that envelope." Numbered Memo 2020-27. This is depriving voters with uncurable deficiencies with the witness certification from being notified of those defects and having an opportunity to submit a new ballot.

Dated: October 2, 2020   Respectfully submitted,

/s/ Nicole J. Moss              /s/ David H. Thompson
COOPER & KIRK, PLLC             COOPER & KIRK, PLLC
                                David H. Thompson

| | |
|---|---|
| Nicole J. Moss (State Bar No. 31958)<br>1523 New Hampshire Avenue, NW<br>Washington, D.C. 20036<br>(202) 220-9600<br>nmoss@cooperkirk.com<br>*Local Civil Rule 83.1 Counsel for Defendant-Intervenors* | Peter A. Patterson<br>1523 New Hampshire Avenue, NW<br>Washington, D.C. 20036<br>(202) 220-9600<br>dthompson@cooperkirk.com<br>*Counsel for Defendant-Intervenors* |

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Response to Plaintiffs' Motion to Enforce Order, including body, headings, and footnotes, contains 2,203 words as measured by Microsoft Word.

<u>/s/ Nicole J. Moss</u>
Nicole J. Moss

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on the 2nd day of October, 2020, she electronically filed the foregoing Response to Plaintiffs' Motion to Enforce Order with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record in this matter.

/s/ Nicole J. Moss
Nicole J. Moss