**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 20-cv-00457 |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, | |
| *Defendants*, | **DEFENDANT-INTERVENORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ALL WRITS ACT RELIEF** |
| and | |
| PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, *et al.*, | |
| *Defendant-Intervenors.* | |

**Statement of Matter Before the Court**

Defendant-Intervenors Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official capacity as speaker of the North Carolina House of Representatives ("Legislative Defendants"), respectfully submit this memorandum of law in support of Legislative Defendants' Motion for All Writs Act Relief, addressing the legal basis for relief and the issues raised in the Court's October 2, 2020 Order, Doc. 152. Consistent with this Court's October 5, 2020 Order, Doc. 153, this Motion is based on grounds for relief not present in *Moore v. Circosta*, No. 1:20-CV-911 (M.D.N.C.). Separate and apart from the All Writs Act relief

1

sought here, Legislative Defendants will be seeking to convert the temporary restraining order to a preliminary injunction in *Moore*.

## Question Presented

Whether State Defendants should be enjoined from enforcing Numbered Memo 2020-19, as amended on September 22, 2020, under the All Writs Act.

## Statement of Facts

North Carolina began voting on September 4, 2020. At the time, voting was conducted pursuant to this Court's August 4th order, Doc. 124, and the North Carolina State Board of Elections ("NCSBE") original Numbered Memo 2020-19 ("August Memo"). *See* Ex. 3 to Mem. ISO Mot. to Enforce Injunction, Doc. 148-3, Numbered Memo 2020-19 at 1 (Aug. 21, 2020). The August Memo explained what deficiencies in an absentee ballot could be cured by affidavit and those that required an absentee ballot to be spoiled. The August Memo made clear that if a witness did not print her name, if a witness did not print her address, if a witness did not sign the ballot, and if a witness signed the ballot on the wrong line, then the ballot had to be spoiled. *Id*. at 2. NCSBE directed county boards that if they received a ballot with one of these deficiencies, they were to "spoil the ballot and reissue a ballot along with a notice explaining the county board office's action." *Id*. And county boards appear to have followed NCSBE's instructions. In fact, NCSBE statistics show that over 2,300 ballots have been spoiled to date.

2

*Absentee Voting Data*, N.C. State Bd. of Elections (Oct. 4, 2020) (available at https://bit.ly/3jBfCre).

Voting in North Carolina started consistent with what Plaintiffs and NCSBE long-recognized in proceedings before this Court——clear rules established *before* voting started. For instance, during closing arguments on July 22, 2020, counsel for Plaintiffs said, "[v]oters in North Carolina need relief, and they need it as soon as possible." Tr. of Evidentiary Hearing, Doc. 114 at 13. Why? Counsel said because "Plaintiffs can't come into court in August or September –- we can't file a lawsuit in September and get relief." *Id*. at 24. During the same arguments, Counsel for NCSBE stated that "[t]here is currently scheduled training for county elections officials, I believe, the first week in August. And, obviously, if there are going to be changes, that's a *prime time* to make sure that county boards of elections know what those changes are. . . ." *Id.* at 127 (emphasis added). Counsel for NCSBE stressed that "[NCSBE] just always want to make sure the Court understands the implications of making changes at various times in the process, because they do have implications." *Id.* at 127; *see also* Reply Br. of the State Bd. Defs.–Appellants at 8, Doc. 103, *N.C. State Conf. of the NAACP v. Raymond*, No. 20-1092 (4th Cir. July 27, 2020) ("[A]t this point in time, changes to the current [absentee voting] process would run a substantial risk of confusion and disparate treatment of voters for this election cycle. Thus,

3

any mandate that the Court issues reversing the injunction should be given effect only after the current election cycle."). As counsel for Plaintiffs later added, late July was "the sweet spot" for changes to election rules. Doc. 114 at 207.

It is now October 5, 2020, and North Carolina is over two months removed from what the Plaintiffs and NCSBE described as the "sweet spot" or "prime time" to make changes. It is simply much too late. *Cf. id.* at 24 ("[W]e can't file a lawsuit in September and get relief."). Over two months ago, this Court issued its order denying Plaintiffs' request to invalidate the Witness Requirement, meaning the duly enacted requirement of at least one witness per absentee ballot would apply in this election. *See* Order, Doc. 124 at 102 (Aug. 4, 2020). As mentioned, NCSBE's cure procedure, as delineated in the August Memo (consistent with this Court's August 4th order), was issued over six weeks ago. And as of today, absentee balloting has been ongoing for over a month. 359,490 absentee ballots have been cast and over 1,193,857 requested. *Absentee Data*, N.C. STATE BD. OF ELECTIONS (Oct. 5, 2020), available at https://bit.ly/2G3stnJ. In just 10 days, early voting will start.

Yet *now* Plaintiffs seek this Court's approval for changes NCSBE unlawfully made to the rules for the ongoing election——the very same rules that both sets of parties attested could not be changed this late. NCSBE, without further prompting from this

4

Court, issued a revised Numbered Memo 2020-19 on September 22, 2020. Ex. A to Not. of Filing, Doc. 143-1, Numbered Memo 2020-19 (Sept. 22, 2020) ("September Memo"). Contrary to the August Memo, the September Memo changed course and explained that the same witness requirement deficiencies that required an absentee ballot to be spoiled pursuant to the August Memo could now be cured "by sending the voter a certification" pursuant to the September Memo. *Id.* at 2; *but see* Decl. of Kimberly Westbrook Strach at 36, *N.C. Alliance for Ret. Amer., et al., v. N.C. St. Bd. of Elections*, No. 20 CVS 8881 (Wake Cnty. Super. Ct. Sept. 30, 2020) (attached hereto as Exhibit 1) ("The cure form does not provide any of the safeguards the witness requirement provides."). This September Memo eviscerates the Witness Requirement that this Court upheld for this election in its August 4th order. Indeed, NCSBE has expressly confirmed that "the September 2020-19 memo's voter certification cure applied to an absentee ballot on which all witness information was missing." Order at 8 n.4, Doc. 47, *Moore v. Circosta*, No. 5:20-cv-507-D (E.D.N.C. Oct. 3, 2020) ("TRO Order") (attached hereto as Exhibit 2). Thus, the September Memo effectively eliminates the witness requirement altogether.

To add to the whiplash of mid-election rule changes, NCSBE announced just yesterday (October 4, 2020), that it was suspending the September Memo *and* the August Memo. *See* N.C. State Bd. of Elections, Numbered Memo 2020-28 at 1 (attached hereto as Exhibit

3) (emphasis added). This despite the fact that NCSBE just recently instructed county board officials to comply with the September Memo. *See* Decl. of Linda Devore at 2, Doc. 24-1, *Moore v. Circosta,* No. 5:20-CV-507-D (E.D.N.C. Sept. 29, 2020) (attached hereto as Exhibit 4) ("It was made clear that to the extent we were not already doing so, we were to immediately begin following revised Numbered Memo 2020-19's guidance under threat of removal from office").

Of course, this last change was not made voluntarily but in response to Judge Dever's temporary restraining order barring NCSBE from enforcing the revised Numbered Memo 2020-19. TRO Order at 19. Nothing in Judge Dever's order, however, restrains NCSBE from enforcing the August Memo, and by putting a halt on all cure procedures NCSBE is depriving voters of the opportunity to learn about and correct deficiencies in their ballots, whether by voting a new one for errors that cannot be cured or submitting a certification for curable errors.

Legislative Defendants respectfully submit this motion to put a halt to NCSBE's last-minute, ad-hoc changes to North Carolina's election statutes, ensure that this Court's August 4th order is followed, and ensure that voting proceeds under the rules that were in place when it began on September 4.

I.     *Purcell* **Counsels this Court Should Deny Plaintiffs' Motion**

For good reason, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). These late "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). "As an election draws closer, that risk that will increase." *Id.* at 5. The risk is especially pronounced when, as here, "absentee voting has been underway for many weeks." *Republican Nat'l Comm.*, 140 S. Ct. at 1207. *Purcell* undoubtedly counsels that the Plaintiffs' motion, seeking judicial imprimatur for even further changes by the NCSBE to the cure procedures, should be denied.

Under *Purcell,* courts should be mindful to ensure litigation does not change the status quo ante while elections are imminent or voting is ongoing. To that end, the Supreme Court has repeatedly halted lower court orders that changed election laws. *See, e.g., North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (staying a lower court order that changed election laws thirty-three days before the election); *Husted v. Ohio State Conf. of the NAACP*, 573 U.S. 988 (2014) (staying a lower court order

that changed election laws sixty days before the election); *Veasey v. Perry*, 135 S. Ct. 9 (2014) (denying application to vacate court of appeals' stay of district court injunction that changed election laws on eve of election); *Purcell*, 549 U.S. at 3 (staying an October 5th lower court order changing election laws twenty-nine days before the election). "[W]hen a lower court intervenes and alters the election rules so close to the election date . . . precedents indicate that th[e] [Supreme] Court, as appropriate, should correct that error." *Republican Nat'l Comm.*, 140 S. Ct. at 1207.

Accordingly, just this year, the Supreme Court during the pandemic has refused to vacate courts of appeals' stays of lower-court preliminary injunctions that changed election rules, *i.e.*, the Supreme Court has ensured that the electoral rules remain the same during voting. *See, e.g.*, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020) (staying injunction against Texas absentee ballot restrictions), *application to vacate stay denied*, 140 S. Ct. 2015 (2020) (mem.); *Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) (staying injunction against Ohio initiative signature requirements), *application to vacate stay denied*, No. 19A1054, 2020 U.S. LEXIS 3376 (U.S. June 25, 2020) (mem.). And the Supreme Court has on even more occasions *granted* stays of lower-court preliminary injunctions that have attempted to change electoral rules in light of the pandemic. *See, e.g.*, *Republican*

8

*Nat'l Comm.*, 140 S. Ct. 1205 (staying injunction against requirement that absentee ballots be postmarked by election day); *Little v. Reclaim Idaho*, 2020 U.S. LEXIS 3585 (U.S. July 30, 2020); *Clarno v. People Not Politicians Or.*, No. 20A21, 2020 U.S. LEXIS 3631 (U.S. Aug. 11, 2020) (mem.) (staying injunction against initiative signature requirement); *Merrill v. People First of Ala.*, No. 19A1063, 2020 U.S. LEXIS 3541 (U.S. July 2, 2020) (mem.) (staying injunction against absentee ballot witness requirement). Again, the Supreme Court has kept rules the same during voting.

The *Purcell* principle is nothing new to Plaintiffs and NCSBE. After all, both Plaintiffs' counsel and NCSBE's counsel emphasized the need for the rules governing the election to be established well before now. And NCSBE appeared to be following suit by publishing and disseminating the August Memo before voting began on September 4. The 2,300 spoiled ballots to date suggest as much. Only when NCSBE sought to change the Witness Requirement in the September Memo did NCSBE no longer abide by its own representations in this court (and *Purcell*) that election rules should not be changed *during* an election.

There is one abiding theme from the Plaintiffs' and NCSBE's representations to this Court, as well as the commands of Supreme Court precedent: election statutes, duly enacted by the state legislature, should not be changed or modified while citizens are voting. When NCSBE issued the September Memo, it acted inconsistent

9

with that *Purcell* principle. And Plaintiffs' motion invites the court to openly contradict it. Legislative Defendants thus respectfully request that this Court deny Plaintiffs' Motion.

## II. This Court Should Affirmatively Enjoin the September Memo under the All Writs Act

Moreover, Legislative Defendants respectfully request that this Court issue affirmative injunctive relief to stop the issuance and further enforcement of the September Memo and require NCSBE to conduct the remainder of the election under August Memo.[1] Specifically, in response to this Court's October 2, 2020 order that sought information on what authority would allow the Court to issue "an additional injunction" to restrain the September Memo, Legislative Defendants submit that relief under the All Writs Act would be appropriate here to "protect or effectuate" the Court's

---

[1] As argued more fully in Legislative Defendants' Response to Plaintiffs' Motion to Enforce Order, Doc. 150, this Court should look no further than the NCSBE's August Memo to determine what constitutes a "curable" defect. A curable deficiency is one that requires information or action by the voter, such as the voter failing to sign the voter certification or signing the voter certification in the wrong place. August Memo at 2. By contrast, an uncurable deficiency is one that requires missing information "from someone other than the voter," such as a witness failing to sign the absentee ballot.

It remains Legislative Defendants' position that the August Memo is consistent with this Court's August 4th order and the *Purcell* principle that the rules governing the election should be consistent throughout voting. Since the August Memo was in effect while hundreds of thousands of North Carolinians cast their votes, it is that Memo that represents the status quo ante.

In all events, whatever definition of "curable defect" this Court adopts, it must not cover missing witness signatures. The General Assembly has determined that, for the November 2020 election, all absentee ballots must be witnessed by one person who is at least 18 years old. Bipartisan Elections Act of 2020, 2020 N.C. Sess. Laws 2020-17 ("HB1169") § 1.(a). Allowing a voter to "cure" a missing witness signature in any way other than spoiling the deficient ballot and issuing a new one would serve as an end-run around this requirement.

10

August 4th preliminary injunction order. Order, Doc. 152 at 5-6 (Oct. 2, 2020).

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "This statute has served since its inclusion, in substance, in the original Judiciary Act" over two centuries ago "as a legislatively approved source of procedural instruments designed to achieve the rational ends of law." *Harris v. Nelson*, 394 U.S. 286, 299 (1969) (quotation marks omitted). For a court to provide relief under the All Writs Act, there are four requirements. All four are met here.

## A. Relief Would Be in Aid of this Court's Jurisdiction

A court may issue All Writs Act relief when it would be "'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999). Accordingly, there must be a "sufficient relationship" or nexus between the ongoing proceeding (or past order of the court) and the sought-after All Writs Act relief. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 n.6 (9th Cir. 2020) (internal quotation marks omitted); *see also United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977) (holding that third party was not "so far removed" thus All Writs Act order was appropriate).

11

In this case, there is a nexus between the Court's August 4th order declining to enjoin the Witness Requirement, the August Memo consistent with the Court's August 4th order, and the September Memo which eviscerates the Witness Requirement. Indeed, NCSBE represented to the Eastern District that the September Memo was issued "to comply with" the August 4th order. TRO Order at 9. Accordingly, there is a "sufficient relationship" between this Court's existing order and the September Memo, so as to fall within the ambit of All Writs Act relief. *Al Otro Lado*, 952 F.3d at 1006 n.6 (internal quotation marks omitted).

B. **All Writs Act Relief is Necessary and Appropriate**

All Writs Act relief must also be "necessary or appropriate." 28 U.S.C. § 1651(a). But the bar is not so high as to mean "'necessary' in the sense that the court could not otherwise physically discharge its . . . appellate duties." *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 273 (1942). Rather, All Writs Act relief may issue when, in the district court's "sound judgment," that relief will "achieve the ends of justice entrusted to it." *Id*. For instance, the Fourth Circuit recently reaffirmed that All Writs Act relief is necessary and appropriate when a party has engaged in "collateral attack of [the court's] judgments" and "frustration of orders [the court] has previously issued." *SAS Inst., Inc. v. World Programming Ltd.*, 952 F.3d 513, 521 (4th Cir. 2020) (citations omitted).

12

Here, NCSBE's September Memo, purportedly issued to comply with this Court's August 4 order, in fact "vitiate[s]" a key aspect of this Court's August 4th order. *SAS Inst., Inc.*, 952 F.3d at 521. Namely, as this Court recognized, the September Memo's evisceration of the witness requirement "ignores the fact that this court's order upheld the one-witness requirement and in so doing found that it was a reasonable measure to deter fraud." Order, Doc. 145 at 7–8 (Sept. 30, 2020). On those grounds alone, All Writs Act relief is warranted to prevent the September Memo's enforcement. *Cf. SAS Inst., Inc*, 952 F.3d at 524 ("[I]t strains logic to characterize a proceeding as separate and independent of a previous proceeding when its sole purpose is to vitiate the previous judgment." (internal quotation marks omitted)).

All Writs Act relief is further necessary and appropriate to prevent NCSBE from "circumvent[ing] the proceedings in this jurisdiction" in "nothing more than an attempt to end run, at the last minute, [this] court's judgment." *In re March*, 988 F.2d 498, 500 (4th Cir. 1993) (enjoining NY state court proceedings that interfered with bankruptcy court approved foreclosure sale). This Court already held that the Witness Requirement would apply in this election. The evidence and representations in this Court justified as much. NCSBE already acknowledged in sworn testimony before this Court that the Witness Requirement was something *that could not be cured*. Tr. of Evidentiary Hearing, Doc. 113 at 122

13

(July 21, 2020) (Executive Director Bell testifying that county boards of election would have to "spoil" a ballot missing a witness signature and require the voter to vote a new one). And under a sworn declaration, Executive Director Bell attested it would be *impractical* to change the Witness Requirement way back in June. Bell said,

> Any change to the witness requirement at this time would require that the absentee envelope be redesigned, which would re-start the process for formatting, review, artwork, printing, and distribution. This delay could result in county boards not being able to send ballots to voters who requested them on September 4, 2020.

Ex. 1 to State Defs.' Resp., Decl. of Karen Brinson Bell, Doc. 50-1 at 11 (June 26, 2020). Bell made similar impracticality arguments in July because of the difficulties of setting up a signature verification system to verify unwitnessed ballots. Doc. 113 at 42–44.

Yet in a state proceeding commenced after this Court's decision, NCSBE did what it told this Court it could not do and would not do. NCSBE was not ordered to engage in conduct that would serve to vitiate this Court's holding, but NCSBE instead affirmatively sought to settle claims along these grounds. The result of this "end run" around this Court's August 4th order and NCSBE's own representations to this court should be restrained under the All Writs Act.

NCSBE and Plaintiffs may argue the September Memo is required by these proceedings or a good-faith attempt to follow this Court's

14

August 4th order. But that argument makes little sense. As this Court explained, it "does not find [the September Memo] consistent" with the Court's August 4th order because it "did not include any finding that *an absent witness signature was or is a curable defect*," Doc. 145 at 3, 6 (emphasis added). The original August Memo further undermines any claim NCSBE understood this Court's August 4th order to require the new cure procedures. After all, if the new cure procedures truly were required by the August 4th order, that would mean the State Board was acting in open defiance of a court order from August 21, 2020 until the September Memo's release on September 22, 2020. *See* Aff. of Linda Devore ¶ 19, *N.C. Alliance for Ret. Amer., et al., v. N.C. St. Bd. of Elections*, No. 20 CVS 8881 (Wake Cnty. Super. Ct. Sept. 30, 2020) (attached hereto as Exhibit 5) (stating that before September 22 the Cumberland County Board of Elections spoiled ballots with witness deficiencies pursuant to the August Memo). And all the while Plaintiffs said nothing about it. That is implausible.

In all events, to the extent that NCSBE has actively represented the content of this Court's judgment in an inaccurate manner as part of its efforts to parlay this Court's judgment into relief *not ordered* by this Court, that is all the more reason to enjoin the September Memo. *See In re: Am. Honda Motor Co., Inc., Dealerships Relations Litig.*, 162 F. Supp. 2d 387, 395 n. 7 (D. Md. 2001), *aff'd sub nom. In re Am. Honda Motor Co., Inc.*, 315

15

F.3d 417, 444 (4th Cir. 2003) ("I am enjoining the award he entered not because of any mistake he made but because the Millers had no right to make before him the deceptive arguments they did, misrepresenting what had occurred during the Honda bribery litigation."); *cf. Cobell v. Norton*, 355 F. Supp. 2d 531, 533, 541–42 (D.D.C. 2005) (admonishing defendant for using court's order to justify actions that went well beyond its scope).

NCSBE's most recent steps undoubtedly "frustrate" this Court's "previously issued" order. *SAS Inst., Inc.*, 952 F.3d at 521. Consider what NCSBE did just yesterday (October 4, 2020). Executive Director Bell put "on hold until further notice" "*both versions*" of Numbered Memo 2020-19. *See* Numbered Memo 2020-28 at 1 (emphasis added). It is not clear why NCSBE suspended the August Memo too. The August Memo had been in effect when voting began and had been followed by county board officials as evidenced by the over 2,300 spoiled ballots and Ms. Devore's affidavit declaring that Cumberland County had spoiled ballots for witness deficiencies before issuance of the September Memo. Further, the August Memo fully complied with this Court's August 4th order and offered an appropriately limited cure procedure. And the temporary restraining order issued by Judge Dever *does not* impact the procedures in the August Memo. TRO Order at 19 ("This order does not enjoin or affect the August 2020-19 memo.").

While NCSBE's rationale is unclear, the upshot of its suspension of the August Memo is perfectly clear: NCSBE have suspended compliance with measures taken in response to this Court's August 4th order. In fact, it is hard to think of an action that would more clearly "frustrate" and flaunt this Court's August 4th order than a transparent suspension of compliance, two months later, *during voting*, in the very election this Court's order concerned. Moreover, the sole cause of NCSBE's actions is self-evidently the changes to the Witness Requirement that NCSBE issued in the September Memo. Without those changes, by all accounts, the August Memo would be in effect. The August Memo would be providing to North Carolinians the court-ordered cure procedures that had been in effect since voting started. But now those North Carolina voters with errors subject to remediation——or errors not subject to remediation that require the voting of new ballots——are losing time because of NCSBE recent suspension. NCSBE's actions vitiate this Court's August 4th order and its careful attention to ensure clear procedures were in place before voting started.[2]

## C. **All Writs Act Relief Would Be "Agreeable to Usages and Principles of Law"**

Injunctive relief barring enforcement of the September Memo would be "[a]greeable to the usages and principles of law." 28

---

[2] To make matters worse, although not before the court in this case, the September Memo's nullification of duly enacted North Carolina laws governing this election is unconstitutional under the Elections Clause, as explained in our briefing in the *Moore* case.

17

U.S.C. § 1651(a). After all, many All Writs Act cases involve injunctive relief *after* an order has been issued by the court. *See, e.g., SAS Inst., Inc.*, 952 F.3d at 521 (affirming two district court injunctions under the All Writs Act).

Contrary to NCSBE's argument in their Response to Plaintiffs' Motion to Enforce, Doc. 151, *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 124-25 (1984), does not bar this Court from providing injunctive relief here. In fact, relief under the All Writs Act "in aid of" this court's jurisdiction in this case does not implicate state law at all. Rather, this Court would be protecting and effectuating *its own* judgment that already declined to enjoin enforcement of the Witness Requirement and provided a limited cure process. And the fact that the Court may consider NCSBE's authority and various North Carolina statutes does not make this case "suddenly come[] within Pennhurst's grasp." *Donald J. Trump for President, Inc. v. Bullock,* CV-20-67, 2020 WL 5810556, at *5 (D. Mont. Sept. 30, 2020). Federal claims often require federal courts "to ascertain what" state law provides, but "ascertaining state law is a far cry from compelling state officials to comply with it." *Everett v. Schramm*, 772 F.2d 1114, 1119 (3d Cir. 1985); see also *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 423 (1st Cir. 1985) (observing that *Pennhurst* only proscribes federal courts "from requiring states to conform their conduct to state law *qua* state law"). In fact, the Supreme Court

18

has looked repeatedly to "'the method which the state has prescribed for legislative enactments'" to decide what constitutes state "[l]awmaking" for purposes of the Elections Clause. *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 807 (2015) (quoting *Smiley v. Holm*, 285 U.S. 355, 367 (1932)); *see also State of Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916); *Hawke v. Smith (No. 1)*, 253 U.S. 221 (1920). If NCSBE's view of *Pennhurst* were correct, every one of those rulings would have violated the Eleventh Amendment. That cannot be so.

Currently, there remains an unsettled question in the Fourth Circuit whether a party "must satisfy the four-factor test traditionally required for injunctive relief." *SAS Inst., Inc.*, 952 F.3d at 527. Some cases have applied the test without deciding if it had to, *see, e.g., id.*, while others have affirmatively not applied it, *see, e.g., See Trull v. Dayco Prods.*, LLC, 178 F. App'x 247, 251 (4th Cir. 2006); *Bryan v. BellSouth Telecomm., Inc.*, No. CIV. 1:02CV00228, 2006 WL 1540644, at *3 (M.D.N.C. May 31, 2006), aff'd 492 F.3d 231 (4th Cir. 2007); *S.C. Coastal Conservation League v. Ross*, No. 2:18-CV-03326-RMG, 2019 WL 259116, at *2 (D.S.C. Jan. 18, 2019). Based on these cases, this Court need not apply the four-factor test.

But should the Court find the four-factor test applies, the Legislative Defendants satisfy the test:

19

> Under the traditional equitable analysis, a plaintiff seeking injunctive relief must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a . . . injunction.

*SAS Inst., Inc.*, 952 F.3d at 527 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

NCSBE's unconstitutional usurpation of power to nullify the duly-enacted Witness Requirement is *per se* irreparable. "The inability to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018); *see also New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). NCSBE's actions are a serious affront to those "statutes enacted by representatives of its people," and thus cannot be remedied by damages but only be remedied by immediate injunctive relief. *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers).

Finally, the public interest and lack of harm to NCSBE and Plaintiffs warrant the relief. NCSBE's decision to issue the September Memo, changing the rules of balloting midstream, undermines public confidence in this election. The issuance of the September Memo, after voters had already voted, and now the suspension of the August Memo, have introduced additional

20

confusion and uncertainty into an election where citizens are already concerned about election security. Since "public confidence in the integrity of the electoral process has independent significance," the public interest would be served by enjoining further changes and reverting to the August Memo. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008) (controlling opinion of Stevens, J.). By contrast, NCSBE cannot be harmed by being required to honor this Court's orders and precluded from upending the rules in the midst of the election. "If anything, the system is improved by such" an order. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002). And since Plaintiffs never raised concerns with this Court about the August Memo during the several weeks it applied to voters, it is hard to see any harm to them from an injunction reverting to that August Memo.

### D. **No Other Statute Provides Relief**

The last requirement for All Writs Act relief is that no other statute may provide adequate relief. "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 42–43 (1985). This requirement has been construed to include the Federal Rules of Civil Procedure. For example, the Eleventh Circuit has rejected All Writs Act relief when a party sought relief "in essence" that

21

was a preliminary injunction. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005).

But the relief that Legislative Defendants request in *this* action is not a preliminary injunction. Such injunctions "'are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case,'" *S.C. Coastal Conservation League*, 2019 WL 259116, at *2 (quoting *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338–39 (2d Cir. 1985)). But this Court already entered a preliminary injunction on August 4th. In this action, Legislative Defendants do not seek *another* such preliminary injunction. Rather Legislative Defendants seek to "prevent" NCSBE from "thwarting" the Court's August 4th order, *id.*, and "threaten[ing]" the "integrity" of that "past order." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004).

Legislative Defendants seek to ensure this Court's August 4th order remains in effect, and consistent with the *Purcell* principle, that this Court's order should not be used as a license to change the rules in the middle of voting.

## Conclusion

For the foregoing reasons, Legislative Defendants submit that the Court should (1) deny Plaintiffs' Motion to Enforce and (2) affirmatively enjoin the issuance and enforcement of the September

22

Memo under the All Writs Act, in order to return voting to the procedures in place under the August Memo.


Dated: October 5, 2020                    Respectfully submitted,

/s/ Nicole J. Moss                        /s/ David H. Thompson
COOPER & KIRK, PLLC                        COOPER & KIRK, PLLC
Nicole J. Moss (State Bar No.             David H. Thompson
31958)                                    Peter A. Patterson
1523 New Hampshire Avenue, NW             1523 New Hampshire Avenue, NW
Washington, D.C. 20036                    Washington, D.C. 20036
(202) 220-9600                            (202) 220-9600
nmoss@cooperkirk.com                      dthompson@cooperkirk.com
*Local Civil Rule 83.1 Counsel*           *Counsel for Defendant-*
*for Defendant-Intervenors*               *Intervenors*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Memorandum of Law in Support of Defendant-Intervenors' Motion for All Writs Act Relief, including body, headings, and footnotes, contains 5298 words as measured by Microsoft Word.

/s/ Nicole J. Moss

Nicole J. Moss

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on the 5th day of October, 2020, she electronically filed the foregoing Memorandum of Law in Support of Defendant-Intervenors' Motion for All Writs Act Relief with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record in this matter.

/s/ Nicole J. Moss
Nicole J. Moss