## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEMOCRACY NORTH CAROLINA, THE LEAGUE
OF WOMEN VOTERS OF NORTH CAROLINA,
DONNA PERMAR, JOHN P. CLARK,
MARGARET B. CATES, LELIA BENTLEY,
REGINA WHITNEY EDWARDS, ROBERT K.
PRIDDY II, WALTER HUTCHINS, AND
SUSAN SCHAFFER,

     *Plaintiffs,*

     *vs.*

THE NORTH CAROLINA STATE BOARD OF
ELECTIONS; DAMON CIRCOSTA, in his
official capacity as CHAIR OF THE
STATE BOARD OF ELECTIONS; STELLA
ANDERSON, in her official capacity
as SECRETARY OF THE STATE BOARD OF
ELECTIONS; KEN RAYMOND, in his
official capacity as MEMBER OF THE
STATE BOARD OF ELECTIONS; JEFF
CARMON III, in his official capacity
as MEMBER OF THE STATE BOARD OF
ELECTIONS; DAVID C. BLACK, in his
official capacity as MEMBER OF THE
STATE BOARD OF ELECTIONS; KAREN
BRINSON BELL, in her official
capacity as EXECUTIVE DIRECTOR OF
THE STATE BOARD OF ELECTIONS; THE
NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION; J. ERIC BOYETTE, in
his official capacity as
TRANSPORTATION SECRETARY; THE NORTH
CAROLINA DEPARTMENT OF HEALTH AND
HUMAN SERVICES; MANDY COHEN, in her
official capacity as SECRETARY OF
HEALTH AND HUMAN SERVICES,

     *Defendants,*

Civil Action
No. 20-cv-457

PHILIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; TIMOTHY K. MOORE, in his official capacity as SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES,

*Defendant-Intervenors.*

**PLAINTIFFS' OPPOSITION TO LEGISLATIVE DEFENDANTS' MOTION FOR ALL WRITS ACT RELIEF**

## Introduction

There has simply been no change in the rules regarding the administration of the election since August 4, and thus the basis for Legislative Defendants' attempt to assert the All Writs Act is meritless. Further, there is no legal basis for using the All Writs Act to interfere with legally-taken actions by a state agency, so confirmed as legal by a state court, absent a successful counterclaim. This motion is completely duplicative of the motions practice in Legislative Defendants' separate litigation in *Moore v. Circosta*, which is also before this Court, and should be denied.

    **I.**   **The All Writs Acts Cannot be Properly Used as a Basis to Enjoin the State Board of Elections' Efforts, Inadequate as They Are, from Providing Guidance to the Counties to Protect the Due Process Rights of Voters.**

2

###### a. The All Writs Act is Not Properly Invoked or Applied here.

The All Writs Act empowers district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Like the writ of habeas corpus statutes or the Declaratory Judgment Act, it provides an avenue for a remedy but is not a standard independent basis of liability. That is, a litigant needs a predicate legal violation before it can invoke the All Writs Act. The All Writs Act "is to be used ''sparingly and only in the most critical and exigent circumstances.''" *Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers) (quoting *Fishman v. Schaffer*, 429 U.S. 1325, 1326 (1976) (Marshall, J., in chambers)).

The "[p]urpose of the power codified in [the All Writs Act] is to allow courts to protect the jurisdiction they already have, derived from some other source." *Schiavo ex rel. Schindler v. Sc*hiavo, 403 F.3d 1223, 1229 (11th Cir. 2005)(internal quotation omitted). "It gives a residual source of authority to issue writs that are not otherwise

3

covered by statute and is an extraordinary remedy that is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Id.* (internal quotation marks and citations omitted). "While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (quoting 28 U.S.C. § 1651(a)).

That is to say, the Act is not an independent basis for any relief in this case. *See id.,* 526 U.S. at 535 (quoting 19 J. Moore & G. Pratt, Moore's Federal Practice § 204.02[4] (3d ed. 1998))("The All Writs Act cannot enlarge a court's jurisdiction."). It is a statute that allows federal courts to maintain jurisdiction where no other mechanism so allows. *Id*. at 534. The All Writs Act provides a remedy or relief, like the writ of habeas corpus statutes or the Declaratory Judgment Act but is not a standard or independent basis of liability. *See United States v. Denedo*, 556 U.S. 904, 914 (2009) ("The authority to issue a writ under the All Writs Act is not a font of jurisdiction"). Moreover, the narrow applications of the All Writs Act is even more limited under

4

the current circumstances. *Goldsmith*, 526 U.S. at 535 (holding that review of an executive action was "beyond the 'aid' of the All Writs Act"); *see also United States v. Purdue Frederick Co.*, 963 F. Supp. 2d 561, 567 (W.D. Va. 2013) ("A court's authority under the All Writs Act is nowhere more limited than when it is asked to enjoin a proceeding in state court.").

Here, there is no question that Plaintiffs have raised a constitutional claim cognizable by a federal court, and that this Court has jurisdiction to ensure compliance with the preliminary injunction it already ordered. But the All Writs Act cannot be used to turn this Court's denial of relief on a particular issue into a cap on the State Defendants' administrative action to ensure an orderly and fair election during this pandemic, absent a counterclaim with an independent substantive grounds for granting relief against that action. *See Schiavo*, 403 F.3d at 1229. In fact, it is used regularly *to prevent* the situation here: a collateral attack on injunctive relief that Plaintiffs already obtained. See *In re March*, 988 F.2d 498, 500 (4th Cir. 1993) (collecting cases) ("The All Writs Act empowers a federal court to enjoin parties before it from attempting to relitigate decided

5

issues and to prevent collateral attack of its judgments."). This proceeding should be focused on the question of whether Plaintiffs have been afforded the relief due to them and whether the State Board is affording full due process protections. Anything else is properly considered, if at all, in the *Moore* case (and likely should be decided in the state court case.

The second version of Numbered Memo 2020-19, while not perfect relief, offers relief that satisfies the preliminary injunction in different ways than the first version of the numbered memo, and as such, its injunction would undermine the preliminary injunction order entered by this Court. Thus, by its very terms, Legislative Defendants attempt to use the All Writs Act to do exactly what it was designed *not* to do.

Absent a successful counterclaim, not present here, the All Writs Act cannot be used by defendants to enforce the denial of relief to voters. Plaintiffs seek to enforce the preliminary injunction that was issued in August, while Legislative Defendants seek to enforce the denial of relief and the abrogation of a state court consent decree. There is no precedent anywhere in the law for this.

First, injunctions must be specific under Federal Rule of Civil Procedure 65, and a federal court cannot issue an injunction simply because an executive agency acted on a topic in a different court case that was arguably related to a federal claim that had already failed. The state action might be challenged in a different federal or state case and result in declaratory and injunctive relief. If there were no impending election, Legislative Defendants would have no basis to have the Court issue an injunction on this basis, and their attempt to use the All Writs Act in this way amounts to an effort to enforce *Purcell* without actually bringing any underlying claim. Indeed, *Purcell* is not a basis of liability either, but rather a set of considerations to be included in the equitable factors balancing for issuance of an injunction. That can still be done within the context of any preliminary injunction motion; there is no need for this duplicative and meritless motions practice. And in any event, the All Writs Act is not available when a preliminary injunction would provide the requested relief. *Schiavo*, 403 F.3d at 1229 ("Our decisions make clear that where the relief sought is in essence a preliminary injunction, the All Writs Act is not available because other, adequate remedies at law

exist, namely Fed.R.Civ.P. 65, which provides for temporary restraining orders and preliminary injunctions."). Moreover, by attacking the September 22 revisions made to Memo 2020-19, Legislative Defendants effectively ask this Court to enjoin the consent judgment entered by the state court in *N.C. Alliance for Retired Americans,* because the revisions enforce that consent order. But this request is prohibited under the Anti-Injunction Act, 28 U.S.C. § 2283.

The Anti-Injunction Act (AIA) provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "A court's authority under the All Writs Act is nowhere more limited than when it is asked to enjoin a proceeding in state court." *Purdue*, 963 F. Supp. 2d at 567. Thus, "[t]he authority the All Writs Act imparts to district courts is limited . . . by the Anti-Injunction Act, which prohibits injunctions 'to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *In re Diet Drugs*

8

*(Phentermine/fenfluramine/dexfenfluramine) Prods. Liab. Litig.,* 369 F.3d 293, 305 (3d Cir. 2004) (quoting 28 U.S.C. § 2283). The Supreme Court has held that the term "proceedings" under the AIA includes "the results of a completed state proceeding." *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970); *see also U.S. Steel Corp. Plan for Employee Ins. Benefits v. Musisko,* 885 F.2d 1170, 1175 (3d Cir. 1989) ("[T]he prohibitions of § 2283 cannot be evaded by addressing the order to the parties ***or prohibiting utilization of the results of a completed state proceedings.***") (citing *Atlantic Coast*, 398 U.S. at 287 (emphasis added).

Legislative Defendants allege that an injunction is necessary here to protect the Court's August 4 preliminary injunction order. However, for this exception to the AIA-- the "relitigation exception"--to apply, "the issue the federal court decided must be the same as the one presented in the state tribunal, and the party to be enjoined must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties." *Purdue*, 963 F. Supp. 2d at 568 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299 (2011)) (internal

9

quotation marks omitted). In short, this exception "is designed to implement 'well-recognized concepts' of claim and issue preclusion." *Smith,* 564 U.S. at 306 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988)). It clearly does not apply in this case, as the state court plaintiffs raised claims under the North Carolina constitution and were not party to the instant *Democracy N.C.* litigation. Legislative Defendants cannot use federal preclusion principles to bar state plaintiffs from seeking relief for state law injuries.

Further, a federal court also cannot issue an injunction to enforce state law under the Supreme Court's decision in *Pennhurst*. *See Pennhurst State Sch. v. Halderman*, 465 U.S. 89 (1984). The Legislative Defendants ask this Court to enforce state law against state officials. This relief is unavailable in federal court. *See id.* Essentially, they are complaining that the state court and/or the state agency is not following state law. This Court may deny relief as to the witness requirement--and did so--but it cannot not proactively issue an injunction that enforces the state witness requirement. *See id.*

Finally, to the extent Legislative Defendants take issue with the state court consent decree that created this entire

dispute, they are seeking federal court review of a state court decision in violation of the *Rooker-Feldman* doctrine.

That doctrine is fundamentally concerned with maintaining the Supreme Court's jurisdiction to review state court rulings under 28 U.S.C. § 1257(a). See *Thana v. Bd. of License Comm'rs for Charles Cty*, 827 F.3d 314, 320 (4th Cir. 2016) (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)); *id.* ("[T]he Rooker-Feldman doctrine, by contrast, assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court specifically to review that state court judgment."). In this regard, the doctrine bars federal district courts from hearing cases in which the alleged injury is caused by a state court judgment itself. *See Exxon*, 544 U.S. at 284; *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) ("In other words, the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments.").

The parties in North Carolina Alliance of Retired Americans have entered a joint motion for entry of a consent judgment in that matter. A number of the Legislative

Defendants in this action successfully intervened in that state court case. ECF No. 1, ¶ 78. To comply with that judgment, SBE Defendants issued revisions to Numbered Memorandum 2020-19 on September 22, which Plaintiffs Legislative Defendants allege caused the constitutional injuries identified in their pleadings for this action. Simply put, Legislative Defendants lost in state court and now seek relief from that judgment in federal court, instead of seeking expedited review in the North Carolina Supreme Court and, perhaps ultimately, relief from the U.S. Supreme Court. All of the federal constitutional claims they raise here could be raised in a petition to the U.S. Supreme Court after exhausting the state court system. State courts have concurrent jurisdiction over federal constitutional claims or defenses, See *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1351 (2020) ("We have recognized a deeply rooted presumption in favor of concurrent state court jurisdiction over federal claims." (internal quotations omitted)), and the U.S. Supreme Court has jurisdiction to review state court rulings under 28 U.S.C. § 1257(a).

## II. *Purcell* is Inapplicable because the Numbered Memos Provide Guidance and Clarity to County Boards of Elections and Do Not Change the Applicable Law or Rules.

*Purcell* is not applicable here because there is no election law change implicated, and the status quo remains, legally speaking, as it was when voting started on September 4.

The numbered memos do not constitute "rules or laws," ECF No. 148, at 14, and therefore no change to these memos can trigger the operation of Purcell. There are countless decisions that factor into the administration of an election, particularly during a pandemic, and not all of them trigger the considerations raised in *Purcell*.

Numbered Memos do not constitute alteration to state law or administrative rule. In footnote 1 of Revised Numbered Memo 2020-19, Director Bell states that the direction therein is issued pursuant to the SBE's general supervisory authority over elections as set forth in N.C. Gen. Stat. § 163-22(a), its ability to "compel observance" by county boards pursuant to § 163-22(c), and the authority of the Executive Director in § 163-26. Doc. 143-1 at 1. However, neither of these statutes provide that Numbered Memos qualify as either rules or laws that would be independently enforceable beyond the discretion of the SBE or Executive Director.

The First Circuit Court of Appeals has recognized that in a similar situation where ballots were marked in a certain deficient way, intervention by the federal courts would be improper to disrupt state actors from adjudicating those ballots consistent with their interpretation of state law. *See Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 2004 WL 3143501 (1st Cir. Dec. 15, 2004). The concurring Judge in that case made clear that "the 'change of rules' claim fails because. . . . [O]n the pleadings and the record, only one conclusion is possible: the Commission's ruling involved only the clarification of previously unsettled law. In my view, this is not a 'change in the rules' sufficient to implicate federal interests.'" *Rossello-Gonzalez*, 2004 WL 3143501, at *20 (Howard, J., concurring). Here, too, there is no "change in rules," and also, at most, a clarification of previously unsettled law (the preliminary injunction order).

Moreover, administrative action to ensure uniformity in county boards' action taken over the course of an election, to conform with an injunctive order entered three months before the election, should be encouraged, not barred or discouraged, under *Purcell*. *Purcell* stands for the proposition that courts must weigh the risk of voter confusion

14

and "consequent incentive to remain away from the polls," *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006), when assessing whether to change a voting regulation close to an election. It is not a *per se* prohibition on late-breaking injunctions. And here, the injunction was put in place in early August. Voters were told two months ago, one month before voting began, that they would be given an opportunity to correct mistakes with their absentee ballots, and the State Board should continue to issue guidance to ensure county-level compliance with the numbered memos. Over three hundred thousand voters have cast absentee ballots to date, and tens of thousands have been received in the nearly two weeks in which the state board's additional guidance on cure procedures was in effect. *See Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) (injunction of election process would unconstitutionally deprive citizens who voted according to the procedures that were in place at the time of their right to vote).

On its website, the North Carolina State Board of Elections describes the purpose of a numbered memo as: "Numbered Memos are issued by the State Board of Elections executive director. They provide guidance and updates about

elections administration to the county boards of elections. Memos may concern updates to laws, preparations for upcoming elections and more."[1] That is, the numbered memos do not purport to change the law, just to explain changes and give guidance. Legislative Defendants' claim that "election statutes, duly enacted by the state legislature, should not be changed or modified while citizens are voting," ECF No. 155 at 9, bears no relation to the action taken by the State Board of Elections in issuing either version of Numbered Memo 2020-19.

The inapplicability of *Purcell* is even more obvious when one looks at the second version of Numbered Memo 2020-19, piece by piece. It cannot reasonably be construed that the following guidance changes the law, rather than enforces, as an administrative matter, this Court's ruling to provide notice and an opportunity to cure: "If the deficiency cannot be cured, and the voter has an email address on file, the county board shall notify the voter by email that a new ballot has been issued to the voter. If the voter did not provide

---

[1] *See* North Carolina State Board of Election Website, *available at* https://www.ncsbe.gov/about-elections/legal-resources/numbered-memos (last accessed 10/6/20).

an email address but did provide a phone number, the county board shall contact the voter by phone to inform the voter that the county board has issued a new ballot by mail." Numbered Memo 2020-19 (revised Sept. 22) at 3. This part of the memo only instructs the county boards to call, in addition to email, voters with deficient ballots. That urging to take every measure to effectuate notification cannot reasonably be construed to be an electoral rule change. Likewise, in footnote 2 on page 2 of the revised Numbered Memo, the State Board of Elections instructs that if a witness signed in both the line for the witness printed name in addition to the line for the witness signature, that should not invalidate the container envelope as long as the name is readable. This is just common-sense guidance to ensure that a voter who plainly complied with the one-witness requirement is not burdened or disenfranchised. It constitutes no law or rule change, and to suggest otherwise is absurd.

Again and again, the guidance provided in the September memo is consistent with numbered memo guidance provided late in the election cycle for many years, under Republican and Democratic-led State Boards of Election, and has never been challenged on *Purcell* grounds—for good reason. A review of

17

all the numbered memos issued since 1997, available on the State Board's website, demonstrates that countless numbered memos have been issued while voting is underway in federal elections – as elections proceed, the State Board must exercise its supervisory authority over county boards to resolve confusion and reiterate important guidance.[2]

Even if *Purcell* were applicable, last night's decision from the Supreme Court of the United States calls into question reliance on the principle because it plainly does not mean all election law changes mid-voting are wrong. In *Andino v. Middleton*, the Supreme Court stayed a decision of the Fourth Circuit lifting the witness requirement for absentee voting in South Carolina, even though absentee voting started under a no-witness rule and voters had already cast their ballot. *Andino v. Middleton*, 592 U.S. ___ (Oct. 5, 2020). Thus, the Supreme Court explicitly sanctioned an election rule change mid-election. Much has been made of the *Purcell* principle, but it largely derives from attempts to read the tea leaves from decisions entered with no

---

[2]

*See* North Carolina State Board of Election Website, *available at* https://www.ncsbe.gov/about-elections/legal-resources/numbered-memos (last accessed 10/6/20).

18

explanation. As such, federal courts should be hesitant to rely too heavily on *Purcell* to disrupt the reasoned judgment of election officials, like in this case. Furthermore, the Supreme Court's decision to count ballots already cast without a witness signature, signifies its commitment to due process guarantees. That should reassure this Court that the injunctive relief it entered to ensure that absentee voters are afforded the greatest due process protections was sound and consistent with Supreme Court practices. *Id.* at 1-2.

Putting to the side the cure certificate for missing witness entirely, detailing explicitly the categories for cure as opposed to spoiling is exactly what the SBOE is supposed to use the numbered memos for – answering CBOE questions and providing clarity

### III. Finally, Even Assuming Proper Invocation of the All Writs Act, Legislative Defendants' Motion Is Based on Hyperbole and Supposition that Do Not Justify Injunctive Relief

The memorandum filed by Legislative Defendants is filled with inaccurate and misleading data, with assumptions and suppositions drawn from those data, unsupported by that data. First, Legislative Defendants state: "[i]n fact, NCSBE statistics show that over 2,300 ballots have been spoiled to

date. *Absentee Voting Data*, N.C. STATE BD. OF ELECTIONS (Oct. 4, 2020)(available at https://bit.ly/3jBfCre." (ECF No. 155 at 2-3). But the truth is that ballots are spoiled for several reasons that do not implicate this case or the Moore case *at all*. Some absentee ballots are spoiled just like in-person ballots are spoiled: the voter changed his mind about his vote and wants a clean, new ballot before submitting it. Some ballots mut be spoiled because they area damaged in the mail and unreadable. But Legislative Defendants assume incorrectly that these spoiled ballots are rejected ballots, and they are not. The fact that Legislative Defendants demonstrate such a gross misunderstanding of election data in their brief is all the more reason the State Board of Elections is the best positioned to craft remedy, even if they need to be pushed to do more by this Court.

Second, there has not been a single absentee ballot rejected in the 2020 general election. There cannot be a *Purcell* problem where no ballot that has been implicated by clarifications to this absentee process has been rejected. Finally, all voters have been required by the absentee application to obtain a witness for voting – that the rules were set for the election when voting started on September 4

does not even remotely support Legislative Defendants'
hyperbolic claim that "the September Memo effectively
eliminates the witness requirement altogether." (ECF No. 155
at 5). In fact, there is no credible evidence that voters
are not getting witnesses, as required by law, and that minor
mistakes, subject to remediation, by voters substantially
complying with the law should be used to justify extreme
action by this Court.

## Conclusion

For the reasons articulated above, Plaintiffs
respectfully request that this Court deny Legislative
Intervenors' Motion for All Writs Act and grant Plaintiffs'
Motion for Affirmative Relief.

Dated: October 6, 2020.            Respectfully submitted,

/s/ *Jon Sherman*                  /s/ *Allison J. Riggs*
Jon Sherman                        Allison J. Riggs (State Bar
D.C. Bar No. 998271                #40028)
Michelle Kanter Cohen              Jeffrey Loperfido (State
D.C. Bar No. 989164                Bar #52939)
Cecilia Aguilera                   Hilary Klein (State Bar
D.C. Bar No. 1617884               #53711)
FAIR ELECTIONS CENTER              Southern Coalition for
1825 K St. NW, Ste. 450            Social Justice
Washington, D.C. 20006             1415 West Highway 54, Suite
Telephone: (202) 331-0114          101
Email:                             Durham, NC 27707

jsherman@fairelectionscenter.or
g
mkantercohen@fairelectionscente
    r.org
caguilera@fairelectionscenter.o
    rg

Telephone: 919-323-3380
Facsimile: 919-323-3942
Email:
Allison@southerncoalition.
org
jeff@southerncoalition.org

*/s/ George P. Varghese*
George P. Varghese (Pa. Bar
No. 94329)
Joseph J. Yu (NY Bar No.
4765392)
Stephanie Lin (MA Bar No.
690909)
Rebecca Lee (DC Bar No.
229651)
Richard A. Ingram (DC Bar
No. 1657532)
Wilmer Cutler Pickering Hale and
Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000
Email:
george.varghese@wilmerhale
    .com
joseph.yu@wilmerhale.com
stephanie.lin@wilmerhale.c
    om
rebecca.lee@wilmerhale.com
rick.ingram@wilmerhale.com

**WORD CERTIFICATION**

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the word count for PLAINTIFFS' OPPOSITION TO LEGISLATIVE DEFENDANTS' MOTION FOR ALL WRITS ACT RELIEF is 3845 words. The word count excludes the case caption, signature lines, cover page, and required certificates of counsel. In making this certification, the undersigned has relied upon the word count of Microsoft Word, which was used to prepare the brief.

/s/ Allison J. Riggs

Allison Riggs

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on October 6, 2020, PLAINTIFFS' OPPOSITION TO LEGISLATIVE DEFENDANTS' MOTION FOR ALL WRITS ACT RELIEF was served on all counsel of record by electronic filing via the CM/ECF system.

/s/ *Allison J. Riggs*

Allison Riggs