UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*,<br><br>*Defendants*,<br><br>and<br><br>PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, *et al.*,<br><br>*Defendant-Intervenors.* | Civil Action<br>No. 20-cv-00457<br><br>**DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION FOR AFFIRMAIVE RELIEF** |

### Statement of Matter Before the Court

Defendant-Intervenors Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives ("Legislative Defendants"), respectfully submit this Response to Plaintiffs' October 5, 2020 Motion for Affirmative Relief ("Pls.' Mot. for Aff. Rel."), (Doc. 156).

In their Motion, Plaintiffs ask this Court to judicially impose *ten* new rules for the casting of absentee ballots in North Carolina for the ongoing election. Pls.' Mot. for Aff. Rel. at 10-13. Plaintiffs' expansive request for relief is exactly the type of relief the Supreme Court counseled against in *Purcell v.*

1

*Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam). The continuing vitality of *Purcell* cannot be doubted——just last night the Supreme Court, *without recorded dissent*, stayed the District of South Carolina's order, entered September 18, 2020, preliminarily enjoining the enforcement of the witness signature requirement for absentee ballots. *See Andino v. Middleton*, No. 20A55, 2020 WL 5887393 (U.S. Oct. 5, 2020). As Justice Kavanaugh wrote, "[b]y enjoining South Carolina's witness requirement shortly before the election, the District Court defied [the *Purcell*] principle and this Court's precedents." *Id.* (Kavanaugh, J., concurring in grant of application for stay). In other words, it was too late for a federal court to order a wholesale change to South Carolina's election laws.

So too here. In fact, Plaintiffs' request comes *even* later. Consequently, *Purcell* commands that their request be denied. *See id*. Legislative Defendants respectfully request this Court deny Plaintiffs' Motion.

## Statement of Facts

Before voting in North Carolina began and a little over two weeks after this Court's August 4th Order, Doc. 124, the North Carolina State Board of Elections issued the original Numbered Memo 2020-19 ("August Memo"). *See* Ex. 3 to Pls.' Mem. ISO Mot. to Enforce Injunction ("Pls.' Memo re Inj. Enforcement"), Doc. 148-3, Numbered Memo 2020-19 at 1 (Aug. 21, 2020). The August Memo,

consistent with this Court's order, provided a cure procedure for "those ballots with a material error that is subject to remediation." Doc. 124 at 182. To that end, the August Memo divided ballot deficiencies between those "subject to remediation" and those that required spoilation. Two deficiencies would be subject to cure by an affidavit by the voter: if the voter did not sign the Voter Certification or if the voter signed in the wrong place. *See* August Memo at 3. By contrast, several deficiencies still required spoilation, principally errors related to ballot witnesses or assistants. If the ballot witness or assistant did not print her name, print her address, sign her name, or signed on the wrong line, then the absentee ballot would be spoiled. *See id*. The reason why these "deficiencies [could not] be cured by affidavit" was straightforward: "because the missing information comes from someone other than the voter." *Id*.

The August Memo's limited cure procedures were consistent with this Court's order and the continued application of North Carolina's duly enacted Witness Requirement. *See* Doc. 124 at 102. After all, this Court upheld the Witness Requirement and did not find failure to comply with it "subject to remediation." Doc. 124 at 180. The General Assembly in an overwhelmingly bipartisan vote had already modified the Witness Requirement for the 2020 election because of the pandemic. *See* Bipartisan Elections Act of 2020, 2020 N.C. Sess. Laws 2020-17 § 1.(a). And the Witness Requirement,

3

as N.C. Bd. of Elections ("NCSBE") itself noted, served as "[v]erification of the voter's identity." *See* August Memo at 2.; *see also See* Ex. 1 to Leg. Defs.' Mem. ISO Mot. for All Writs Act Relief ("Leg. Defs.' Mem."), Doc. 155-1, Aff. Of Kimberly Westbrook Strach (Sept. 30, 2020) ("Strach Aff.").

When NCSBE issued the August Memo, there were 14 days until North Carolinians began casting Absentee Ballots on September 4, 2020 and 75 days until Election Day. Plaintiffs did not seek this Court's involvement to "fix" their alleged concerns with the August Memo. In fact, three days after NCSBE issued the August Memo, Plaintiffs filed a Motion for Reconsideration in this Court and requested this Court "expand its injunction." Pls.' Mot. For Reconsideration and Modification of Preliminary Injunction and Brief in Support Thereof, Doc. 130 at 3. But Plaintiffs did not seek changes to NCSBE's cure processes in their Motion.

Plaintiffs sent a letter to NCSBE on August 26, 2020——8 days before absentee voting and 70 days before Election Day. *See* Ex. 4 to Pls.' Memo re Inj. Enforcement, (Doc. 148-4). Plaintiffs asked NCSBE for a variety of changes to the procedures for curing deficient ballots, but notably Plaintiffs did not seek any changes for what *deficiencies* could be cured. Plaintiffs noted the importance of September 4, 2020, stating that "counties will start mailing absentee ballots" then. *Id.* at 3.

4

As Plaintiffs note in their brief, the General Assembly met for two days starting September 2, 2020. Because NCSBE had included a cure process consistent with this Court's preliminary injunction order in the August Memo, there was no reason for the General Assembly to take any further action on the subject.[1]

The beginning of absentee balloting came on September 4, 2020 with nary a word of complaint in this Court from Plaintiffs. Voting has been in earnest in the month since. As of today (October 6, 2020), 386,300 absentee ballots have been cast and over 1,210,936 requested. *Absentee Data*, N.C. STATE BD. OF ELECTIONS (Oct. 6, 2020), available at https://bit.ly/33BgC9y. That means since Legislative Defendants' filing yesterday, NCSBE indicates nearly 27,000 more North Carolinians have cast their votes and nearly 20,000 more requested their ballots. Simply put, North Carolina voters are at the polls.

---

[1] Plaintiffs' contend that the August Memo did not "carry the weight of a law or rule." Pls.' Mot. for Aff. Rel., at 18. But that is simply not the case. These Numbered Memos are a "decades-old" procedure for how NCSBE instructs county boards on election procedures. Exec. Defs.' Resp., Doc. 151 at 11 (Oct. 2, 2020). According to NCSBE, if a county board fails to follow the NCSBE's Numbered Memos, then NCSBE has authority to remove the county board members for "non-compliance with their duties." See *id.* (citing N.C. GEN. STAT. § 163-22(c)). Thus, county board members are obligated to follow NCSBE's directives or else lose their jobs. See Ex. 3 to Leg. Defs.' Mem., Doc. 155-4, Decl. of Linda Devore (Devore Decl.") ("[W]e were to immediately begin following revised Numbered Memo 2020-19's guidance under threat of removal from office."). These Numbered Memos are rules in all but name. And, in any event, Plaintiffs inexplicably did not seek to challenge these Numbered Memos as "not rules" until their long-delayed filing. "Equity demands that those who would challenge the legal sufficiency of administrative decisions concerning time sensitive public . . . projects do so with haste and dispatch." *Quince Orchard Valley Citizens Ass'n v. Hodel,* 872 F.2d 75, 80 (4th Cir.1989). Plaintiffs did not act with any dispatch.

Yet both NCSBE and Plaintiffs seek mid-election changes to the rules governing this election. For its part, NCSBE issued a revised Numbered Memo 2020-19 on September 22, 2020, without prompting from this Court (and unlawfully as Legislative Defendants argue in *Moore v. Circosta*, No. 5:20-cv-507-D). Ex. A to Defs.' Not. of Filing, Doc. 143-1, Numbered Memo 2020-19 (Sept. 22, 2020) ("September Memo"). Contrary to the August Memo, the September Memo changed course and explained that the same witness requirement deficiencies that required an absentee ballot to be spoiled pursuant to the August Memo could now be cured "by sending the voter a certification" pursuant to the September Memo. *Id*. at 2; *but see* Strach Aff. at 36 ("The cure form does not provide any of the safeguards the witness requirement provides."). This eviscerates the duly-enacted Witness Requirement because "the September 2020-19 memo's voter certification cure applied to an absentee ballot on which all witness information was missing." Ex. 2 to Leg. Defs.' Mem., Doc. 155-2, Order at 8 n.4, Moore v. Circosta, No. 5:20-cv-507-D (E.D.N.C. Oct. 3, 2020) ("TRO Order") (Doc. 155-2). Notably, NCSBE attempted to effectively repeal the witness requirement not when the General Assembly was in session but only after the General Assembly had adjourned until January. *See* North Carolina General Assembly, ncleg.gov.

To add to the whiplash of mid-election rule changes, NCSBE announced on October 4, 2020, that it was suspending the September

6

Memo and the August Memo. *See* Ex. 3 to Leg. Defs.' Mem., Doc. 155-2, N.C. State Bd. of Elections, Numbered Memo 2020-28 at 1, (emphasis added). This despite the fact that NCSBE just recently instructed county board officials to comply with the September Memo on pain of removal from office. *See* Ex. 3 to Leg. Defs.' Mem., Doc. 155-4, Decl. of Linda Devore (Devore Decl.") ("It was made clear that to the extent we were not already doing so, we were to immediately begin following revised Numbered Memo 2020-19's guidance under threat of removal from office"). This last change was not made voluntarily but in response to Judge Dever's temporary restraining order barring NCSBE from enforcing the revised Numbered Memo 2020-19. TRO Order at 19. Nothing in Judge Dever's order, however, restrains NCSBE from enforcing the August Memo, and by putting a halt on all cure procedures, NCSBE is depriving voters of the opportunity to learn about and correct deficiencies in their ballots, whether by voting a new one for errors that cannot be cured or submitting a certification for curable errors.

For their part, Plaintiffs seek *even further* changes to North Carolina absentee balloting. Plaintiffs ask this court to judicially approve at least part of the September Memo's evisceration of the witness requirement. Pls.' Mot. for Aff. Rel., at 10 ("[P]ermit voters to cure deficiencies whereby . . . the voter's witness . . . did not print his or her address or signed the container-return envelope on the wrong line."). Plaintiffs

7

seek to change the rules so that the voter need not take "further action"—presumably meaning not even the affidavit required by the September Memo—when a witness or assistant lists a "Post Office box address" or "omits certain address information [that] can otherwise be determined." *Id.* at 11. And Plaintiffs seek further changes to how county boards notify voters of errors through email and phone calls, and Plaintiffs even seek "in person or remote[]" contest hearings for "*any* voter whose ballot is deemed by the county board of elections to be deficient such that it must be rejected." *Id.* at 13. With no apparent sense of irony, Plaintiffs argue these are the "minimum" changes necessary. *Id.* at 10.

North Carolinians are voting by mail now, early voting is in 9 days, and Election Day is in 28 days. Plaintiffs (and NCSBE as explained in Legislative Defendants Motion for All Writs Act Relief ("Leg. Defs." Mot."), Doc. 154; Leg. Defs.' Mem., Doc. 155) are seeking changes to North Carolina's election procedures much too late. Legislative Defendants respectfully request this Court deny Plaintiffs' Motion for Affirmative Relief.

### Argument[2]

**I.**     ***Purcell* Counsels this Court Should Deny Plaintiffs' Motion**

The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on

---

[2] Consistent with this Court's order on October 5, 2020, (Doc. 153), Legislative Defendants do not fully address the issues raised by Plaintiffs that are in

8

the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). The *Purcell* principle compels denial of the Plaintiffs' Motion for Affirmative Relief. *See Andino*, 2020 WL5887393 (Kavanaugh, J., concurring in grant of application for stay).

### a. <u>Late Election-Changing Injunctive Relief Should be Denied</u>

Late "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). "As an election draws closer, that risk that will increase." *Id.* at 5. The risk is especially pronounced when, as here, "absentee voting has been

---

dispute in *Moore v. Circosta*. However, it is worth mentioning here that Plaintiffs' novel arguments against the cognizability of the Equal Protection claim in *Moore* are completely unsupported. In *Moore*, individual plaintiffs Heath and Whitley assert that the NCSBE's new Numbered Memoranda violate the one-person, one-vote principle articulated in the Supreme Court's jurisprudence because these Memoranda allow for the counting of ballots that are *unlawful* under North Carolina law. When it comes to "dilut[ing] the influence of honest votes in an election," whether the dilution is "in greater or less degree is immaterial"; it is a violation of the Fourteenth Amendment. *Anderson v. United States*, 417 U.S. 211, 226 (1974) (quotation marks omitted); see also *Baker v. Carr*, 369 U.S. 186, 208 (1962). And with respect to Plaintiffs *Bush v. Gore*, 531 U.S. 98 (2000), Plaintiffs entirely miss the mark. *Bush* clearly indicates that arbitrary treatment of ballots by different voters is an Equal Protection violation. *Id.* at 105. And here, allowing voters to cast their ballots without complying with the rules that were in place when Plaintiffs Heath and Whitley voted is arbitrary and disparate. Under *Bush v. Gore*, that is unconstitutional. *Id.*

9

underway for many weeks." *Republican Nat'l Comm.*, 140 S. Ct. at 1207.

Consider analogous litigation from this circuit in *Andino*. On September 18, 2020, the district court issued a preliminary injunction that enjoined state officials from enforcing "the Witness Requirement set forth in" South Carolina Code § 7-15-380. *Middleton v. Andino*, No. 3:20-CV-01730-JMC, 2020 WL 5591590, at *38 (D.S.C. Sept. 18, 2020). After a three-judge panel of the Fourth Circuit granted a stay to the district court's election-changing injunction, the en banc Fourth Circuit vacated that decision and left the district court's preliminary injunction in place. *Middleton v. Andino*, No. 20-2022, 2020 WL 5752607, at *1 (4th Cir. Sept. 25, 2020) (en banc). In dissent, Judge Wilkinson and Judge Agee pointed out that the district court's injunction "disregard[ed]" the Supreme Court's precedent in *Purcell*. *Id.* (Wilkson, J., and Agee, J., dissenting from the grant of rehearing en banc). After all, "the pandemic does not give judges a roving commission to rewrite state election codes." *Id.* (internal quotation marks omitted).

The Supreme Court agreed. *See Andino*, 2020 WL5887393 at *1; *id.* (Kavanaugh, J., concurring in grant of application for stay). The Supreme Court, without recorded dissent, stayed the district court's election-changing injunction. As Justice Kavanaugh explained in his concurrence, "this Court repeatedly emphasized

10

that federal courts ordinarily should not alter state election rules in the period close to an election." *Id.* (citing *Purcell*, 549 U.S. at 1.). And since the district court issued an election-changing injunction on September 18, 2020, it "defied that principle and [the Supreme] Court's precedents." *Id*.

Plaintiffs' request for an additional election-changing injunction on October 5, 2020 *a fortiori* violates the *Purcell* principle when a September 18, 2020 injunction does. *See Andino*, 2020 WL5887393. Similar to *Andino*, Plaintiffs seek to vitiate the Witness Requirement in their Motion for Affirmative Relief. As the General Assembly *just* enacted in June in the Bipartisan Elections Act, all absentee ballots must be witnessed by at least one person. *See* 2020 N.C. Sess. Laws 2020-17 § 1.(a).(Requiring a witness to "sign[] the application and certificate as a witness and print[] [her] name and address on the container-return envelope."). The August Memo was consistent with the Bipartisan Elections Act by spoiling ballots that did not comport with these requirements. *See* August Memo at 3. In their motion, Plaintiffs seek to get around these strict witness requirements to allow voters to cure when the witness does not print "his or her address" or signs in the wrong place. Pls.' Mot. for Aff. Rel. at 10. In these instances, Plaintiffs seem to allow voters to serve as their own witnesses. And going even further, Plaintiffs seek to not even require the voter to do *anything* if the witness does not provide their

11

residential address or "omit[s] certain address information but can otherwise be determined." *Id.* at 11. In these instances, Plaintiffs seek this Court to order that no one needs to comply with the General Assembly's strict Witness Requirement.

The Supreme Court has repeatedly rejected similarly late election-changing requests by litigants. *See, e.g., North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (staying a lower court order that changed election laws thirty-three days before the election); *Husted v. Ohio State Conf. of the NAACP*, 573 U.S. 988 (2014) (staying a lower court order that changed election laws *sixty* days before the election); *Veasey v. Perry*, 135 S. Ct. 9 (2014) (denying application to vacate court of appeals' stay of district court injunction that changed election laws on eve of election); *Purcell*, 549 U.S. at 3 (staying an October 5th lower court order changing election laws *twenty-nine* days before the election). "[W]hen a lower court intervenes and alters the election rules so close to the election date . . . precedents indicate that th[e] [Supreme] Court, as appropriate, should correct that error." *Republican Nat'l Comm.*, 140 S. Ct. at 1207.

And Plaintiffs' own representations to this Court underscore that this entire litigation proceeded on the understanding that late election-altering relief is not permissible. During closing arguments on July 22, 2020, counsel for Plaintiffs said, "[v]oters in North Carolina need relief, and they need it as soon as

12

possible." Tr. of Evidentiary Hearing, Doc. 114 at 13. Why? Counsel said because "Plaintiffs can't come into court in August or September -- we can't file a lawsuit in September and get relief." *Id*. at 24. Instead, late July was "the sweet spot" for changes to election rules. *Id.* at 207. Not heeding their own implicit recognition of the *Purcell* principle, Plaintiffs seek election-changing relief anyway.

Plaintiffs argue that *Purcell* is inapplicable because their new election-changing request for relief is not late at all, but rather somehow relates back to an effort to enforce this Court's August 4th order. Pls.' Mot. for Aff. Rel. at 22-24. This is entirely implausible. The August Memo setting forth the cure procedures, required by this Court's August 4th order, was issued on August 21, 2020. Plaintiffs said nothing about it in this Court until their September 30, 2020 filing, by which time 280,353 North Carolinians had already voted. *Absentee Data*, N.C. STATE BD. OF ELECTIONS (Sept. 30, 2020), available at https://bit.ly/2G3stnJ. After all, if the new measures proposed by Plaintiffs truly were required by the August 4th order, that would mean Plaintiffs waited for *over a month* and the casting of hundreds of thousands of ballots before notifying this Court. And it is not as though the August Memo was not in effect—it was. *See* Aff. of Linda Devore ¶ 19, *N.C. Alliance for Ret. Amer., et al., v. N.C. St. Bd. of Elections*, No. 20 CVS 8881 (Wake Cnty. Super. Ct. Sept. 30, 2020),

13

Doc. 155-5 (stating that before September 22 the Cumberland County Board of Elections spoiled ballots with witness deficiencies pursuant to the August Memo).

Instead of seeking to effectuate this Court's August 4th order, Plaintiffs are seeking new election-changing relief during an ongoing election. *Purcell* and the Supreme Court's most recent decision in *Andino* instruct their late election-changing request should be denied. Instead, this Court should provide the narrow relief requested by Legislative Defendants: maintain the status quo ante under the General Assembly's Bipartisan Elections Act and the cure procedures provided by the August Memo. *See Purcell*, 549 U.S. at 4-5; *Va. Soc'y for Human Life v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001).

### b. **Plaintiffs' Cited Authority Cannot Overrule *Purcell***

Plaintiffs cite a number of pre-*Purcell* cases from the First Circuit to argue that *Purcell* does not apply. For one, pre-*Purcell* circuit cases provide little authority for how lower federal courts should follow Supreme Court precedent post-*Purcell*. For another, their relevance is not clear in any event. Take, for instance, *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1 (1st Cir. 2004), which addressed a *post-election* challenge to the "validity of certain ballots that were cast." *Id*. at 5. *Purcell* is a pre-election standard to avoid "voter confusion" while they head to the polls. *Purcell*, 549 U.S. at 4-5. A First Circuit decision about

post-election review of the validity of ballots already cast does not speak to *Purcell* or its animating concerns at all. Nor do Plaintiffs' other cited cases. *See Bonas v. Town of N. Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001)(affirming a district court decision to *hold* an election after defendant municipality sought to forego election entirely); *Partido Nuevo Progresista v. Perez*, 639 F.2d 825, 828 (1st Cir. 1980)(holding that federal court *should not* intervene in Puerto Rico election dispute).

In all events, Plaintiffs' pre-*Purcell* authority cannot be read to overrule the Supreme Court's clear line of cases since *Purcell* that counsel federal courts to avoid election-changing injunctive relief on the eve of or during voting. In addition to *Andino*, the Supreme Court has reaffirmed as much with its decisions just this year. *See, e.g.*, *Tex. Democratic Party v. Abbott,* 961 F.3d 389, 412 (5th Cir. 2020) (staying injunction against Texas absentee ballot restrictions), *application to vacate stay denied*, 140 S. Ct. 2015 (2020) (mem.); *Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) (staying injunction against Ohio initiative signature requirements), *application to vacate stay denied*, No. 19A1054, 2020 WL 3456705 (U.S. June 25, 2020) (mem.); *Republican Nat'l Comm.*, 140 S. Ct. 1205 (mem.)(staying injunction against requirement that absentee ballots be postmarked by election day); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (July 30, 2020) (mem.); *Clarno v. People Not Politicians Or.*, No. 20A21, 2020 WL 4589742

15

(U.S. Aug. 11, 2020) (mem.) (staying injunction against initiative signature requirement); *Merrill v. People First of Ala.*, No. 19A1063, 2020 U.S. LEXIS 3541 (U.S. July 2, 2020) (mem.) (staying injunction against absentee ballot witness requirement). It is hard to see what clearer message the Supreme Court could send to instruct lower federal courts to avoid the election-changing relief requested by Plaintiffs.

Simply put, the Supreme Court has kept rules the same during voting. This Court should do the same.

### c. Following the Enacted Statutes of the General Assembly Best Prevents Voter Confusion

Finally, Plaintiffs argue that, notwithstanding *Purcell*, this Court should intervene to prevent voter confusion. Doc. 156 at 26-27. But *Purcell* counsels the exact opposite.

"[A] State legislature's decision either to keep or to make changes to election rules to address COVID–19 ordinarily 'should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Andino*, 2020 WL 5887393, at *1 (Kavanaugh, J., concurring in the grant of application for stay)(quoting *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613-1614, (2020) (Roberts, C. J., concurring in denial of application for injunctive relief)). This comports with the Framers delegation of election

16

regulation to state legislatures. *See* U.S. CONST. art. 1., § 4, cl. 1. Specifically, the Framers understood the regulation of federal elections to be an inherently legislative act. After all, regulating elections "involves lawmaking in its essential features and most important aspect." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). And it comports with what the North Carolina General Assembly did in the Bipartisan Elections Act. It is no surprise then that *Purcell* complies with the Constitution's judgment that federal courts should not similarly undertake a legislative function and issue election-changing relief during an ongoing election.

Plaintiffs argue that this Court should issue election-changing relief to clear up confusion *anyway.* But the answer to any voter confusion is not additional relief contrary to the statutes enacted by the General Assembly. Instead, the answer is for this Court to put an end to efforts by Plaintiffs and the NCSBE (in the revised Numbered Memo 2020-19) to vitiate the clear rules established *before* the election by the General Assembly and NCSBE in the original August Memo. The answer "in view of the impending election" and given the "necessity for clear guidance" to avoid additional "voter confusion" is for this Court to decline Plaintiffs' request for yet more relief and return election procedures to those enacted by the General Assembly and in place when voting started. *See Purcell*, 549 U.S. at 4, 7–8.

17

In short, Plaintiffs seek to use this Court's August 4th order as a license to change the rules in the middle of voting. *Purcell* counsels that the election rules should be clear, consistent, and established before voting starts. Consistent with the enactments of the General Assembly and this Court's August 4th order, these rules were clear, consistent, and established by the August Memo and Bipartisan Elections Act. Plaintiffs' late-filed, statute-vitiating changes would only serve to undermine the clarity of those rules to the detriment of voters and contrary to *Purcell*.

## Conclusion

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Affirmative Relief.


Dated: October 6, 2020

Respectfully submitted,

/s/ Nicole J. Moss
COOPER & KIRK, PLLC
Nicole J. Moss (State Bar No. 31958)
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 220-9600
nmoss@cooperkirk.com
*Local Civil Rule 83.1 Counsel for Defendant-Intervenors*

/s/ David H. Thompson
COOPER & KIRK, PLLC
David H. Thompson
Peter A. Patterson
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
*Counsel for Defendant-Intervenors*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Response to Plaintiffs' Motion for Affirmative Relief, including body, headings, and footnotes, contains 4153 words as measured by Microsoft Word.

/s/ Nicole J. Moss

Nicole J. Moss

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on the 6th day of October, 2020, she electronically filed the foregoing Response to Plaintiffs' Motion for Affirmative Relief with the Clerk of the Court using the CM/ECF system, which will send notification of such to all counsel of record in this matter.

<pre>                                    /s/ Nicole J. Moss
                                    Nicole J. Moss</pre>