UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:20-cv-457

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS; *et al.*, | )<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| PHILIP E. BERGER, etc., *et al.*,<br>Intervenors. | )<br>)<br>) |

**RESPONSE TO PLAINTIFFS' MOTION FOR AFFIRMATIVE RELIEF [D.E. 156]**

Defendants, the North Carolina State Board of Elections; Damon Circosta, in his official capacity as Chair of the State Board of Elections; Stella Anderson, in her official capacity as Secretary of the State Board of Elections; Jeff Carmon III, in his official capacity as Member of the State Board of Elections; and Karen Brinson Bell, in her official capacity as Executive Director of the State Board of Elections (collectively "Executive Defendants"), through undersigned counsel, hereby submit this Response to Plaintiffs' Motion for Affirmative Relief. [D.E. 156].

## INTRODUCTION

Plaintiffs request that this Court order elections procedures fashioned by the Plaintiffs that best suits their preferences. Not only would granting that relief violate the

1

Court's prior instructions and governing legal principles, it ignores the fact that this matter does not exist in a vacuum. The State Board must prepare and implement election procedures that comply with state and federal law, respond to multiple ongoing legal actions with diverse and often adverse claims, as well as proactively address potential claims, all while ensuring that any proposed procedure does not violate court orders already in place. This is no easy task. Plaintiffs' request equates to this Court drafting its own election procedures by picking and choosing the provisions preferred by plaintiffs. This would only invite new litigation, reopen resolved claims, and result in greater confusion for the voters and election staff.

On 4 August 2020, this Court issued a preliminary injunction that instructed the State Board or Legislative Defendants to implement a statewide uniform cure procedure that provides due process to voters before a ballot is rejected. D.E. 124, pp. 182, 185. The Legislative Defendants took no action.

In response to this Court's Order, the State Board implemented the August 21, 2020 Numbered Memo 2020-19, which provided a cure process for deficient absentee ballots. After its implementation, it became apparent that revisions to the cure process were necessary to address issues that arose after the start of absentee voting, and because of several additional legal actions brought against the State Board. As a result, the State Board unanimously chose to implement the September 22, 2020 Numbered Memo 2020-19.

**STATEMENT OF FACTS**

On 4 August 2020, this Court entered an injunction that prevented the State Board from disallowing or rejecting absentee ballots with material errors subject to remediation,

such as deficient witness contact information, until such time that the State Board, or Legislative Defendants, implemented a statewide uniform cure procedure that provides due process to voters before a ballot is rejected. D.E. 124, pp. 182, 185.

Prior to the 4 August 2020 injunction, the State Board was already considering the means by which a standardized cure process could be implemented for this election. See Affidavit of Karen Bell, D.E. 58-1, ¶17. In continuing that process and in order to respond to the injunction in this matter, the State Board implemented the August 21, 2020 Numbered Memo 2020-19. See the August 21, 2020 Numbered Memo 2020-19 at D.E. 151-1; see also Affidavit of Karen Bell, D.E. 151-3, ¶6. Under this cure process, the voter could cure any error related to the voter's signature via affidavit, but for witness or assistant mistakes, the ballot was spoiled, and a new absentee ballot was sent to the voter. D.E. 151-1.

Due to the COVID-19 pandemic, there are now ten times more voters voting absentee in this election than the 2016 election.[1] As a result, there is a significant amount of voters voting absentee for the first time, leading inevitably to a significant amount of voter confusion and mistakes with absentee ballot procedures.

With this process in place when absentee voting began on September 4, 2020, it quickly became apparent to the State Board that the witness portion of the ballot container envelope containing three sections to fill out (printed name, printed address, and signature), only one of which was shaded (the signature), was leading to overwhelming confusion

---

[1] https://s3.amazonaws.com/dl.ncsbe.gov/Press/NC%20Absentee%20Ballot%20Requests%20for%202020%20General%20Election/Daily_Absentee_Request_Report_2020Sep30.pdf

amongst the voting public. D.E. 151-3, ¶ 7. Equally troubling was that these mistakes disparately impacted Black, Hispanic, Asian, and Native American voters. D.E. 151, p. 4-5.

As a result, the State Board deemed it necessary to revise the memo to address this concern as well as the concerns raised in the additional litigation that arose in the interim. D.E. 151-3, ¶ 9. In order to address these myriad issues, the numerous related lawsuits, and to address the need for finality, the State Board determined it was in the best interests of voters to resolve the ongoing litigation by revising Numbered Memo 2020-19 in a manner that was the least likely to result in disenfranchisement. *Id.*

In the revised Numbered Memo 2020-19, dated September 22, 2020, section 2 details the types of deficiencies elections staff will encounter when reviewing absentee ballot envelopes and how to address those deficiencies. D.E. 151-2, pp. 2-3. Where an absentee ballot envelope arrives open, or the envelope indicates the voter is requesting a replacement ballot, the staff shall spoil the ballot and reissue a new ballot. *Id.*, p. 3. However, the voter can cure certain deficiencies with a certification. Those include when a voter failed to sign, a voter signed the wrong place, witness or assistant did not print name, witness or assistant did not print address, witness or assistant did not sign, or the witness or assistant signed on the wrong line. *Id.*, p. 2.

Under section 3 of Numbered Memo 2020-19, when a ballot arrives with a deficiency that can be cured, the county board elections staff contact the voter in writing within one business day of discovering the issue to alert them and provide them with the cure certification. *Id.*, p. 3-4. The county board does this in writing to the same address

4

used on the initial request, and via email or telephone, so as to ensure that the actual voter is aware of the deficiency and that the certification needs to be returned. *Id.* Nearly 97% of voters who requested an absentee ballot provided an email, a phone number, or both. D.E. 151-3, ¶ 13. Notably, in order to avoid potential time constraints near Election Day, the new cure process allows for electronic service of the cure certification and electronic return of the cure certification that can be performed by the voter themselves without coordinating with a witness. D.E. 151-2, pp. 3-4.

The certification requires the voter to provide a sworn statement under penalty of a Class I felony under North Carolina law that they are an eligible voter, registered to vote, voted and returned their absentee ballot, and that they have not voted and will not vote other than the one ballot already submitted. *Id.*, p. 7. The certification must be received by the county board of elections prior to the close of business on 12 November 2020, the day before the county canvas meeting at which the county board considers the absentee ballot along with the certification to determine whether to accept or reject the ballot. *Id*.

On 2 October, 2020, the Superior Court of Wake County entered a Consent Judgment that implemented Numbered Memo 2020-19, 2020-22, and 2020-23. *N.C, Alliance for Retired Americans v. State of North Carolina*, No. 20-CVS-8881 (Wake Cnty. Super. Ct.); see also *Moore v. Circosta*, 1:20-cv-911, D.E. 1-2 (M.D.N.C.). The court in that matter specifically found that these remedies were warranted and lawful under North Carolina Constitutional and state law. *Id.*

The Legislative Defendants and Republic Committee Defendants filed new actions in the Eastern District of North Carolina and obtained Temporary Restraining Orders

5

enjoining the State Court ruling to implement the Numbered Memos. *Moore v. Circosta*, 1:20-cv-911, D.E. 47 (3 October 2020); *Wise v. N.C. State Board of Elections*, 1:20-cv-912, D.E. 25 (3 October 2020).

On 2 October 2020, this Court issued an Order inviting the parties to submit further briefing of specific questions of law and any motions for affirmative relief, "be it construction and enforcement of this court's order, (D.E. 124), or injunctive relief of some description." D.E. 152. In response to this Order, Plaintiffs filed a motion for affirmative relief seeking to have this Court fashion a new cure policy for the State Board by picking and choosing discrete subparts of the August 21, 2020 Numbered Memo 2020-19 and the September 22, 2020 Numbered Memo 2020-19 in a piecemeal fashion. D.E. 156. This request for relief exceeds the express directive from this Court that it does not intend to instruct state officials how to conform with state law, but only whether the September 22, 2020 memo unconstitutionally modified the North Carolina's legislative scheme. D.E. 152, pp. 4-5.

## ARGUMENT

As a threshold issue, Executive Defendants incorporate by reference their response to the Plaintiffs' motion to enforce. D.E. 151.

### I. Plaintiffs' Request for the Court to Create Election Procedures is Improper.

### A. This Court Should Decline Plaintiffs' Invitation To Micromanage North Carolina's Elections And Allow the Executive Defendants to Implement a Cure Process, Particularly in Light of Ongoing Litigation.

Plaintiffs present the Court with an extended wish list of proposed modifications to

6

its order, drawing from a number of sources and asking the Court to micromanage the minutiae of the November elections on plaintiffs' behalf. The Court should decline that invitation. The initial order instructed Executive Defendants to implement a standardized cure process that provided procedural due process to voters. D.E. 124, p. 159. The Court left it to the State Board to implement the rule. *Id.* at 185. The Executive Defendants' simultaneous efforts to comply with this Court's order while managing other legal obligations, litigation, and settlements are a delicate balancing act. Granting Plaintiffs their relief upsets the equilibrium the Board has sought to reach in addressing the extensive litigation surrounding the election.

Particularly with respect to the administration of elections, courts have generally recognized that the wisest course of action is to "leave the procedural implementation of [a] preliminary injunction to the State itself." *See Jones v. Governor of Florida*, 950 F.3d 795, 830 (11th Cir. 2020). "By leaving to the State substantial discretion in how to comply with the preliminary injunction, the district court[] . . . respects the State's sovereignty." *Id.* The alternative—"ordering Defendants to adopt Plaintiffs' laundry list" of requested policies—"would require the Court to micromanage the State's election process." *Coal. For Good Governance v. Raffensperger*, No. 1:20-cv-1677, 2020 WL 2509092, at *4 (N.D. Ga. May 14, 2020).[2] This principle comports with the general rule, applicable in other

---

[2] *See also Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) ("Nothing in the Constitution, the Supreme Court's controlling precedent, or our case law suggests that we can micromanage a state's election process to this degree."); *Mi Familia Vota v. Abbott*, -- F. Supp. 3d --, 2020 WL 5366291, at *6 (W.D. Tex. Sept. 7, 2020) ("Should it exercise the authority Plaintiffs propose, the Court would mandate and implement its own judgment about the proper administration of elections . . . . In doing so, this Court would override any policy decisions to micromanage Texas's election process."), *appeal pending*, No. 20-50793 (5th Cir. 2020).

7

situations, favoring injunctive relief "with the minimal impact possible on defendants' discretion over their policies and procedures." *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) (referring to injunctions regarding prison administration); *Anderson v. Mecklenburg Cty. Jail*, No. 3:12-cv-67, 2013 WL 2456029, at *3 (M.D.N.C. June 6, 2013) ("Although federal courts may enter injunctions to prevent Eight Amendment violations, they may not micromanage state prisons.").

This Court's order was relatively straightforward: The Executive Defendants were prohibited "from the disallowance or rejection . . . of absentee ballots without due process as to those ballots with a material error that is subject to remediation." D.E. 124, pp. 182, 185. The injunction is in force "until such time as Defendants implement a law or rule which provides a voter with notice and an opportunity to be heard before an absentee ballot with material error subject to remediation is disallowed or rejected." *Id.* The order deliberately left the specifics of implementing a notice and cure process within the Executive Defendants' discretion. *See id.* at 180 (noting that because "it appears Executive Defendants are on their way towards implementing a curing procedure . . . an injunction against the rejection of any absentee ballots until [that] time . . . will suffice"). Plaintiffs make no allegation that any absentee ballots have been disallowed or rejected without being subject to a cure procedure—and thus make no allegation that the Executive Defendants have violated the injunction. *See generally* D.E. 148, 156. Yet, they move for enforcement, and for a new, detailed injunction that will take election administration out of the Board's hands and into their own. In this respect, Plaintiffs' requests are extraordinary. In the guise of an enforcement action, Plaintiffs seek to convert this Court's *negative prohibition* on

8

rejecting curable ballots into a series of specific, *positive requirements*. But "[a] litigant can't use an 'enforcement' action as a collateral attack on limitations the court deliberately included in the judgment being 'enforced.'" *Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1328 (7th Cir. 1992).

The unworkable nature of plaintiffs' proposed relief is made even more clear when this case is placed into context as one of ten[3] in both state and federal court, challenging the rules and procedures in place for this November's elections. The procedures in Numbered Memo 2020-19 that plaintiffs challenge are implicated in those actions as well. As a consequence, plaintiffs' requested relief risks upsetting the Board's attempts to resolve and defend those suits. Indeed, as the Court is aware, the implementation of Numbered Memo 2020-19 has currently been simultaneously *ordered* as part of a consent judgment by a state court and *enjoined* by the Eastern District of North Carolina prior to its transfer of *Wise* and *Moore* to this Court. Additionally, because the state court made its own findings of fact and conclusions of law in entering the consent judgment, the Executive Defendants are potentially subject to contempt proceedings should they deviate from the implementation of the numbered memo as written. *See Nohejl v. First Homes of Craven Cty., Inc.*, 120 N.C. App. 188, 190-91 (1995). And yet plaintiffs seek the entry of yet another potentially conflicting order. This Court should deny that request. *See Playboy Ents. Intern., Inc. v. Play Beverages, LLC*, No. 13-cv-826, 2013 WL 2151557, at *4 (N.D.

---

[3] In addition to this matter, this includes, but is not limited to, *N.C, Alliance for Retired Americans, et al. v. State of North Carolina, et al.*, No. 20-CVS-8881 (Wake Cnty. Super. Ct.); *Stringer, et al. v. The State of North Carolina, et al.*, No. 20-CVS-5615 (Wake Cnty. Super. Ct.); *DSCC, et al. v. The North Carolina State Board of Elections, et al.*, No. 20-CVS-9947 (Wake Cnty. Super. Ct.); and *Moore, et al. v. Circosta, et al*, 1:20-cv-911 (M.D.N.C.); *Wise, et al. v. N.C. State Board of Elections, et al.*, 1:20-cv-912 (M.D.N.C.).

9

Ill. May 15, 2013) (referring to the "grave consequence for the appearance and actuality of justice" when "competing injunctions" issue) (internal quotations and alteration omitted).

**B. Plaintiffs Have Failed to Demonstrate the Necessity of Further Injunctive Relief.**

Plaintiffs seek a new order that would be the equivalent of the Court issuing a third memo outlining election procedures drawing piecemeal from Plaintiffs' preferred remedies. Specifically, Plaintiffs request a long list of requirements for their preferred injunctive relief. D.E. 156, pp. 11-13. Plaintiffs are attempting to create the appearance of a conflict between the cure procedures put in place by the State Board and their desired remedies, but almost all of the relief requested is already incorporated into the September 22, 2020 cure procedure. Those remaining remedies not incorporated, would not be effective.

Specifically, of Plaintiffs' ten requested remedies they ask the Court to enter, eight are included in the revised September 22, 2020 Numbered Memo cure procedure:

(1) Voter signature or witness signature deficiencies cured by a voter certification (See September 22, 2020 Numbered Memo 2020-19, D.E. 151-2, p. 2, section 2.1);

(2) Prohibit rejection or cure where a witness or assistant used a Post Office box address or other missing address information (D.E. 151-2, p. 2, Fn3);

(4) When a cure certification is required, it should be sent to the address which the voter used for their absentee ballot request (D.E. 151-2, section 3.1);

(5) In addition to a mailed cure certification, an electronic copy should be sent via email (D.E. 151-2, section 3.1);

(6) If an email is not available, the county board should call the voter at the phone number provided to inform them a cure certification was mailed (D.E. 151-2, section 3.1);

(7) When a material error cannot be cured, the county board should spoil the ballot and issue a new ballot and provide prompt notice of the deficiency and the issuance of a new ballot (D.E. 151-2, section 3.1);

(8) When a new ballot is issued, the county board should email the voter (D.E. 151-2, section 3.1); and

(9) If email is not available, the county board should call their phone number (D.E. 151-2, section 3.1).

D.E. 156, pp. 10-13.

Only two of Plaintiffs' requested remedies are not included in the revised Numbered Memo 2020-19. First, Plaintiffs seek an order requiring that county boards "review every business day [the] container return envelopes and notify voters within one business day of any deficiencies." The numbered memo contains effectively the same procedure, but allows for some flexibility to account for the large influx of absentee ballots. Section 2 of the numbered memo states that "County board staff shall, to the extent possible, regularly review container-return envelopes on each business day . . . ." D.E. 151-2, section 2. And Section 3.1 requires that "the county board of elections shall contact the voter in writing within one business day of identifying the deficiency . . . ." D.E. 151-2, section 3.1.

Second, Plaintiffs request that if a ballot is to be rejected pursuant to North Carolina law, the county board must provide an opportunity to the voter to be heard to contest the

11

deficiency or otherwise defend their ballot. D.E. 156, p. 13. This requested remedy is, in fact, no remedy at all. The revised cure procedure no longer has a process for a hearing at canvass because this would be confusing to voters, administratively difficult, and pointless. See. Bell Dec., D.E. 151-3, ¶ 10. The hearing serves no purpose because the cure procedure offers a voter the opportunity to cure any deficiencies with the container envelope, thus eliminating any circumstances under which a voter would have to contest rejections. *Id.* On the day of the canvass, it is too late to cure any issues, which is why the deadline for return receipt of a cure certification in the revised memo is the end of business the day before the canvass. *Id.*

To the extent these provisions are incorporated into the revised Numbered Memo 2020-19, the Executive Defendants obviously agree with these suggestions; that is why these provisions were chosen to be part of the cure process. Nonetheless, Executive Defendants object to the introduction of a new injunctive order that displaces the current cure procedure and institutes overlapping procedures. Such an order would cause confusion for county boards, particularly in light of the state-court action that has ordered the State Board to issue the September 22 Numbered Memo.

Thus, Plaintiffs do not have any *constitutional* objection with revised Numbered Memo 2020-19. Instead, they—for whatever reason—prefer some provisions over others. But plaintiffs' preferences are just one consideration for the State Board. The State Board must address the legal claims of not just plaintiffs in this matter, not just the prior injunction entered in this matter, but all of the myriad legal obligations of the agency, including state and federal law and other lawsuits and orders entered by other courts. That is why the

implementation of the cure process, even if a revision were required, is best left to the State Board to address, as it has done with the September 22, 2020 Numbered Memo 2020-19.

Additionally, Plaintiffs have simply failed to demonstrate that the further relief described above is merited.

The Court unquestionably "has the authority to issue further orders to enforce its prior injunction." *Nat'l Law Ctr. On Homelessness & Poverty v. U.S. Veterans Admin.*, 765 F. Supp. 1, 6 (D.D.C. 1991). But Plaintiffs are clearly seeking a *new* injunction. *See* D.E. 148 (requesting the Court "issue an order . . . setting forth a detailed cure procedure"); 156 (requesting the Court "order the State Board of Elections to take the actions described above").

The Court need not fully re-analyze the applicable standards for injunctive relief, but "[a]s with the initial injunction, . . . an order granting further injunctive relief must also be 'narrowly tailored to remedy the specific harm shown.'" *Nat'l Law Center*, 765 F. Supp. at 6; *see also Roe v. Dep't of Defense*, 947 F.3d 207, 231 (4th Cir. 2020) ("[A] court must ensure a preliminary injunction is 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'").

Plaintiffs have not made the requisite showing that their laundry list of proposals are "no more burdensome to the [Executive Defendants] than necessary." *Roe*, 947 F.3d at 231. Indeed, they do not even attempt to meet this standard. *See generally* D.E. 148, 156. Rather, they argue that revised Numbered Memo 2020-19 is "insufficient" to "compl[y] with the injunction in place." D.E. 156, at 16. This is plainly incorrect—and Plaintiffs have presented no evidence or argument that supports this proposition. By contrast, the

13

Executive Defendants have shown that the September 22 Numbered Memo does not reject any ballots without implementing a cure process that governs ballots with material defects that can be remedied.

In fact, Plaintiffs' requested relief would be *more* burdensome on Executive Defendants than necessary. The cure procedure in the Numbered Memo maintains the witness requirement, while remaining responsive to the exigencies posed by COVID-19 and the unintentional but real disparate racial impact of the procedures included in the initial cure provision. Despite the Executive Defendants' efforts to maintain and defend the witness requirement across multiple lawsuits, the Board has nonetheless been subjected to lawsuits arguing that it has attempted to eliminate the witness requirement—a concern that this Court has noted, as well. To the extent that Plaintiffs' requested relief would go further than Numbered Memo 2020-19, these changes would subject the Executive Defendants to further litigation, introduce further confusion into the process, and provide little marginal benefit relative to the due process protections included in Numbered Memo 2020-19.

But even if Plaintiffs' request is construed instead as a motion to modify the injunction, they "bear[] the burden of establishing that a *significant* change in facts or law warrants revision . . . of the injunction." *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (emphasis added); *see also Inst. for Justice v. Media Grp. Of America, LLC*, No. 1:15-cv-1410, 2016 WL 8230638, at *1 (E.D. Va. Feb. 2, 2016) (applying same standard).

Plaintiffs have provided no such significant facts or law. The only relevant changes in facts to which Plaintiffs point are the various actions the Executive Defendants have

taken in response to various court orders since this Court issued its order on August 4. But these changes, most significantly the Board's instruction to county officials to not take any action on ballots with remediable defects, do not justify Plaintiffs' requested relief any more than they justify allowing the Executive Defendants to proceed under the September 22, 2020 numbered memo. The implementation of the cure procedure contained in that memo will resolve the status of outstanding absentee ballots with remediable defects and ensure absentee voters' due process rights are protected.

## II. Application of *Purcell*.

Plaintiffs' argue that (1) *Purcell* is not applicable here because the changes by the State Board via Numbered Memos are not changes to election law, but proactive measures to abide by the mandates of this Court's prior injunction; and (2) *Purcell* urges this Court not to issue new injunctive relief, but instead recognize that Executive Defendants acted within the authority provided from the prior injunctive relief.

Generally, Executive Defendants agree with Plaintiff that all actions taken by the State Board were intended to remain within the confines of this Court's prior injunction, but also to proactively respond to the changing circumstances of the election, including to address due process issues and potential disparate impacts on the voting population. For additional arguments on this subject, see Response to Plaintiffs' Motion to Enforce Order (D.E. 151) and Executive Defendants' Response to Legislative Defendant-Intervenors' Motion for All Writs Act Relief, filed simultaneously herewith.

15

### III. As Plaintiffs' Request, This Court Should Not Enjoin Memo 2020-19.

Plaintiffs' argue that this Court has no federal constitutional basis to enjoin the 22 September 2020 Numbered Memo 2020-19 because all arguments raised by the Plaintiffs' in the related matters of *Moore* and *Wise* to support an equal protection claim are legally insufficient. Executive Defendants agree that the cure provisions enacted in Numbered Memo 2020-19 do not result in any equal protection violations and should not be relied upon in this matter to enter a new injunction.

### **CONCLUSION**

For the reasons above, as well as for the reasons stated in the Response to Plaintiffs' Motion to Enforce Order (D.E. 151), the Executive Defendants respectfully request that Court deny plaintiffs' motion.

This the 6th day of October 2020.

JOSHUA H. STEIN
Attorney General

/s/ Alexander McC. Peters
Alexander McC. Peters
N.C. State Bar No. 13654
Chief Deputy Attorney General
Email: apeters@ncdoj.gov

N.C. Dept. of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6763

# CERTIFICATE OF WORD COUNT

Pursuant to the Court's instructions [D.E. 152, p. 9], the undersigned counsel hereby certifies that the foregoing Response, including body, headings, and footnotes, contains 4,397 words as measured by Microsoft Word.

This the 6th day of October, 2020.

/s/ Alexander McC. Peters
Alexander McC. Peters
Chief Deputy Attorney General
