IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


DEMOCRACY NORTH CAROLINA,       )
THE LEAGUE OF WOMEN VOTERS      )
OF NORTH CAROLINA,              )
DONNA PERMAR, JOHN P. CLARK,    )
MARGARET B. CATES,              )
LELIA BENTLEY, REGINA WHITNEY   )
EDWARDS, ROBERT K. PRIDDY II,   )
SUSAN SCHAFFER, and             )
WALTER HUTCHINS,                )
                                )
            Plaintiffs,          )
                                )
     v.                          )          1:20CV457
                                )
THE NORTH CAROLINA STATE         )
BOARD OF ELECTIONS,              )
DAMON CIRCOSTA, in his           )
official capacity as CHAIR       )
OF THE STATE BOARD OF            )
ELECTIONS, STELLA ANDERSON,      )
in her official capacity as      )
SECRETARY OF THE STATE           )
BOARD OF ELECTIONS,              )
KEN RAYMOND, in his official     )
capacity as MEMBER OF THE        )
STATE BOARD OF ELECTIONS,        )
JEFF CARMON III, in his          )
official capacity as MEMBER      )
OF THE STATE BOARD OF            )
ELECTIONS, DAVID C. BLACK,       )
in his official capacity as      )
MEMBER OF THE STATE BOARD        )
OF ELECTIONS, KAREN BRINSON      )
BELL, in her official            )
capacity as EXECUTIVE            )
DIRECTOR OF THE STATE BOARD      )
OF ELECTIONS, THE NORTH          )
CAROLINA DEPARTMENT OF           )

TRANSPORTATION, J. ERIC       )
BOYETTE, in his official      )
capacity as TRANSPORTATION    )
SECRETARY, THE NORTH          )
CAROLINA DEPARTMENT OF        )
HEALTH AND HUMAN SERVICES,    )
and MANDY COHEN, in her       )
official capacity as          )
SECRETARY OF HEALTH AND       )
HUMAN SERVICES,               )
                              )
              Defendants.     )
                              )
    and                       )
                              )
PHILIP E. BERGER, in his      )
official capacity as          )
PRESIDENT PRO TEMPORE OF THE  )
NORTH CAROLINA SENATE, and    )
TIMOTHY K. MOORE, in his      )
official capacity as SPEAKER  )
OF THE NORTH CAROLINA HOUSE   )
OF REPRESENTATIVES,           )
                              )
    Defendant-Intervenors.    )


## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

Presently before the court are Defendant-Intervenors

Philip E. Berger and Timothy K. Moore's ("Legislative

Defendants") Motion for All Writs Act Relief, (Doc. 154), and

Plaintiffs' Motion for Affirmative Relief, (Doc. 156). This

court finds that the North Carolina State Board of Elections

improperly used this court's Memorandum Opinion and Order of

-2-

August 4, 2020, in setting out its revised Numbered Memo 2020-19, thereby frustrating and circumventing the already-issued preliminary injunction order, (Doc. 124), over which this court has continuing jurisdiction. This court will grant Defendant-Intervenors' motion in part to enjoin the State Board of Elections' elimination of the witness requirement. Plaintiffs' motion will be denied.

## I.   **FACTUAL BACKGROUND**

On August 4, 2020, this court issued a preliminary injunction order, (Memorandum Opinion and Order, ("August Order") (Doc. 124)), that "left the One-Witness Requirement in place, enjoined several rules related to nursing homes that would disenfranchise Plaintiff Hutchins, and enjoined the rejection of absentee ballots unless the voter is provided due process." (Id. at 3.) This court's August Order is still in effect, as no party has appealed this court's grant of a preliminary injunction recognizing and ensuring voters' Due Process rights.

### A.   **Communications Prior to August 21, 2020**

Shortly after this court issued the August Order, in a letter dated August 12, 2020, Plaintiffs communicated with Defendant State Board of Elections ("SBE") officials regarding Plaintiffs' understanding that this court's August Order would

-3-

require any "law or rule" that SBE issued to "provide voters with timely notice of any issues that would cause their ballot to be rejected, as well as an opportunity to be heard such that voters may cure those deficiencies[1] and have their votes properly counted." (Doc. 148-2 at 2.)[2]

In particular, Plaintiffs advised Defendant SBE officials of "what, in Plaintiffs' view, [were] the required elements of the law or rule required by the Court in order to satisfy due process." (Id. at 3.)

First, Plaintiffs requested "[p]rompt identification and notice," for "those issues easily identified on the face of the absentee ballot envelope . . . ." (Id.) For those issues, "[C]ounty board of election staff members should identify and provide notice to the voter of any defect that [would] prevent their vote from being counted within 1 business day of receiving the ballot." (Id.) Plaintiffs requested that notice occur

---

[1] This statement by Plaintiffs misstates this court's order. That order is limited to requiring the SBE to provide "due process as to those ballots with a material error that is subject to remediation." (August Order (Doc. 124) at 187.) The August Order did not require provision of a cure for every deficiency.

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-4-

"before the next county board of elections meeting in which the board approves and rejects ballots," which Plaintiffs indicated in its letter, would "start 5 weeks before Election Day." (Id.)

Second, Plaintiffs requested "[n]otice by all means reasonably available," specifically of "a material defect and the method of curing that defect." (Id.) "Notice of the material defect and method of curing it should also be provided on the online tracking tool (which is required under H.B. 1169 . . . )." (Id.) Plaintiffs further said that "[s]uch outreach should include looking for contact information beyond that provided by the voter on the absentee application envelope, including, at least, using mail, telephone, and email to the extent that information is available from voter registration forms and on the SEIMS [statewide election information management] database." (Id.)

B. **Release of Memo 2020-19**

In response, on August 21, 2020, SBE officials released guidance for "the procedure county boards must use to address deficiencies in absentee ballots." (Numbered Memo 2020-19 ("the original Memo 2020-19" or "the original Memo") (Doc. 148-3 at 2).) This guidance instructed county boards regarding multiple topics. First, it instructed county election boards to "accept [a] voter's signature on the container-return envelope if it

-5-

appears to be made by the voter . . . [a]bsent clear evidence to the contrary," even if the signature is illegible. (Id.)

Next, the original Memo sorted ballot deficiencies into two categories: curable and uncurable deficiencies. (Id. at 3.) Under Memo 2020-19, a ballot could be cured via voter affidavit alone if the voter failed to sign the certification or signed in the wrong place. (Id.) A ballot error could not be cured in the case of all other listed deficiencies, including a missing signature, name, or address of the witness; an incorrectly placed witness or assistant signature; or an unsealed or re-sealed envelope. (Id.) Counties were required to notify voters regarding any ballot deficiency that could be cured within one day of the county identifying the defect. After a voter was notified of the deficiency, the voter was required to return a cure affidavit by Thursday, November 12. (Id. at 4.) In the case of an incurable defect, a new ballot could be issued only "if there [was] time to mail the voter a new ballot . . . [to be] receive[d] by Election Day." (Id. at 3.) If a voter who submitted an uncurable ballot was unable to receive a new absentee ballot in time, he or she would have the option to vote in person on Election Day.

C.    <u>**Communications Following August 21, 2020**</u>

Soon thereafter, on August 26, 2020, Plaintiffs sent the SBE and Executive Defendants a letter expressing concern about the efficacy of Memo 2020-19, claiming that the protections it laid out "[did] not satisfy due process as required by the Court's [August] Order." (Doc. 148-4 at 2.) In this letter, Plaintiffs listed several Due Process concerns about the cure process guidance. These concerns included: (1) the lack of a timeframe for reviewing absentee ballots for deficiencies, (2) "unclear procedures for voter notification" if a cure is necessary, (3) the lack of a remote option for voters to "contest the disapproval of their deficient ballot," (4) a lack of "any indication as to how the cure process will be . . . monitored and enforced," (5) the Memo's failure to "clearly prohibit counties from implementing a signature verification process," and (6) ambiguity around the acceptability of unique electronic signatures. (<u>Id.</u> at 2-4.)[3]

After explaining these concerns, Plaintiffs noted that since "counties will start mailing absentee ballots on September 4, 2020 . . . Plaintiffs may find it necessary to file

---

[3] Again, while Plaintiffs' requests may be appropriate policy considerations, these processes seem to contemplate a cure for all cases, a remedy this court did not, and does not, deem required by Due Process. <u>See</u> discussion <u>supra</u> at 4 n.1.

-7-

an affirmative motion to enforce the injunction should Defendants fail to implement an adequate law or rule by [September 4th]." (Id. at 4.) However, no motion was filed, and nothing further was brought to the attention of this court prior to September 4th.

### D. Revision of Numbered Memo 2020-19

The State began issuing ballots on September 4, 2020, marking the beginning of the election process. Over two weeks later, on September 22, the SBE attempted to revise its original guidance to address Plaintiffs' remaining concerns. (Numbered Memo 2020-19 ("the Revised Memo" or "Revised Memo 2020-19") (Doc. 143-1).) 153,664 absentee ballots were received by the SBE between September 4 and September 22. Absentee Data, N.C. State Bd. of Elections (Sept. 22, 2020). The SBE cited the August Order as "consistent with" its revisions, (Notice of Filing (Doc. 143) ¶ 1), which set forth a variety of new policies not implemented in the original Memo 2020-19. (See Revised Memo (Doc. 143-1).) The revised guidance extended the deadline for absentee ballots to be received out to November 12, 2020. (Id. at 4.) It also altered which ballot deficiencies fell into the curable and uncurable categories: unlike Memo 2020-19, the Revised Memo advised that ballots missing a witness or assistant name or address, as well as ballots with a missing or misplaced

-8-

witness or assistant signature, could be cured via voter certification. (Id. at 2.) This certification could be filed through November 12, 2020, eight days after Election Day. (Id. at 4). The Executive Defendants filed notice of this revised guidance with the court on September 28, 2020. (Notice of Filing (Doc. 143), only one day before the processing of absentee ballots was scheduled to begin. ((Doc. 148) at 11.)

E. **Consent Judgment in North Carolina Alliance for Retired Americans v. North Carolina State Board of Elections**

On August 10, 2020, the North Carolina Alliance for Retired Americans ("NC Alliance Intervenors"), who are Defendant-Intervenors in two cases presently before this court; Moore v. Circosta, No. 1:20CV911 (M.D.N.C. filed Oct. 5, 2020), and Wise v. N.C. State Bd. of Elections, No. 1:20CV912 (M.D.N.C. filed Oct. 5, 2020); filed an action against the SBE in North Carolina's Wake County Superior Court. (Moore v. Circosta, No. 1:20CV911 (Doc. 68-1) at 15.) They challenged, among other voting rules, the witness requirement for mail-in absentee ballots and rejection of mail-in absentee ballots that are postmarked by Election Day but delivered to county boards more than three days after the election. (Id.) On August 12, 2020, Philip Berger and Timothy Moore, who are also Plaintiffs in Moore, became parties to the state action as intervenor-

-9-

defendants on behalf of the North Carolina General Assembly. (Id. at 16.)

On September 22, 2020, the same day the Revised Memo was released, SBE and NC Alliance filed a Joint Motion for Entry of a Consent Judgment with the superior court. (Id.) Philip Berger and Timothy Moore were not aware of this "secretly-negotiated" Consent Judgment, (Wise v. N.C. State Bd. of Elections, No. 1:20CV912 (Doc. 43) at 7), until the parties did not attend a previously scheduled deposition, (1:20CV457 (Doc. 168) at 73.)

Among the terms of the Consent Judgment, SBE agreed to extend the deadline for receipt of mail-in absentee ballots mailed on or before Election Day to nine days after Election Day, to implement the cure process established in the Revised Memo 2020-19, and to establish separate mail-in absentee ballot "drop off stations" at each early voting site and county board of elections office which were to be staffed by county board officials. (Doc. 68-1 at 16.)

In arguing that the North Carolina Superior Court should approve and enter the Consent Judgment, SBE cited this court's August Order from Democracy. SBE argued that a cure procedure for deficiencies related to the witness requirement were necessary because "[w]itness requirements for absentee ballots have been shown to be, broadly speaking, disfavored by the

-10-

courts," (id. at 26), and that "[e]ven in North Carolina, a federal court held that the witness requirement could not be implemented as statutorily authorized without a mechanism for voters to have adequate notice of and [an opportunity to] cure materials [sic] defects that might keep their votes from being counted." (Id. at 27.) SBE argued that, "to comply with the State Defendants' understanding of the injunction entered by Judge Osteen, the State Board directed county boards of elections not to disapprove any ballots until a new cure procedure that would comply with the injunction could be implemented," (id. at 30), and that ultimately, the cure procedure introduced in the Revised Memo 2020-19 as part of the consent judgment would comply with this injunction. (Id.)

On October 2, 2020, the Wake County Superior Court entered the Stipulation and Consent Judgment. (Doc. 166-1.) Among its recitals, which Defendant SBE drafted and submitted to the judge as is customary in state court, (Moore v. Circosta, No. 1:20CV911 (Doc. 70) at 90-91), the Wake County Superior Court noted this court's preliminary injunction in Democracy, finding,

> WHEREAS, on August 4, 2020, the United States District Court for the Middle District of North Carolina enjoined the State Board from the "disallowance or rejection . . . of absentee ballots without due process as to those ballots with a material error that is subject to remediation." Democracy N.C. v. N.C. State Bd. of Elections, No. 1:20-cv-00457-WO-JLW

> (M.D.N.C. Aug. 4, 2020) (Osteen, J.). ECF 124 at 187.
> The injunction is to remain in force until the State
> Board implements a cure process that provides a voter
> with "notice and an opportunity to be heard before an
> absentee ballot with a material error subject to
> remediation is disallowed or rejected." Id.

(Id. at 19; (Doc. 166-1) at 5.) Additional facts will be addressed in the analysis where necessary.

###    F.    Current Requests for Relief

This court requested a status conference on Wednesday, October 7, 2020. (Doc. 146.) Only after this point did Plaintiffs file a motion with this court, (Doc. 147), requesting enforcement of a preliminary injunction on the basis of the August Order, claiming that even the Revised Memo failed to meet Due Process requirements as outlined by the August Order. (Pls.' Mem. of Law in Supp. of Mot. to Enforce Order Granting in Part Prelim. Inj., or, in the Alternative, Mot. for Clarification, and to Expedite Consideration of Same ("Pls.' Br. on Mot. to Enforce") (Doc. 148) at 13.) As noted previously, the processing of absentee ballots had already started on September 29, 2020. (Id. at 11.) Both Legislative Defendants and Plaintiffs subsequently filed motions for affirmative relief: Legislative Defendants seek injunction of the Revised Memo 2020-19, (Doc. 154), while Plaintiffs seek injunction of both Memos and further guidance from the court on proper election procedure, (Doc.

-12-

156). Only the Executive Defendants have argued, in their Response to Plaintiffs' Motion to Enforce Order ("Exec. Defs.' Resp.") (Doc. 151) at 2) that the Revised Memo 2020-19 is the correct operative guidance, claiming it was necessary in order to comply with this court's August Order.

## II. ANALYSIS

### A. The Preliminary Injunction Order

Before turning to analysis of the pending motions, this court will address an issue with the parties' use of certain language from the August Order.

In an effort to provide context for the August Order and to perhaps avoid additional future litigation, this court provided certain observations as to what might be required in relation to voting processes during the COVID-19 pandemic in light of this court's order. (See August Order (Doc. 124) at 3-6.) After careful review of the pleadings and attachments filed following the issuance of that Order, it appears to this court that language was either misunderstood or has been misconstrued. The language has been cited in support of unreasonable demands, inaction, and acts that appear to ignore the rule of law. This court does not make policy decisions for legislative branches or executive offices, nor were its observations intended to substitute for the rule of law.

-13-

In light of this concern, the court has considered striking those findings. This court, instead, notes for clarification that those comments were not, and are not, intended to suggest that the circumstances created by COVID-19 can or should be used to disregard the rule of law or the Constitution. Nor were those statements intended to suggest a source of authority for acts or requests not otherwise permitted by the rule of law.

## B. Sufficiency of the Original Memo 2020-19

Plaintiffs' Motion for Affirmative Relief, (Pls.' Mot. for Affirmative Relief (Doc. 156)), asks this court to find that both the original Memo 2020-19 and the Revised Memo 2020-19 are insufficient to respond to this court's August Order. (Id. at 16, 34.) Though the guidance contained in the original Memo 2020-19 may not be perfect, it sufficiently complied with this court's August Order. Even if the original Memo 2020-19 fell short, reliance on this court's order for further election rule changes after September 4, 2020 – as in the Revised Memo 2020-19 – is not appropriate under the facts and circumstances of this case.

### 1. Due Process

This court's August Order "enjoined the rejection of absentee ballots unless the voter is provided due process." (August Order (Doc. 124) at 3.) The August Order noted that

-14-

"[t]here are currently no procedures in place statewide that would either notify a voter that their absentee ballot has a material error nor allow such a voter to be heard in challenging such a rejection." (Id. at 157-58.) The injunction ordered that the SBE was prohibited from "the disallowance or rejection . . . of absentee ballots without Due Process as to those ballots with a material error that is subject to remediation." (Id. at 187.)

This court finds that the original Memo 2020-19, issued by the SBE on August 21, 2020, (Doc. 148-3), sufficiently addressed this court's concerns regarding Due Process. The guidelines[4] set out by the original Memo 2020-19 sufficiently addressed errors "subject to remediation," (Doc. 124 at 187), also referred to as curable defects.[5] Memo 2020-19 laid out statewide procedures by which absentee ballots with reasonable, minor deficiencies could be cured by voters. If a voter failed to sign the certification,

---

[4] Plaintiffs argue that the Numbered Memos do not qualify as rules or laws "independently enforceable beyond the discretion of the SBE," and are therefore insufficient to satisfy this court's August Order. (Pls.' Br. on Mot. to Enforce (Doc. 148) at 14-15.) This court disagrees: the SBE was directly charged with remedying the Due Process concerns identified in the court's August Order. The Numbered Memos served as binding guidance which county boards were "required to follow." (Exec. Defs.' Resp. (Doc. 151) at 9.) This is sufficient for the purposes of this court's August Order.

[5] This court does not consider a missing witness signature a mere curable defect. See discussion infra, Part II.B.1.

-15-

or signed in the wrong place, the ballot could be cured with an affidavit from the voter. (Original Memo 2020-19 (Doc. 148-3) at 2.)

On the other hand, if a deficiency led to the ballot being spoiled "because the missing information [came] from someone other than the voter[,]" such as the absence of a witness signature, then the county board was obligated to "reissue a ballot along with a notice explaining the county board office's action." (Id. at 3.) This allows voters to respond to ballot rejections and requires prompt notification of voters if their ballots contain uncurable errors.

Plaintiffs present several critiques of the SBE's guidance in both versions of Numbered Memo 2020-19. First, they note that Memo 2020-19 does not "specify a timeline by which counties must review absentee ballot applications for deficiencies." (Pls.' Br. on Mot. to Enforce (Doc. 148) at 18-19.) Second, Plaintiffs emphasize that the original Memo 2020-19 does not go the extra step of requiring counties to contact voters with ballot deficiencies via phone number and email rather than via

-16-

traditional mail only.[6] (Id. at 20-21.) Finally, Plaintiffs claim that both versions of Memo 2020-19 fall short by failing to provide voters with remote opportunities to attend county canvasses and remedy material errors. (Id. at 24.) Though these complaints might have some value, they do not undermine the overall adequacy of Memo 2020-19 in addressing this court's original Due Process concerns. Due Process does not guarantee that every attempted ballot is counted – rather, Due Process ensures that an individual voter will receive notice and an opportunity to be heard in certain circumstances. It does not, and cannot, be used to displace the state's election statutes or delay the election.

Based on these criticisms, Plaintiffs urge this court to adopt certain provisions within the Revised Memo in a piecemeal manner. (Pls.' Mot. for Affirmative Relief (Doc. 156) at 10-14). Plaintiffs urge the court to "order the State Board of Elections to [implement specific, listed reforms]" in the name of Due

---

[6] Regardless of the merits of Plaintiffs' grievance regarding the shortcomings of mail-only notifications, the original Memo 2020-19 still meets the bar set out in this court's August Order. Furthermore, as this concern was not raised with this court prior to the start of the election, and in light of Purcell v. Gonzalez, 549 U.S. 1 (2006), this court finds Plaintiffs' delay a serious and confounding issue that would merit denial of additional injunctive relief for that reason alone.

-17-

Process. (Id. at 34.) Despite Plaintiffs' request, this court's role does not entail picking and choosing those electoral reforms it views as wise from a policy perspective. This court may only adjudicate whether the bar of Due Process has been met, which this court finds it has under the original Memo 2020-19.

Though the original Memo may not perfect the absentee process, it addresses this court's Due Process concerns as expressed in the August Order, particularly as to notice and an opportunity to be heard prior to rejection. This court's August Order, (Doc. 124), was never intended to create insurmountable hurdles for the SBE's rejection of an absentee ballot under any circumstances. Even if the original Memo 2020-19 were insufficient, the application of Revised Memo 2020-19 in its stead cannot be justified on the basis of this court's August Order.

### 2. Delay in Seeking Injunctive Relief

Moreover, Plaintiffs have delayed too long in seeking enforcement of the order and rejection of both versions of Memo 2020-19. This undermines Plaintiffs' case for further affirmative relief at this juncture. Some courts have found that delay in seeking injunctive relief is a clear indicator of "an absence of the kind of irreparable harm required to support a preliminary injunction." Citibank, N.A. v. Citytrust, 756 F.2d

-18-

273, 276 (2d Cir. 1985). The Fourth Circuit has taken a less exacting approach, following the Ninth and Tenth Circuits in weighing delay as a non-dispositive factor in the granting of preliminary injunctive relief. See Candle Factory, Inc. v. Trade Assocs. Grp., Ltd., 23 F. App'x 134, 138 n.2 (4th Cir. 2001) (citing Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs., 31 F.3d 1536 (10th Cir. 1994); Lydo Enters., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213, 1213–14 (9th Cir. 1984).)

In different circumstances, the delay by Plaintiffs of nearly six weeks - from the issuance of the original Memo 2020-19 on August 21 to the filing of this motion to enforce order on September 30 – might not weigh as heavily in the court's analysis. Here, however, the extraordinary circumstances at hand bring Purcell considerations into the delay analysis as well. Purcell v. Gonzalez, 549 U.S. 1 (2006). Plaintiffs acknowledged in August the need for any and all revisions to be made prior to September 4, when ballots were released. (See (Doc. 148-4) at 4 ("As counties will start mailing absentee ballots on September 4, 2020 and thus begin receiving them shortly thereafter, Plaintiffs may find it necessary to file an affirmative motion to enforce the injunction should Defendants fail to implement an adequate law or rule by this date.").) No

-19-

further guidance was issued by the SBE by September 4. However, Plaintiffs still failed to file any such motion with the court until over 30 days after the issuance of the original Memo and their August 26 letter to the SBE. (Doc. 147.) As to this delay, additional facts further undermine any argument by Plaintiffs that they acted diligently and promptly. As noted earlier, none of the parties to this case notified this court or requested relief following the issuance of the original August 21 Memo 2020-19. Instead, on September 28, 2020, the SBE filed its Notice of Filing, (Doc. 143), alleging the Revised Memo 2020-19 was "consistent with the [court's] Order." (Id. at 1.) Plaintiffs did not respond to the Notice in any fashion. On September 30, 2020, this count entered its order stating that Revised Memo 2020-19 was not consistent with the August Order. (Doc. 145 at 3.) It was on that date, September 30, and after this court's order, that Plaintiffs filed a motion requesting additional relief. (Doc. 147.) Plaintiffs' motion requesting additional relief was filed 24 days after the start of the election, after absentee ballots had been received with material defects, and the day before absentee ballots were subject to processing.

Given the obligation of federal courts to avoid changing election rules whenever possible under Purcell, see discussion

-20-

infra Part II.B.2, Plaintiffs' decision to wait until after September 4 to file their motion constituted substantial delay that, in this instance, precludes the granting of additional injunctive relief to Plaintiffs.

## C. __All Writs Act Relief__

Legislative Defendants request that this court "affirmatively enjoin the issuance and enforcement of the [Revised Memo] under the All Writs Act," (Doc. 155 at 22-23), or, "at minimum . . . restrain the NCSBE from relying on this Court's [August Order] to issue the [Revised Memo 2020-19]." (Doc. 150 at 6.) This court will grant Legislative Defendants' motion in part: while Purcell counsels against enjoining the entirety of the Revised Memo, this court finds the All Writs Act ("AWA") authorizes this court to enjoin the SBE's effective elimination of the witness requirement as a remedial action under this court's preliminary injunction order.

Though this court will not enjoin the entirety of the Revised Memo, it will enjoin the witness signature cure process created by the Revised Memo. The cure process provided for witness signatures is inconsistent with this court's August Order, which found the state's statutory witness requirement constitutional. (August Order (Doc. 124) at 102.) This court found that the witness requirement was constitutional while the

-21-

absence of Due Process procedures was unconstitutional. (Id.)
Using the court's Due Process language to effectively override
the legislative witness requirement, after this court upheld it
– in the supposed name of Due Process - is an unacceptable
misuse of the remedy created by this court's order. The State
Board's mischaracterization of this court's injunction in order
to obtain contradictory relief in another court frustrates and
circumvents this court's August Order, (Doc. 124). Remedial
action under the AWA is necessary to prevent frustration and
misuse of this court's preliminary injunction.

### 1. Legal Standard Under the All Writs Act

The All Writs Act provides that "[t]he Supreme Court and
all courts established by Act of Congress may issue all writs
necessary or appropriate in aid of their respective
jurisdictions and agreeable to the usages and principles of
law." 28 U.S.C. § 1651(a). The Supreme Court has "repeatedly
recognized the power of a federal court to issue such commands
under the All Writs Act as may be necessary or appropriate to
effectuate and prevent the frustration of orders it has
previously issued[.]" United States v. New York Tel. Co., 434
U.S. 159, 172 (1977). However, as the All Writs Act is to be
used "sparingly and only in the most critical and exigent
circumstances," Wis. Right to Life, Inc. v. Fed. Election

-22-

Comm'n, 542 U.S. 1305, 1306 (2004) (internal quotation marks and citations omitted), it is often used when a court is seeking to enforce its previous order in the face of blatant violations. See, e.g., SAS Inst., Inc. v. World Programming Ltd., 952 F.3d 513, 521 (4th Cir. 2020), petition for cert. docketed (U.S. Sept. 9, 2020) (No. 20-304) (applying the AWA where a party has "frustrat[ed] . . . orders [the court] has previously issued"); Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1100 (11th Cir. 2004) (finding that obtaining an AWA injunction requires "some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior"); Phillips Beverage Co. v. Belvedere, S.A., 204 F.3d 805, 806 (8th Cir. 2000) (applying the AWA where a party "attempted to make an end run around the district court's refusal to grant the interim relief [it] sought in a case over which the district court continued to have jurisdiction by . . . asking Customs to do what the district court would not"); In re Application of U.S. for an Order Directing X to Provide Access to Videotapes, No. 03-89, 2003 WL 22053105, at *3 (D. Md. Aug. 22, 2003) (using the AWA in order to "prevent[] frustration of this court's previously issued . . . warrant").

## 2. Frustration of this Court's August Order

The State Board vehemently argues it had no intention of frustrating this court's August Order: according to the SBE, the Revised Memo was issued – and the Consent Judgment agreed upon – in a sequence of events unrelated to actual compliance with the August Order. The Board argues that it believed the revisions were consistent with, and not required by, this court's August Order. The State Board of Elections continued to maintain this throughout oral argument before this court on October 7:

> Again, I just wanted to be clear. The State Board was not -- when it revised the memo in September, <u>it was not revising it because it believed those revisions were necessary to comply with your order</u>. It was revising it because it believed that those revisions were necessary to deal with what was actually happening on the ground and because it believed that those revisions could assist in settling protracted litigation, avoiding protracted litigation.

(Doc. 168 at 87 (emphasis added).) The record, however, explicitly disproves this fact. Exactly one week earlier, on September 30, the SBE filed a state court brief supporting its request for a Consent Judgment in the Alliance action. (Doc. 165-1.) Its representations in that brief stand in stark contrast to its representations to this court. (<u>Id.</u> at 15.) In its September 30 brief to the North Carolina Superior Court, only one week prior to oral argument before this court, the SBE

-24-

directly cited this court's August Order as the reason for its "new cure procedure":

> As a result, and to ensure full compliance with the injunction entered by Judge Osteen, the State Board directed county boards of elections not to disapprove any ballots until a new cure procedure that would comply with the State Defendants' understanding [of] the injunction could be implemented. On September 22, 2020, the State Board instituted the cure procedure attached to the proposed consent judgment. The State Board subsequently notified the federal court of its cure mechanism process.

(Id.) (emphasis added). The SBE clearly informed the state court that the revisions were needed "to ensure full compliance with the injunction entered by Judge Osteen." (Id.) Remarkably, the SBE then claimed in this brief that it had "notified [this] federal court of its cure mechanism process." (Id.) No such notification occurred until September 28, 2020. (Notice of Filing (Doc. 143)), only one day before review of absentee ballots was set to begin. (Pls.' Br. on Mot. to Enforce (Doc. 148) at 11.) That notice alleged the Revised Memo was "consistent with the [court's] Order." (Notice of Filing (Doc. 143) at 1.) On September 30, 2020, this court entered an order, (Doc. 145), in response to the SBE's notice, specifically finding that "this court's order cannot in any way be construed to permit a missing witness signature to be cured by 'sending

-25-

the voter a certification,' as indicated by [Revised] Memo 2020-19." (Id. at 4.)

It was only after this court issued that order that the SBE modified its argument by arguing before the North Carolina Superior Court - contrary to its brief - that the cure process in place was not required by the August Order, but instead was the result of the SBE's authority under state law. (N.C. Super. Ct. Hr'g Tr. (Doc. 167-1) at 26.)

Of course, notwithstanding that representation, the SBE in its proposed state court order still included this court's August Order in the recitals as requiring a cure mechanism. (Doc. 166-1 at 5.) That recital of this court's order is the only authority directly cited as authority to implement the cure mechanism. This court finds the SBE did not, and was not, relying upon N.C. Gen. Stat. § 163-22.2 or § 163-27.1 as authority for a cure process. Instead, the SBE relied upon this court's order and injunction requiring Due Process, (Doc. 124), to support a "cure" for an absentee ballot which eliminated the witness requirement. Similarly, during oral argument before the state court, the SBE made several additional references to this court's August Order as requiring some "cure process" – which, in light of the brief, further mischaracterizes the August Order

as a directive to "cure" the witness requirement. (See N.C. Super. Ct. Hr'g Tr. (Doc. 167-1) at 24-26.)

As if these misrepresentations were not enough, in its brief to the state court, the SBE directly stated that this court's August Order held the opposite of what it really held:

> Second, the court enjoined defendants "from the disallowance or rejection, or permitting the disallowance or rejection, of absentee ballots without due process as to those ballots with a material error that is subject to remediation," and directed the adoption of procedures "which provide[] a voter with notice and an opportunity to be heard before an absentee ballot with a material error subject to remediation is disallowed or rejected." Id. at *182. These changes were necessary, the court rules, because North Carolina's witness requirement as statutorily authorized was likely unconstitutional.

(Doc. 165-1 at 14 (emphasis added).) This representation was patently not true: this court found that Due Process measures were needed, but the North Carolina witness requirement was in fact constitutional. (August Order (Doc. 124) at 102 ("Plaintiffs have not demonstrated a likelihood of success on the merits of their constitutional challenge to the One-Witness Requirement under the Anderson-Burdick balancing test.").) This court finds the SBE's representations to the North Carolina Superior Court explaining the contents and effect of the August Order, (id.), are at best inaccurate, and were used to support the SBE's argument to obtain approval of the Consent Judgment

-27-

and modify the witness requirement. This court's Due Process remedy was used to modify the witness requirement that this court upheld.

In addition to denying its representations about this court's August Order, the SBE also claims it did not frustrate the August Order because its revisions do not actually eliminate the witness requirement. Yet Revised Memo 2020-19 clearly subverts this court's findings in its August Order by effectively eliminating the contemporaneous witness requirement. (Revised Memo (Doc. 143-1) at 2.) According to Ms. Karen Brinson Bell, Executive Director of the SBE, the Revised Memo allowed "an envelope with a missing witness signature [to] be cured by the voter attesting that he or she voted their ballot and is the voter." (Declaration of Karen Brinson Bell ("Bell Decl.") (Doc. 151-3) ¶ 9.) Ms. Bell's declaration contradicts her testimony before this court, in which she stated unequivocally that a ballot with a missing witness signature could not be cured, but instead had to be spoiled:

> You can't have – there's certain things that cannot be cured. . . . If the board determines that there was no witness signature, then you can't say fix this envelope by bringing in a witness because that would not mean that the witness actually witnessed them voting. . . . We could contact them and spoil that particular ballot.

(Evidentiary Hr'g Tr. vol. 2 (Doc. 113) at 121-22.) This court's injunctive order, which specifically applied to a "material error subject to remediation," (August Order (Doc. 124) at 187), was never intended to allow a ballot without a witness to be cured. This court upheld the witness requirement – to claim a cure which eliminates that witness requirement is "consistent with" this court's order is a gross mischaracterization of the relief granted. Ms. Bell attests that the change in the Revised Memo was in line with "the <u>purpose</u> of the witness requirement." (Bell Decl. (Doc. 151-3) ¶ 9 (emphasis added).) However parallel with the requirement's purpose it may have been, this change <u>explicitly eliminated</u> the contemporaneous witness requirement duly enacted by the legislature and found constitutional by this court's order. (<u>Id.</u>)

Legislative Defendants attempt to characterize this change as a mere modification of the witness requirement, claiming the "county board official [who contacted the voter after discovering the deficiency] would act as the voter's witness." (Exec. Defs.' Resp. (Doc. 151) at 6.) However, even Executive Defendants acknowledge this so-called "witnessing" is not contemporaneous with the marking of the ballot. (<u>Id.</u>) Under the 2020 N.C. Sess. Laws 2020-17 (H.B. 1169) § 1.(a), a witness absentee ballot must be "marked in the presence of one qualified

-29-

witness." This clear language dictates that the witness must be

(1) physically present with the voter, and (2) present at the

time the ballot is marked by the voter. The Revised Memo's run-

around of the witness requirement clearly falls short of the

valid statutory requirement previously upheld by this court. As

described supra in Part II.B.2, the SBE advanced different

arguments before this court and the North Carolina Superior

Court for the witness requirement.

Regardless of its purpose, the cure affidavit proposed by

the Revised Memo and the Consent Judgment contains a nearly

meaningless certification by the voter that completely

eliminates the witness requirement. The certification requires

the voter to certify that "I voted and returned my absentee

ballot . . . ." (Revised Memo Doc. 143-1 at 6.) In addition to

falling short of the statutory witness requirement, this process

eliminates the witness and assistance certifications required by

North Carolina Session Law 2020-17. 2020 N.C. Sess. Laws 2020-17

(H.B. 1169). This certification does not verify that the ballot

presented to a board of elections is the ballot executed by the

voter. Nor does the cure certification explain what "voted"

means, thereby allowing each individual voter to determine that

meaning and the circumstances under which a ballot may be

executed. Under the vague "I voted" language used in the

-30-

affidavit, a voter who completed his or her ballot with assistance from an unauthorized individual; a voter who does not qualify for voting assistance; or a voter who simply delegated the responsibility for completing their ballot to another person could truthfully sign this affidavit, although all three acts are prohibited under state law. <u>See</u> N.C. Gen. Stat. § 163-226.3(a)(1).

A state must ensure that there is "no preferred class of voters but equality among those who meet the basic qualifications." <u>Gray v. Sanders</u>, 372 U.S. 368, 380 (1963). Because the affidavit does not serve as an adequate means to ensure that voters did not engage in unauthorized ballot casting procedures, inevitably, not all voters will be held to the same standards for casting their ballot. This court, for the reasons more fully explained in its orders in <u>Wise v. N. Carolina Bd. of Elections</u>, No. 1:20CV912, and <u>Moore v. Circosta</u>, No. 1:20CV911, issued contemporaneously, points out that the current 'cure' process allows certain voters to certify a ballot according to their own individual definitions of 'to vote.' This court's concerns notwithstanding, however, this court will decline to enjoin the use of a cure affidavit beyond its application as an alternative for compliance with the witness and assistance requirements.

Case 1:20-cv-00457-WO-JLW   Document 169   Filed 10/14/20   Page 31 of 41

Neither the Revised Memo nor the cure affidavit may be justified by pointing to this court's order <u>expressly upholding</u> the witness requirement. All Writs Act relief is designed for scenarios in which a court's order is directly frustrated – here, the SBE has not only frustrated this court's order, but has also claimed in this court that it never misrepresented the August Order's requirements.

The SBE's Revised Memo is not only misleading to this court; it also creates different classes of voters based upon the voting requirements – all under the guise of Due Process. The voting process began on September 4, 2020. Ballots for absentee mail voting were mailed on that date, along with instructions specifically explaining the witness requirement. As explained previously, more than 153,000 voters filled out ballots under those instructions. Absentee Data, N.C. State Bd. of Elections (Sept. 22, 2020).

Now, under the Revised Memo, voters will continue to receive those instructions and presumably comply. However, those voters who seek assistance from voting organizations or individuals familiar with the Revised Memo may be correctly advised that any ballot missing a witness signature, that is proper in all other respects, can be accepted by the SBE via a cure affidavit. Using a Due Process cure procedure to allow some

-32-

voters to ignore the witness requirement, or have their votes counted without witness signatures, all under a claim of complying with this court's order, is a flagrant misuse of this court's injunctive relief. All Writs Act relief is thereby justified in this instance to narrowly enjoin the witness requirement cure procedure implemented in the Revised Memo 2020-19.

### 3.    Application of *Purcell*

The Supreme Court has made clear that "lower federal courts should ordinarily not alter the election rules on the eve of an election." Republican Nat'l Comm. V. Democratic Nat'l Comm., 589 U.S. ____, ____, 140 S. Ct. 1205, 1207 (2020) (per curiam). Purcell states that a court order affecting election rules will progressively increase the risk of "voter confusion" as "an election draws closer." Purcell, 549 U.S. at 4-5; see also Texas All. for Retired Americans v. Hughs, ____ F.3d ____, 2020 WL 5816887, at *2 (5th Cir. Sept. 30, 2020) ("The principle . . . is clear: court changes of election laws close in time to the

election are strongly disfavored.")[7]. Due to Purcell, this court will deny Plaintiffs' motion for affirmative relief and will refrain from enjoining the entirety of the Revised Memo.

While the original Memo 2020-19 before the start of the election was necessary to comply with this court's order, further revision of that Memo _after_ ballots were already being distributed and executed is inconsistent with the principle set forth in Purcell. Though Purcell applies only to federal judicial intervention, it is worth highlighting here that the SBE claimed to be changing election rules after September 4th expressly because a federal court required it, thereby using this court's order to accomplish what Purcell might otherwise prohibit. Plaintiffs argue that Purcell requires courts to "weigh the risk of voter confusion" rather than per se rejecting any "late-breaking" changes in election rules. (Pls.' Mot. for Affirmative Relief (Doc. 156) at 25.) But as the Supreme Court's

_____

[7] As Executive Defendants point out, (Exec. Defs.' Resp. (Doc. 151) at 1-2), the Ninth Circuit has read Purcell less stringently, holding that "courts must assess the particular circumstances of each case in light of the concerns expressed by the Purcell court to determine whether an injunction is proper." Feldman v. Ariz. Sec'y of State's Office, 843 F.3d 366, 368 (9th Cir. 2016). Even under that test, however, this case runs parallel to Purcell. Most importantly, unlike in Feldman, this case does involve "chang[ing] the electoral process." Id. Furthermore, there was "delay in bringing [the] action," id. at 369, as no relief was sought until after the election began.

-34-

restoration of the South Carolina witness requirement last week illustrates, a heavy thumb on the scale weighs against this court changing voting regulations unless critically necessary. Andino v. Middleton, ____ S. Ct. ____, 2020 WL 5887393, at *1 (Oct. 5, 2020) (Kavanaugh, J., concurring).

Plaintiffs themselves note that "[t]he delay in revising Numbered Memo 2020-19 has caused confusion and delay by county boards of election in providing voters with due process regarding material errors subject to remediation with their ballots." (Pls.' Br. on Mot. to Enforce (Doc. 148) at 11.) Thousands of voters cast ballots with the understanding that the guidelines in the original Memo 2020-19 applied.[8] Those voters were required to submit a ballot and return envelope with a witness. 153,664 absentee ballots were received by the SBE prior to the implementation of the Revised Memo – not counting those that were filled out and mailed prior to the revision but had not yet been received by the SBE. Absentee Data, N.C. State Bd. of Elections (Sept. 22, 2020). To date, over 492,825 absentee ballots have been cast, while 1,321,515 absentee ballots have

_____

[8] This court recognizes that an unidentified number of voters also filled out and mailed ballots in the eight days between the release of the Revised Memo and the SBE's direction for all action on absentee ballots to cease. (Exec. Defs.' Resp. (Doc. 151) at 8.)

-35-

been requested. North Carolina State Board of Elections, <u>Voting Underway in North Carolina</u>, https://www.ncsbe.gov/ (last visited Oct. 13, 2020).

Plaintiffs argue that <u>Purcell</u> does not apply here because "there is no election law change implicated." (Pls.' Mot. for Affirmative Relief (Doc. 156) at 23.) This is a misunderstanding of <u>Purcell</u>. This year alone, the <u>Purcell</u> doctrine of noninterference has been invoked by federal courts in cases involving witness requirements and cure provisions during COVID-19, <u>Clark v. Edwards</u>, Civil Action No. 20-283-SDD-RLB, Civil Action No. 20-283-SDD-RLB, 2020 WL 3415376, at *1-2 (M.D. La. June 22, 2020); the implementation of an all-mail election plan developed by county election officials, <u>Paher v. Cegavske</u>, Case No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301, at *1, *6 (D. Nev. May 27, 2020); and the use of college IDs for voting, <u>Common Cause v. Thomsen</u>, No. 19-cv-323-JDP, 2020 WL 5665475, at *1 (W.D. Wis. Sept. 23, 2020) – just to name a few. Election rule changes which, by Plaintiffs' contention, (Pls.' Mot. for Affirmative Relief (Doc. 156) at 3), affect North Carolina voters' Due Process rights, certainly fall within the intended scope of <u>Purcell</u>. Thus, this court finds that the SBE was unjustified in relying upon this court's August Order as an authority for the Revised Memo. This court's order is an

-36-

inappropriate basis for last-minute election rule changes, particularly changes which contradict the order itself. Moreover, in the same vein, and as discussed <u>supra</u> at Part II.B.1, this court will reject Plaintiffs' motion urging the court to "order the State Board of Elections" to implement certain reforms. (Pls.' Mot. for Affirmative Relief (Doc. 156) at 34.)

Finally, even if this court were to find <u>Purcell</u> permits an award of additional relief to Plaintiffs, this court would decline to grant that relief at this time. First, this court specifically directed Plaintiffs to explain what they contend constitutes a "material error subject to remediation." (Doc. 152 at 7.) Instead of responding, they attempted to shift the burden elsewhere, (Pls.' Mot. for Affirmative Relief (Doc. 156) at 17-19), and offered a litany of their preferred processes, (<u>id.</u> at 10-13). This failure to explain why the requested relief is required by Due Process mandates denial of the motion.

Second, none of the Exhibits filed by Plaintiffs allege facts to explain harm caused to any Plaintiff by the original Memo 2020-19. (<u>See</u> Docs. 148-1 thru 148-15.) Plaintiffs submitted the declaration of Talia Ray, a paralegal for Plaintiffs' counsel, describing the confusion of various county boards of election. (Doc. 148-16 at 3-7.) However, their

-37-

confusion demonstrates the problems caused by Plaintiffs' delay in seeking further relief from this court in a timely fashion, as well as the SBE's late change to the original Memo 2020-19.

The Purcell principle applies to Legislative Defendants' request: federal courts are to avoid active interference in election rules too close to a state election. As Plaintiffs point out, Purcell suggests that this court ought not directly order the SBE to follow any particular set of election rules. (Pls.' Mot. for Affirmative Relief (Doc. 156) at 26-27.)[9] Enjoining only the SBE's removal of the witness requirement, rather than the entirety of the Revised Memo, allows the court to follow Purcell and refrain from unnecessary interference with election procedures, while still requiring compliance with its prior injunction. Therefore, this court will, without prejudice, deny Legislative Defendants' request that it "order the NCSBE to

---

[9] The injunction this court has chosen remains within the scope of this court's August Order, which specifically upheld the witness requirement while prescribing the need for further Due Process. This court finds an injunction pursuant to the AWA is necessary on these facts. Further injunctive relief would not be appropriate in this case under the AWA because the Revised Memo, other than the elimination of the witness requirement, does not implicate any of the affirmative relief ordered in the August Order. Those issues – including the ballot receipt deadline, drop-box cure procedure, and the postmark requirement changes – will be addressed directly in the Moore and Wise cases.

-38-

return to the guidance contained in its August Memo." (Leg. Defs.' Resp. (Doc. 150) at 10.)

III. **CONCLUSION**

For the foregoing reasons, this court finds Defendant-Intervenors' motion for All Writs Act relief should be granted in part and denied in part. This court will enjoin the SBE from implementing a Due Process or 'cure procedure' as described in Revised Memo 2020-19 which authorizes acceptance of an absentee ballot without a witness or assistant signature, (Doc. 143-1 at 2.) This injunction prohibits use or implementation of the process allowing "witness or assistant did not sign" to qualify under "Deficiencies Curable with a Certification," (id.), which would otherwise approve an absentee ballot which has not been executed in accordance with H.B. 1169. Plaintiffs' motion for Affirmative Relief should be denied.

In the absence of any binding precedent of the Supreme Court or the Fourth Circuit Court of Appeals, it remains possible that an appeal is ultimately taken from this court's finding that Due Process applies to the rejection of absentee ballots as explained in this court's August Order. (See Doc. 124 at 150-59.) Upon appeal, a higher court may disagree with this court's conclusions regarding Due Process in the form in which they are applied here. See, e.g., New Georgia Project v.

-39-

Raffensperger, ____ F.3d ____, 2020 WL 5877588, at *3 (11th Cir. Oct. 2, 2020) ("The generalized due process argument that the plaintiffs argued for and the district court applied would stretch concepts of due process to their breaking point."). Recognition of that possibility makes it even more disturbing that the SBE would put forth this court's August Order as legal authority upon which a North Carolina court should act to approve eliminating or modifying the state statutory witness requirement, as well as related requirements for execution of an absentee ballot. Even if the relief ordered by this court is found at some future time by a higher court to be inappropriate, this court would still issue the injunction chosen here. Under no circumstances was the Due Process remedy ordered by this court intended to eliminate the state's statutory requirements for marking a ballot when voting absentee, and the August Order should not have been used as authority for such action.

**IT IS THEREFORE ORDERED** that Defendant-Intervenors' Motion for All Writs Act Relief, (Doc. 154), is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to the witness requirement cure procedure implemented in Revised Memo 2020-19; the motion is **DENIED WITHOUT PREJUDICE** as to consideration of relief also requested in 1:20CV911 and 1:20CV912.

-40-

**IT IS FURTHER ORDERED** that the North Carolina State Board of Elections is hereby **ENJOINED** and **PROHIBITED** from implementing a Due Process or 'cure procedure' as described in Revised Memo 2020-19 which authorizes acceptance of an absentee ballot without a witness or assistant signature, (Doc. 143-1 at 6.) This injunction prohibits use or implementation of the process allowing "witness or assistant did not sign" to qualify under "Deficiencies Curable with a Certification," (Doc. 147 at 2-4), which would otherwise approve an absentee ballot which has not been executed in accordance with H.B. 1169. This injunction does not extend to other minor, curable errors subject to remediation such as a witness signature written on the wrong line or an incomplete address.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Affirmative Relief, (Doc. 156), is **DENIED**.

This the 14th day of October, 2020.

William L. Osteen, Jr.
United States District Judge

-41-

Case 1:20-cv-00457-WO-JLW   Document 169   Filed 10/14/20   Page 41 of 41