## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, *et. al.*,<br><br>*Plaintiffs*,<br>v.<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS, *et. al.*,<br><br>*Defendants*,<br><br>and<br><br>PHILLIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives,<br><br>*Defendant-Intervenors.* | Civil Action No. 20-cv-00457 |

## BRIEF IN SUPPORT OF DEFENDANT-INTERVENORS' MOTION FOR CLARIFICATION

### NATURE OF THE MATTER

On October 14, 2020, this Court issued a Memorandum Opinion and Order granting All Writs Act relief against the Defendants for the North Carolina State Board of Elections' ("the SBE") improper use of the Court's August injunction to frustrate and circumvent that ruling in an effort to eliminate

1

the previously approved witness requirement. Doc. 169 at 2-3.[1] The Court specifically enjoined and prohibited the SBE "from implementing a Due Process or 'cure procedure' as described in Revised Memo 2020-19 which authorizes acceptance of an absentee ballot without a witness or assistant signature." *Id.* at 41. The Court further made clear that "[t]his injunction does not extend to other minor, curable errors subject to remediation such as a witness signature written on the wrong line or an incomplete address." *Id.*

Defendant-Intervenors Philip E. Berger and Timothy K. Moore ("Legislative Defendants"), on behalf of the North Carolina General Assembly, seek clarification of this Court's order of October 14 based on recent information as to how the SBE is actually implementing the cure procedure. As reflected in the attached sworn declarations, ballots are being cured where there is no way to know the identity of the witness. The State Board of Elections is allowing a cure for ballots with multiple, material defects that raise serious questions about whether a witness in fact even witnessed the ballot and signed the ballot return envelope and that, at best, render

_____

[1] This citation and all later citations to this document refer to the page numbers of the Opinion itself.

the identity of any witness completely anonymous thereby subverting one of the primary purposes of the witness requirement.

In short, the SBE is directing County Boards of Election to accept absentee ballots submitted in the following circumstances: (1) where the name and address of the voter is printed in the witness section of the ballot return envelope along with an illegible "signature" suggesting it may have been the voter not the witness who signed the envelope and (2) where there is (a) a complete omission of a witness name, (b) a complete omission of the witness address, and (c) only a scratched mark, initials, or some other illegible witness signature that renders the witness completely unidentifiable, undermining one of the primary purposes of the witness requirement.

## STATEMENT OF FACTS

As the Court is well aware of the procedural history in this case and the facts leading up to its most recent Memorandum Opinion and Order, Doc. 169 ("October Order"), Legislative Defendants will not exhaustively repeat those facts and history here, but do wish to highlight several

salient points. On August 4, 2020, this Court issued a preliminary injunction order that "left the One-Witness Requirement in place, enjoined several rules related to nursing homes that would disenfranchise Plaintiff Hutchins, and enjoined the rejection of absentee ballots unless the voter is provided due process." Memorandum Opinion and Order, Doc. 124 ("August Order"), at 3. That order is "limited to requiring [Defendant State Board of Elections ('SBE')] to provide 'due process as to those ballots with a material error that is subject to remediation.'" October Order at 4 n.1 (quoting August Order at 187). It "did not require provision of a cure for every deficiency." *Id.*

On October 14, 2020, this Court issued a second Memorandum Opinion and Order, Doc. 169 ("October Order"), that "grant[ed] [Legislative Defendants'] motion in part to enjoin the [SBE's] elimination of the witness requirement." October Order at 3. Although the Court, citing the *Purcell* principle, declined to enjoin the entirety of the Revised Numbered Memo 2020-19 ("Revised Memo") that the SBE had put in place on September 22, 2020, to purportedly comply with the Court's August 4, 2020, injunction, the Court did conclude

4

it was authorized under the All Writs Act ("AWA") to enjoin the SBE's effective elimination of the witness requirement as a remedial action under the Court's prior preliminary injunction order. *Id.* at 21.

Elaborating on that central holding, the Court stated the Revised Memo "effectively eliminat[ed] the contemporaneous witness requirement," including by "allow[ing] 'an envelope with a missing witness signature [to] be cured by the voter attesting that he or she voted their ballot and is the voter.' " *Id.* at 28 (alteration in original) (quoting Declaration of Karen Brinson Bell, Doc. 151-3 ("Bell Decl."), at ¶ 9). The Court emphasized that its "injunctive order, which specifically applied to a 'material error subject to remediation,' (August Order (Doc. 124) at 187), was never intended to allow a ballot without a witness to be cured." *Id.* at 29. The court stressed that "[t]his injunction prohibits use or implementation of the process allowing 'witness or assistant did not sign' to qualify under 'Deficiencies Curable with a Certification,' which would otherwise approve an absentee ballot which has not been executed in accordance with H.B. 1169." *Id.* at 39 (citation

5

omitted). The Court further emphasized that its injunction "does not extend to other minor, curable errors subject to remediation such as a witness signature written on the wrong line or an incomplete address." *Id.* at 41.

Following the issuance of the Court's October 14 Order, the parties in this case and the *Wise* and *Alliance* cases discussed whether the SBE was free to implement the Revised Memo with the exception of the cure procedure for the absence of a witness or assistant signature (and a reference to a ballot receipt extension deadline). Legislative Defendants for their part made clear the SBE could implement the Revised Memo, of course assuming that would be done consistently with the Court's two injunctive orders. *See* E-mail from David Thompson to Alec Peters (Oct. 16, 2020) (attached hereto as Ex. A). The RNC Committees, Plaintiffs in the *Wise* case, expressed concern about simply editing the Revised Memo and asked to review a second revised version. *See* E-mail from Bobby Burchfield to Alec Peters (dated Oct. 16, 2020) (attached hereto as Ex. B). The SBE in response revised Numbered Memo 2020-19 again ("Second Revised Memo") and issued the Second Revised Memo on October 17, 2020 (attached

6

hereto as Ex. C). The RNC Committees then agreed not to oppose the Second Revised Memo but reserved "their rights to challenge this cure procedure as applied if it is being used to evade the witness requirement." *See* E-mail from Bobby Burchfield to Ryan Park (dated October 17, 2020) (attached hereto as Ex. D).

The Second Revised Memo, agreed to by Legislative Defendants and the RNC Committees, specifies that the following types of defects can be "cured" by sending the voter a certification:

- Voter did not sign the Voter Certification
- Voter signed in the wrong place
- Witness or assistant did not print name
- Witness or assistant did not print address
- Witness or assistant signed on the wrong line

The Second Revised Memo also specifies that if a printed name is readable, even if written in cursive, it does not invalidate the return envelope; likewise, minor errors such as failure to list a ZIP code, the state, a city name, etc., that still enable the County to determine an address do not

7

invalidate the return envelope. *See* Ex. C at 2. Other defects require the return of a cure certification. *Id.*

Notably, the Revised Memo is silent on what should occur should a return envelope lack both a printed witness name *and* a witness address *and* the witness signature is completely illegible.

The SBE, however, has issued instruction to the County Boards of Elections directing them to allow a witness to "cure" a return envelope that has all of these cumulative defects such that whether there actually was a witness, and the identity of that witness, are unknowable. *See* E-mail from Katelyn Love, General Counsel of the SBE, to County Board of Elections Directors (October 22, 2020) (attached as Exhibit B to the Declaration of Linda Devore ("Devore Decl.") (attached hereto as Ex. E)).

As Linda Devore explains in her Declaration, the Cumberland County Board of Elections alone has allowed to be cured and accepted 14 absentee ballots which had no printed witness name, a completely missing witness address, and an illegible witness "signature." *See* Devore Decl. at ¶5 & Ex. A at 1, 3, 7, 9, 15, 17, 19, 21. Mary Summa adds in her

8

Declaration (attached hereto as Ex. F) that, last week, the Mecklenburg County Board of Elections allowed to be cured and approved 30 ballots lacking the witness's name and address, and many of those signatures, too, were indecipherable. Summa Decl. at ¶5.

In addition, in compliance with the SBE's directive on how to interpret the Second Revised Memo, the Cumberland County Board of Elections approved absentee ballots that not only lacked any identifying witness information, but on which the voter's own information was filled out in the witness section along with an illegible signature strongly indicating it was likely the *voter himself or herself*, not the witness, who signed the envelope. At a minimum, any actual witness is again completely anonymous. *See* Devore Decl., Ex. A, at 5, 11, 13, 23, 25, 27 (examples of a voter's information in the witness section of the envelope). Conversely, Mecklenburg County rejected at least 3 such ballots because it seemed clear the witness signature belonged to the voter. Summa Decl. at ¶5.

With some dozens of ballots with cumulative defects that render the identity of the witness unknowable (or even

9

indicate that no actual witness exists) already "cured" and accepted by the Cumberland and Mecklenburg County Boards of Elections and with all County Boards of Elections meeting at the latest on Tuesday, October 27, 2020, *see* N.C. GEN. STAT. ANN. § 163-230.1 (West 2020), many more such questionable ballots will be accepted if the Court's prior injunctive orders are not clarified. If, implausibly, other counties were to receive only as many defective ballots with these specific defects as the Cumberland and Mecklenburg Boards have already received, there will still be thousands of ballots with defects in the witness requirement subject to a cure process that essentially nullifies that requirement.

**QUESTION PRESENTED**

Whether this Court's October Order enjoining and prohibiting the SBE "from implementing a Due Process or 'cure procedure' as described in Revised Memo 2020-19" enjoins and prohibits the SBE from implementing a Due Process or "cure procedure" (1) that allows ballots to be accepted where the voter's information is substituted for that of a witness, suggesting it was likely the voter, not the witness, who signed, and (2) that allows curing a ballot that includes the

10

omission of *all* of the following: a printed name, any part of an address to identify the witness, and a legible signature.

**ARGUMENT**

I. **The Court's October 14, 2020 Order Fairly Read Prohibits Accepting Absentee Ballots Where the Required Witness Is Completely Anonymous**

This Court's October Order, read fairly, prohibits use of a cure procedure for material errors in meeting North Carolina law's witness requirement that render that requirement a nullity and make a witness completely anonymous, thereby frustrating one of the primary purposes of the witness requirement. That is clear from numerous passages throughout the Order. To read the Order as the SBE appears to read it—prohibiting implementation of a cure process *only* if the failure to fulfill the witness requirement includes omission of any scratch or mark at all, however far from the signature line, that might be taken to represent a signature—is not only inferior as a reading of the October Order; it is also unfaithful to the August Order's clear vindication of the constitutionality of North Carolina's witness requirement for absentee ballots. That requirement is completely defeated by allowing the cure of any material deficiency in its

11

fulfillment, including where the voter replaces the witness's information with his or her own information, raising significant questions about who in fact signed the envelope. It is equally defeated in instances where only an illegible "signature" or mark, with *neither* the witness's printed name *nor* any part of the witness's address, is included.

To be clear, if a ballot return envelope failed to list a witness's printed name and address, but contained a legible signature such that the identity of the witness could be ascertained that would be consistent with the Legislative Defendants' agreement on the implementation of the Second Revised Memo and consistent with the Court's injunctions.[2] Likewise, if the return envelope failed to include an address, but had a printed witness name, even if accompanied by an illegible signature,[3] there would be information upon which to identify the witness and investigate the ballot if necessary, making that scenario consistent with the

---

[2] The Cumberland County Board of Elections, for example, has unanimously approved about two dozen such ballots that were cured. *See* Devore Decl. at ¶6.
[3] Again, the Cumberland County Board of Elections has unanimously approved 60 or so ballots with a signature and some printed witness information that were cured. *See id.*

12

Legislative Defendants' agreement and this Court's Orders. But when all of those material defects are present, the cumulative nature of those defects serves to completely undermine and evade the witness requirement. That is not consistent with what the Legislative Defendants agreed to or with this Court's Orders.

From the start of the Court's October Order, the Court's focus is on preventing "effective elimination of the witness requirement." October Order at 21; *see also id.* at 28. The Order rejects the SBE's attempt to suggest that the witness requirement was not effectively eliminated by its institution of a cure procedure that allowed for the absence of a witness altogether. *Id.* at 28. It notes explicitly that the August Order was "specifically applied to a 'material error subject to remediation.' " *Id.* at 29. According to the October Order, the August Order "never intended to allow a ballot without a witness to be cured." *Id.* That purpose is frustrated by the acceptance of ballots that bear no indication that the scratch or mark on them belongs to an *actual* witness. *See e.g.* Devore Decl., Ex. A, at 1, 3, 19. This is particularly true when there is specific evidence to the contrary such as when a

13

voter places *his* name and address in the witness section, accompanied by an illegible signature or a signature that appears to be that of the voter. *See, e.g.*, *id.* at 5. The logical assumption in these circumstances is that the voter, not a witness, signed the envelope. Indeed, as Mary Summa testified, it is for this reason that Mecklenburg County rejected at least 3 such ballots. Summa Decl. at ¶5. In order to give any meaning to the witness requirement, rejection of such ballots should be the uniform practice across the State. Yet, with the SBE's contradictory orders on how to interpret the Second Revised Memo and this Court's Orders, and the direction to County Boards of Election that these sorts of material defects can be cured, as the situation in Cumberland County makes clear, such defective ballots are being cured by a simple voter affidavit, not spoiled as they should be.

The fact that the Court's October Order highlights the most salient violation of the witness requirement effected by the Revised Memo—the complete elimination of witness or assistant signature altogether—does not establish that use of a cure procedure for all other material omissions relating to the witness requirement is permissible, even when the

14

cumulative nature of those material defects renders the witness completely anonymous and makes it impossible to actually know if a witness exists, thereby effectively eliminating the witness requirement. Certainly, if it is impossible to know who a witness is, the purpose of the witness requirement in helping to prevent, investigate, and prosecute schemes like McCrae Dowless's is vitiated.

This interpretation of what was intended by the Court's Order is reinforced further by the Court's explanation that "[t]his injunction does not extend to other minor, curable errors subject to remediation such as a witness signature written on the wrong line or an incomplete address." *Id.* at 41. It is not a minor error where there is no way to ascertain the identity of the witness or where the most natural inference is that the voter served as his or her own witness.

In light of the October Order's clear emphasis on vindicating North Carolina's witness requirement, which continues to be manifest in the Order's final statement of the injunction, the October Order is best read to prohibit use of a cure procedure for any material violation of the witness requirement that, either standing alone or

15

cumulatively, essentially eliminates the witness requirement. The SBE's interpretation of the Order and the Second Revised Memo have done that.

## II. The *Purcell* Principle Supports the Requested Clarification

Importantly, this motion vindicates, and in no way violates, *Purcell* concerns. As stated in the October Order, the *Purcell* principle is that "federal courts are to avoid active interference in election rules too close to a state election." October Order at 38. Applied to this case, that principle establishes that "this court ought not directly order the SBE to follow any particular set of election rules." *Id.* But, as this Court has determined, "[e]njoining only the SBE's removal of the witness requirement, rather than the entirety of the Revised Memo, allows the court to follow *Purcell* and refrain from unnecessary interference with election procedures, while still requiring compliance with its prior injunction." *Id.*; *see also id.* at 38 n.9 ("The injunction this court has chosen remains within the scope of this court's August Order, which specifically upheld the witness requirement while prescribing the need for further Due Process."). By this motion, Legislative Defendants simply

16

seek full compliance with this court's prior injunction, which need only be explicitly applied to a case it already reaches, namely where cumulative deficiencies make it impossible to confirm the existence and identity of a witness, including in instances in which the voter has inserted his or her own information into the witness section of the envelope suggesting the signature belongs to the voter, not a witness.

To be clear, Legislative Defendants do not request nullification of the Second Revised Memo. In Legislative Defendants' understanding, that Memo was never intended to extend the cure procedure beyond the "minor, curable errors subject to remediation" that this Court excluded from its injunction. *Id.* at 41. Isolated errors of any of the types listed in the Second Revised Memo may reasonably be considered minor and curable. In allowing cure of such an error, the Second Revised Memo accords with the October Order, and Legislative Defendants do not request any change to that reasonable and authorized practice.[4] Instead, we seek to

---

[4] Thus, Legislative Defendants do not object, for example, to the cure and approval by the Cumberland County Board of Elections of ballots including a legible signature. *See* Devore Decl. at ¶6.

17

eliminate a distortion of both the Second Revised Memo and the October Order, not to mention the August Order. To use the cure procedure for cumulative errors that preclude confirming the existence and identity of a witness is to use it, intentionally or not, "to evade the witness requirement," which was understood by all not to be allowed under the Second Revised Memo. *See* Letter from Ryan Y. Park to Daniel M. Horne, Jr. (Oct. 18, 2020) (attached hereto as Ex. G). Such use is both a change in election rules that should be avoided this close to Election Day and a new iteration of the same violation that the October Order rejected.

### CONCLUSION

Legislative Defendants respectfully request that this Court issue an order clarifying that its Memorandum Opinion and Order of October 14, 2020, enjoins and prohibits the SBE from implementing a Due Process or "cure procedure" that allows for the acceptance of absentee ballots where the voter's information is substituted for that of the witness on the return envelope or the envelope omits *any* identifying

18

information for the witness apart from an illegible "signature" or mark.

Dated: October 26, 2020

Respectfully submitted,

/s/ Nicole J. Moss
COOPER & KIRK, PLLC
Nicole J. Moss (State Bar
No. 31958)
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 220-9600
nmoss@cooperkirk.com
*Local Civil Rule 83.1*
*Counsel*
*for Defendant-Intervenors*

/s/ David H. Thompson
COOPER & KIRK, PLLC
David H. Thompson
Peter A. Patterson
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Defendant-*
*Intervenors*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Brief in Support of Defendant-Intervenors' Motion for Clarification, including body, headings, and footnotes, contains 3,413 words as measured by Microsoft Word.

/s/ Nicole J. Moss
Nicole J. Moss

Case 1:20-cv-00457-WO-JLW   Document 171   Filed 10/26/20   Page 21 of 22

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that, on October 26, 2020, I electronically filed the foregoing Brief with the Clerk of the Court using the CM/ECF system.

/s/ Nicole J. Moss
Nicole J. Moss
