IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEMOCRACY NORTH CAROLINA, THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, DONNA PERMAR, JOHN P. CLARK, MARGARET B. CATES, LELIA BENTLEY, REGINA WHITNEY EDWARDS, ROBERT K. PRIDDY II, SUSAN SCHAFFER, and WALTER HUTCHINS, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:20CV457 |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS, DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS, STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS, KEN RAYMOND, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS, JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS, DAVID C. BLACK, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS, THE NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, J. ERIC | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| | )
|---|---|
| BOYETTE, in his official | ) |
| capacity as TRANSPORTATION | ) |
| SECRETARY, THE NORTH | ) |
| CAROLINA DEPARTMENT OF | ) |
| HEALTH AND HUMAN SERVICES, | ) |
| and MANDY COHEN, in her | ) |
| official capacity as | ) |
| SECRETARY OF HEALTH AND | ) |
| HUMAN SERVICES, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| and | ) |
| | ) |
| PHILIP E. BERGER, in his | ) |
| official capacity as | ) |
| PRESIDENT PRO TEMPORE OF THE | ) |
| NORTH CAROLINA SENATE, and | ) |
| TIMOTHY K. MOORE, in his | ) |
| official capacity as SPEAKER | ) |
| OF THE NORTH CAROLINA HOUSE | ) |
| OF REPRESENTATIVES, | ) |
| | ) |
| Defendant-Intervenors. | ) |

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Defendant-Intervenors Phillip E. Berger and Timothy K. Moore ("Legislative Defendants") move this court, (Doc. 170), to clarify its October 14, 2020 order, (Doc. 169), which enjoined Defendant North Carolina State Board of Elections ("Executive Defendants" or "the SBE") from curing ballots that lack a witness signature. Legislative Defendants request that this court further enjoin the cure of any ballots which have "the

- 2 -

voter's information in the place of the witness" or else lack all of the following: (1) a printed witness name, (2) any part of a witness address, and (3) a legible witness signature. (Doc. 170 at 1-2.) Legislative Defendants argue these defects "mak[e] it impossible to identify the witness" and curing such ballots would therefore be in violation of the statutory witness requirement. (Id. at 2.)

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) compels this court to deny the relief requested by Legislative Defendants in their motion for clarification, (Doc. 170). However, the denial of relief should not be misconstrued as this court's approval of the actions of the North Carolina State Board of Elections. To the contrary, for the second time in this case, this court has serious concerns about the conduct of the North Carolina State Board of Elections. As will be explained, based on the evidence presented, this court finds that the State Board of Elections is permitting at least two county boards of elections to undermine and contravene the requirements of the law of the state of North Carolina, H.B. 1169, in accepting and processing absentee ballots without the minimal witness information required by that statute. Although Justice Gorsuch was commenting on a different case, his comments

- 3 -

are applicable here when considering the "cure" process currently in use for absentee ballots in this election:

> [E]fforts like these not only offend the Elections Clause's textual commitment of responsibility for election lawmaking to state and federal legislators, they do damage to faith in the written Constitution as law, to the power of the people to oversee their own government, and to the authority of legislatures. Such last-minute changes by largely unaccountable bodies, too, invite confusion, risk altering election outcomes, and in the process threaten voter confidence in the results. Wise v. Circosta, ____ F.3d ____, ____ (CA4 2020) (en banc) (Wilkinson and Agee, joined by Niemeyer, JJ., dissenting).

Moore v. Circosta, ____ S. Ct. ____, 2020 WL 6305036, at *2 (U.S. Oct. 28, 2020).

The North Carolina State Board of Elections is a state actor, and H.B. 1169 is the law of the state of North Carolina. The election is four days away. The limits placed on this court by the claims in this case and Pennhurst unfortunately require that this motion be denied.

I. **STATEMENT OF THE FACTS**

Under the United States Constitution, the North Carolina legislature is delegated the power to "prescribe[]" "[t]he Times, Places and Manner of holding Elections." U.S. Const. art. I, § 4, cl. 1. Accordingly, the Legislature passed, and the Governor signed, H.B. 1169, which provides that:

> For an election held in 2020, notwithstanding [N.C. Gen. Stat. §] 163-229(b) and [N.C. Gen. Stat. §] 163-231(a), and provided all other requirements for

- 4 -

> absentee ballots are met, a voter's returned absentee
> ballot shall be accepted and processed accordingly by
> the county board of elections if the voter marked the
> ballot in the presence of at least one person who is
> at least 18 years of age and is not disqualified by
> [N.C. Gen. Stat. §] 163-226.3(a)(4) or [N.C. Gen.
> Stat. §] 163-237(c), provided that the person signed
> the application and certificate as a witness and
> printed that person's name and address on the
> container-return envelope. For an election held in
> 2020, notwithstanding [N.C. Gen. Stat. §] 163-229(b),
> the State Board of Elections may prepare applications
> for each container-return envelope providing for a
> space for the identification of one person witnessing
> the casting of the absentee ballot in accordance with
> [N.C. Gen. Stat. §] 163-231, that person's signature,
> and that person's printed name and address.

N.C. Sess. Laws 2020-17 (H.B. 1169) § 1.(a).

Put simply, 2020 state law requires the following for a returned absentee ballot to be "accepted and processed": (1) marking of the ballot in the presence of a qualified witness; (2) the signature of the witness; (3) the printed name of the witness; and (4) the address of the witness. Id. According to the statute, all of this information must be included on the container-return envelope. Id. This court understands "accepted and processed" in its formal sense, to mean fully accepted for counting by the county boards.[1]

---

[1] This differs from the colloquial sense in which the parties use "accepted" in their briefs: the parties use the term to refer to ballots which have been approved for counting on the contingency that a cure certification is properly filled out and returned.

- 5 -

This court's original preliminary injunction, (Memorandum Opinion and Order ("August Order") (Doc. 124)), did not mandate that every ballot be cured.[2] Rather, it required the SBE to provide "due process as to those ballots with a material error that is subject to remediation." (Id. at 187.) At the time of the August Order, this court found "no procedures in place statewide that would either notify a voter that their absentee ballot has a material error nor allow such a voter to be heard in challenging such a rejection." (Id. at 157-58.) Nothing about this court's August Order could, or should, be construed to suggest that North Carolina law permits an absentee ballot to be formally accepted and processed without the statutorily required information.

Following the August Order, Legislative Defendants challenged Executive Defendants' implementation of Due Process fixes, prompting this court to issue its Memorandum Opinion and Order on October 14, 2020 ("October Order"). (Doc. 169.) This

---

[2] A Due Process right to notice and an opportunity to be heard is not synonymous with notice and a right to cure. A cure procedure is one way to ensure a voter has both notice and an opportunity to be heard but is not specifically required by Due Process or by this court's August Order. Moreover, it remains consistent with this court's August Order that some ballot errors may not be subject to remediation and cannot be fixed via a "cure" process.

court enjoined the SBE from attempting to "cure" those ballots that are missing a witness signature and therefore required spoliation. (Id. at 40-41.) Though this court made clear that other errors may be curable, "such as a witness signature on the wrong line or an incomplete address," (Id. at 41),[3] this court would not permit approval of an "absentee ballot which has not been executed in accordance with H.B. 1169." (Id. at 39.)

In response, the SBE issued new guidance, ("October Revised Memo") (Doc. 171-3), regarding Due Process and the cure of absentee ballot errors subject to remediation. The October Revised Memo adjusted the SBE's list of which errors were curable and which required spoliation:

> The following deficiencies can be cured by sending the voter a certification:
>
> - Voter did not sign the Voter Certification
> - Voter signed in the wrong place
> - Witness or assistant did not print name
> - Witness or assistant did not print address
> - Witness or assistant signed on the wrong line
>
> . . . .

---

[3] This court also referred to "incomplete witness information" as remediable in its August Order. (August Order (Doc. 124) at 156.) This language was broad, and to avoid any misunderstanding now or in the future, this court wishes to clarify that a missing witness signature does not fall within the intended scope of "incomplete witness information." This language was originally intended as shorthand for lesser issues such as incomplete address information or a missing printed witness name.

- 7 -

Case 1:20-cv-00457-WO-JLW   Document 188   Filed 10/30/20   Page 7 of 19

```
    The following deficiencies cannot be cured by
    certification:

        • Witness or assistant did not sign
        • Upon arrival at the county board office, the
          envelope is unsealed
        • The envelope indicates the voter is requesting
          a replacement ballot

    If a county board receives a container-return envelope
    with one of these deficiencies, county board staff
    shall spoil the ballot and reissue a ballot along with
    a notice explaining the county board office's action,
    in accordance with Section 3.
```

(Id. at 3-4.)[4]

Legislative Defendants agree with the October Revised Memo's changes as applied individually, and therefore "do not request nullification of the [October] Revised Memo." (Br. in Supp. of Defendant-Intervenors' Mot. for Clarification ("Leg. Defs.' Br.") (Doc. 171) at 17.)[5] Legislative Defendants do not

---

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[5] Executive Defendants argue that Legislative Defendants agreed to the changes to the guidance after this court's order. (Doc. 186 at 1.) Regardless of whether there was an agreement, this court is not bound by it, and instead, is required to follow the law. H.B. 1169 is the law and its requirements have not been met by Executive Defendants' guidance. Moreover, Executive Defendants do not argue that Legislative Defendants agreed to accept ballots completely lacking witness information as described by Linda Devore and Mary Potter Summa. (Devore Declaration (Doc. 171-5) at ¶¶ 5-7; Summa Declaration (Doc. 171-6) at ¶ 5.) This court does not construe the language "cured by sending the voter a certification", (October Revised Memo

contest that "[i]solated errors of any of the types listed in the Second Revised Memo may reasonably be considered minor and curable." (Id.) However, new information came to light as absentee ballots with illegible witness signatures were allegedly cured without any witness name or address. Legislative Defendants then moved this court for an order clarifying this court's injunction. Legislative Defendants now seek instruction and clarification from this court on how the witness requirement should be enforced where there are multiple errors, causing potentially unwitnessed ballots to be cured. (Id. at 2-3.)

In support of their motion, Legislative Defendants submitted the affidavit of Linda Devore, who states in relevant part:

> At our meeting, the County Board approved (over my objection) 14 ballots with witness cure affidavits despite the fact that the return envelope for those ballots had no witness address at all (as opposed to missing a zip code or other minor defect), no printed witness name at all, and only a scratched mark, initials, or some other illegible witness signature of some sort in the place of the required witness signature, making the witness anonymous.
>
> . . . .
>
> The 14 ballots contained in Ex. A. were accepted despite the fact that the existence of an actual witness (and thus compliance with the witness

---

(Doc. 171-3) at 3), to mean that none of the witness information would be collected, nor does that language necessarily suggest the certification would not require witness certification as well.

requirement) is unknown, and despite the fact that any
alleged witness is completely anonymous. Should any of
these ballots be challenged or if the need arises to
investigate any of these ballots, it would be
impossible to contact the witness. The cure affidavits
submitted to correct the defects on the ballot-return
envelopes did not provide any of the missing
information and in no way would enable someone to know
who the witness actually was or to be able to contact
that witness should the need arise.

(Declaration of Linda Devore ("Devore Declaration") (Doc. 171-5) ¶¶ 5, 7.) The affidavit of Mary Potter Summa, ("Summa Declaration") (Doc. 171-6)), contains similar allegations regarding the Mecklenburg County Board of Elections - that is, absentee ballots were approved and accepted despite missing witness information. (See id. ¶ 5.)

This court subsequently entered its order granting expedited consideration, (Doc. 175), and noted in that order the following:

> As this court made clear in its October order, the "cure certification" originally presented to this court, (Doc. 143-1 at 6), is entirely inappropriate to "cure" a missing witness signature on a ballot. (See Doc. 169 at 30-31.) While ballots with minor errors may be remediable, the cure certification originally presented to this court may have been inappropriate even for resolving those curable witness errors.

(Id. at 3-4.)

The Executive Defendants responded with the declaration of Katelyn Love, general counsel to the SBE. (Doc. 178.) Notably, Ms. Love did not describe the cure process. Nor did she deny or

- 10 -

contradict the allegations of Ms. Devore and Ms. Summa that ballots are being accepted and processed without the required name and address of the witness.

This court therefore finds as a fact that under the guidance and supervision of the SBE, county boards of elections are accepting and processing absentee ballots after providing notice and an opportunity to be heard, as well as a related cure procedure, for ballots that do not include the statutorily required name or address of the witness – and in some circumstances, for ballots containing no information which might enable direct identification of the witness. This court further finds the local boards of elections are not collecting missing witness information before accepting and processing these ballots.

**II. ANALYSIS**

    **A.   Due Process Protections**

While the SBE has "general supervision over the primaries and elections in the State, and it shall have authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable[,]" these rules may not "conflict with any provisions of [the elections statutes]." N.C. Gen. Stat. § 163-22. The witness requirement statute in H.B. 1169 very clearly details the

requirements for acceptance of an absentee ballot. To accept and count an absentee ballot in a manner contrary to those requirements violates state law. A "cure", even if part of Due Process, may not be used as a shield to avoid compliance with state law which requires the presence of a witness at the marking of a ballot.

This court has previously found that "the One-Witness Requirement plays a key role in preventing voter fraud and maintaining the integrity of elections." (August Order (Doc. 124) at 99.) The statutory requirement of a witness' name and address may contribute in part to the deterrent effect on fraud that the witness requirement creates. (See id. at 102 (noting the witness requirement has a "deterrent effect" on fraud).)

Although this court agrees in large part with Legislative Defendants' arguments, this court does not believe that Legislative Defendants' requested relief is fully justified: the fact that a signature is illegible does not necessarily mean the ballot was not witnessed properly, nor does it necessarily mean the ballot cannot be reviewed, investigated, and remediated following notice and an opportunity to be heard. It is up to the discretion of the county boards to determine in the first instance whether a witness was present when the ballot was

- 12 -

Case 1:20-cv-00457-WO-JLW   Document 188   Filed 10/30/20   Page 12 of 19

marked.[6] The proper avenue for challenging these determinations appears to be through the statutorily enacted challenge procedure in N.C. Gen. Stat. § 163-89. Based on the evidence presented to this court, the SBE guidance to county boards regarding which ballots must be spoiled for lack of a witness is in compliance with this court's finding of a Due Process right.

## B. Cure Procedure

Although this court finds that the SBE's guidance is in compliance with Due Process, the evidence before this court compels a finding that the cure procedure used does not comply with state law. Though it is possible for additional identifying information about the witness to be obtained via a "cure" process without undermining the statutory requirements,

---

[6] County boards are empowered to exercise discretion in administering the election and effectuating the SBE's guidance. Under N.C. Gen. Stat. § 163-33, county boards of elections have the power "[t]o make and issue such rules, regulations, and instructions, not inconsistent with law, with directives promulgated under the provisions of [N.C. Gen. Stat. §] 163-132.4, or with the rules, orders, and directives established by the State Board of Elections, as it may deem necessary for the guidance of election officers and voters." Moreover, county boards have their own procedures for the challenge and appeal of absentee ballots under N.C. Gen. Stat. § 163-89. Any voter may challenge an absentee ballot in his or her own precinct, and "[a]ll challenges . . . shall be heard by the county board of elections on the day set for the canvass of the returns." N.C. Gen. Stat. § 163-89(e).

following guidance from the SBE, the county boards do not appear to be using such a cure procedure.

Based on the evidence presented to this court, the county boards of elections are using a cure affidavit that does not seek any witness information, even though the affidavit is being used to cure missing witness information. (Devore Declaration (Doc. 171-5) at ¶¶ 5-7; Summa Declaration (Doc. 171-6) at ¶ 6.) Executive Defendants claim that "should further investigation be necessary, the State or county board may contact the voter and ask her to identify her witness[,]" yet apparently have not included this procedure as part of the cure process to date. (Doc. 177 at 10.) It is inconceivable to this court that, after months of litigation, the SBE has implemented a cure procedure that fails to comply with the express requirements of state law. State law clearly requires that the county boards receive the printed name, address, and signature of the witness. N.C. Sess. Laws 2020-17 (H.B. 1169) § 1.(a).

Unfortunately, despite this court's serious and substantial concerns that the cure procedure used by the SBE does not comply with the statutory requirements, Legislative Defendants' motion for clarification is an inappropriate vehicle to address such concerns. Based on Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984), this court is prevented from ordering the

SBE, a state actor, to conform with state law within the parameters of this case.

The Eleventh Amendment provides immunity to the states from suit subject to several exceptions. Among these is the well-recognized exception originally delineated in Ex parte Young, 209 U.S. 123 (1908), that "the Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." Bragg v. W. Va. Coal Ass'n, 248 F.3d 275, 292 (4th Cir. 2001).[7]

The Supreme Court has "strictly limited the application of the Ex parte Young doctrine to circumstances in which injunctive relief is necessary to 'give[] life to the Supremacy Clause.'" Id. (citing Green v. Mansour, 474 U.S. 64, 68 (1985)). Because a "federal court's grant of relief against state officials on the basis of state law . . . does not vindicate the supreme authority of federal law," Pennhurst, 465 U.S. at 106, the Supreme Court has said that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to

---

[7] Plaintiffs' argument that they have an "interest in ensuring that the federal courts do not exceed their proper . . . role in resolving disputes" is not compelling. (Doc. 187 at 8.)

state law." Id. Accordingly, courts "must evaluate the degree to which a State's sovereign interest would be adversely affected by a federal suit seeking injunctive relief against State officials, as well as the extent to which federal, rather than State, law must be enforced to vindicate the federal interest." Bragg, 248 F.3d at 293. Federal courts are prohibited from directing state actors to implement state law in a particular fashion under Pennhurst, absent a relevant federal claim to justify the federal court's involvement. Id. at 298.

Legislative Defendants argue that Pennhurst is inapplicable, as the federal Due Process claim at issue in this litigation is sufficient to justify the federal court's involvement. (Doc. 185.) They argue that Executive Defendants' conduct not only violates state law, but also the Elections Clause, and that this violation "cannot be bootstrapped into a sovereign immunity defense for ongoing violations of the United States Constitution." (Id. at 2.) This case is an appropriate vehicle to address Executive Defendants' violation of federal law, they argue, because "[n]o statewide cure process existed until this Court ordered Executive Defendants to adopt one in August." (Id. at 3.)

This court disagrees. Although other courts have recently rejected Pennhurst in other election litigation, see, e.g.,

Texas Democratic Party v. Abbott, 961 F.3d 389, 401 (5th Cir. 2020); Donald J. Trump for President, Inc. v. Bullock, No. CV 20-66-H-DLC, 2020 WL 5810556, at *5 (D. Mont. Sept. 30, 2020), those cases involved federal constitutional claims not present here. In Abbott, the complaint sought to "prevent the enforcement of provisions of the Texas Election Code that the plaintiffs believe[d] violate the Constitution." 961 F.3d at 401. In Bullock, the complaint alleged that the Governor altered the "time, place, and manner of Montana's federal elections in contravention of the United States Constitution." 2020 WL 5810556, at *5. The claims contained in the second Amended Complaint, (Doc. 30), do not relate to or address the "cure" process at issue in this motion.

Here, the core claim in the litigation and the previously entered injunctive relief centers around a finding of Due Process rights during absentee voting, (id.), and to this point, all relief provided has been focused on upholding the right to notice and an opportunity to be heard, (Doc. 124; Doc. 169). To the extent that this court has upheld the witness requirement and delineated which ballots must be spoiled, as compared to those that may be cured, this court has done so only to uphold the core constitutional right at issue. Based on the evidence before this court today, this court finds that the SBE's

- 17 -

guidance regarding the eligibility of ballots to be cured, (Doc. 171-3), is in compliance with its prior orders in August, (Doc. 124), and October, (Doc. 169), because the witness requirement is in place and notice and an opportunity to be heard is provided to all voters.

The evidence presented regarding current SBE guidance is sufficient for this court to find that the SBE is providing adequate Due Process as required under federal law; having determined that Due Process is satisfied, this court's authority to address the type and manner of a "cure" under state law, by state actors, is limited by the absence of any federal claim related to that issue in this case.

In the absence of a continuing federal violation, any order by this court that the SBE conform their conduct with state laws is precisely the conduct the Supreme Court forbids in Pennhurst. See Bragg, 248 F.3d at 296-98. A state's dignity interest in protecting its sovereign immunity "does not fade into oblivion merely because a State's law is enacted to comport with a federal invitation to regulate within certain parameters." Id. at 297. Though it frustrates this court, for the reasons stated earlier and those also cited by Justice Gorsuch and Judges Wilkinson and Agee, Moore v. Circosta, ____ S. Ct. ____, 2020 WL 6305036 (U.S. Oct. 28, 2020); Wise v. Circosta, No. 20-2104,

2020 WL 6156302, at *9 (4th Cir. Oct. 20, 2020) (en banc) (Wilkinson and Agee, joined by Niemeyer, JJ., dissenting), that the SBE seems to be permitting county boards to accept and process ballots for counting without ever obtaining the information required by statute, the basis of any injunction this court might issue here would not be grounded in a federal Due Process violation.

On the facts and claims before this court at this time, Pennhurst appears to counsel that these issues are matters for the state and state courts to address. For these reasons, this court will decline to order any additional relief or to provide any additional clarification in this case.

### III. CONCLUSION

For the aforementioned reasons,

**IT IS THEREFORE ORDERED** that Legislative Defendants' Motion for Clarification, (Doc. 170), is **DENIED**.

This the 30th day of October, 2020.

/s/ William L. Osteen, Jr.
United States District Judge