**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, JOHN P. CLARK, LELIA BENTLEY, REGINA WHITNEY EDWARDS, ROBERT K. PRIDDY II, WALTER HUTCHINS, AND SUSAN SCHAFFER, | |
| *Plaintiffs,* | |
| *vs.* | *Civil Action No. 20-cv-457* |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; STACY EGGERS IV, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; TOMMY TUCKER, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS, | |
| *Defendants,* | |
| PHILIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; TIMOTHY K. MOORE, in his official capacity as SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES, | |
| *Defendant-Intervenors.* | |

1

# FOURTH AMENDED COMPLAINT

Plaintiffs Democracy North Carolina, the League of Women Voters of North Carolina (together with Democracy North Carolina, the "Organizational Plaintiffs"), and John P. Clark, Lelia Bentley, Regina Whitney Edwards, Robert K. Priddy II, Walter Hutchins, and Susan Schaffer, individuals ("Individual Plaintiffs," together with the Organizational Plaintiffs, the "Plaintiffs"), bring this civil rights action under 42 U.S.C. § 1983, the First and Fourteenth Amendments and Section 208 of the Voting Rights Act, for preliminary and permanent declaratory and injunctive relief against the Defendants the North Carolina State Board of Elections; Damon Circosta, in his official capacity as Chair of the State Board of Elections; Stella Anderson, in her official capacity as Secretary of the State Board of Elections; Stacy Eggers IV, Jeff Carmon III, and Tommy Tucker, all in their official capacities as Members of the State Board of Elections; and Karen Brinson Bell, in her official capacity as Executive Director of the State Board of Elections (together the "SBE Defendants"). Plaintiffs allege as follows:

## NATURE OF ACTION

1.      In the 2020 general election, North Carolina experienced an unprecedented increase in voters attempting to vote by mail-in absentee ballot. However, as it stands, North Carolina's election law and procedures for mail-in absentee voting present unnecessary and unjustified restrictions on voters and the organizations that assist them that violate the U.S. Constitution and federal law. North Carolina law restricts who may assist voters with requesting an absentee ballot, as well as who may assist voters with marking and returning that absentee ballot even where those voters require assistance due to blindness, disability, or inability to read or write. Furthermore, North Carolina law does not require a uniform, state-wide permanent process by which voters applying to cast a mail-in absentee ballot receive notice and an opportunity to be heard regarding any perceived material errors on their absentee ballot

2

application envelopes. These restrictions are not justified, much less narrowly tailored to serve any legitimate state interests in preventing fraud or related to election administration. The relief requested by Plaintiffs to lift these restrictions is crucial to safeguarding the rights of all voters in North Carolina's elections and ensuring a functioning democracy.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this case arises under the U.S. Constitution and the laws of the United States and seeks equitable and other relief for the deprivation of constitutional and federal statutory rights under color of state law.

3.      This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

4.      This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      Venue is appropriate in the Middle District of North Carolina, under 28 U.S.C. § 1391(b)(1).

## PARTIES

*Plaintiffs*

6.      Plaintiff Democracy North Carolina ("Democracy NC") is a nonpartisan, nonprofit organization dedicated to increasing voter access and participation and reducing the corrupting role of money in politics through research, organizing, and advocacy. Democracy NC's volunteers, who are registered North Carolina voters across every region of the state, form grassroots coalitions and are advocates in communities throughout the state, including Wake County, Edgecombe and Nash Counties (the "Twin Counties"), Alamance County, Mecklenburg County, Fayetteville, Wilmington, Winston-Salem, Asheville, New Bern, Salisbury and

3

Greenville. Democracy NC works for pro-democracy reforms that strengthen the enforcement of election laws, protect voting rights, and improve government accountability and ethics. Democracy NC engages in substantial election protection efforts to ensure that voters are able to access the ballot, and spends substantial time and effort producing voter guides to educate voters about the candidates that will be on their ballots. Democracy NC advocates spend thousands of hours fighting for more early voting sites and times to ensure that all voters have easy access to the franchise. In previous elections, Democracy NC has also run rides-to-the-polls programs to ensure that voters who lacked transportation and could not or did not want to use mail-in absentee voting could nonetheless cast a ballot. Through original research, policy advocacy, grassroots organizing, civic engagement, and leadership training, Democracy NC seeks to achieve a fair and representative political system and advance a just and equitable North Carolina. In keeping with its mission, Democracy NC focuses substantial time and resources toward bringing new voters into political participation, including from historically excluded communities.

       7.     Plaintiff the League of Women Voters of North Carolina ("LWVNC") is a nonpartisan community-based organization, formed in 1920, around the time of the passage of the Nineteenth Amendment to the U.S. Constitution granting women's suffrage. The LWVNC is dedicated to encouraging its members and the people of North Carolina to exercise their right to vote as protected by the U.S. Constitution and the Voting Rights Act of 1965. The LWVNC's mission is to promote political responsibility through informed and active participation in government and the electoral process and to act on selected governmental issues, and to remove barriers that voters in North Carolina face in registering to vote and casting a ballot. The LWVNC impacts public policies, promotes citizen education, and makes democracy work by,

Case 1:20-cv-00457-WO-JLW   Document 208   Filed 07/08/21   Page 4 of 25

among other things, removing unnecessary barriers to full participation in the electoral process. The LWVNC has 17 local leagues and over 1,912 members, each of whom, on information and belief, is a registered voter in North Carolina. The LWVNC is affiliated with the League of Women Voters of the United States, which was also founded in 1920. The LWVNC began as an organization focused on training women voters, and has evolved into an organization concerned with educating, advocating for, and empowering all North Carolinians. With members in almost every county in the state, the LWVNC's local leagues are engaged in numerous activities, including hosting public forums and open discussions on important issues to the community. Individual League members invest substantial time and effort in voter training and civic engagement activities, such as drafting voter education materials, hosting events furthering their core missions such as voter registration assistance and get-out-the-vote (GOTV) efforts leading up to elections, including during the early voting period, as well as poll worker recruitment and fielding questions about the voting process from voters and other members alike. The LWVNC has developed a First Time Voter Engagement Program, which partners with local election boards and schools to encourage young voters to register to vote. Individual members spend time educating and assisting voters in their respective communities and, in general, serve as resources for voters in their communities. The LWVNC also devotes substantial time and effort to ensuring that government at every level works as effectively and as fairly as possible in implementing voting regulations and procedures. To do so, the LWVNC advocates to make elections more transparent, to support a strong and diverse judiciary, and to urge for appropriate government oversight.

8.     Plaintiff John P. Clark is a U.S. citizen and a resident of the town of Cary in Wake County, North Carolina. He is 80 years old and a registered North Carolina voter who is eligible

to vote in North Carolina. He has multiple health issues that put him at high risk. Most importantly, he is especially at high risk when around other people who may have infectious diseases. He has suffered from severe chronic obstructive pulmonary disease ("COPD"), which severely limits his activities, for the last 14 years. He now must carry an oxygen tank with him whenever he is active, even when walking short distances. He has also become more susceptible to exacerbated bouts of pneumonia, having been hospitalized three times since December 2020. The most recent and damaging episode was in January 2021, which has caused a further deterioration of his respiratory condition. In addition, in 2020, he was diagnosed with lung cancer. Because the combination of COPD and lung cancer made him more vulnerable to severe complications or even death from COVID-19, he by necessity voted by absentee ballot in the November 2020 general election. He intends to vote again by mail-in absentee ballot in future elections, when his county board of elections offers mail-in absentee ballots. He has voted in every presidential, state and local election since 1968 (to the best of his recollection), and intends to continue to do so.

9. Lelia Bentley is a U.S. citizen and a 63-year-old registered voter in Wilkesboro. She has been diagnosed with hypertension, which she controls through diet, exercise, and meditation. About once a year, Ms. Bentley develops a cold, which often progresses to include symptoms like sinus and chest congestion, a hacking cough, and shortness of breath. In the 2020 general election, Ms. Bentley voted by mail-in absentee ballot out of necessity due to her health. She intends to continue voting in North Carolina's elections by mail.

10. Regina Whitney Edwards is a U.S. citizen and resident of Durham County, and expects to reside in Alamance County beginning in July 2021. She is 31 years old and a registered North Carolina voter and has voted in multiple elections in North Carolina. In the

2020 general election, she voted by mail-in absentee ballot by necessity because of her pre-existing medical condition, type 1 diabetes, in order to protect her health. She intends to continue voting in North Carolina's elections, and to do so by mail to continue protecting her health.

11.     Robert K. Priddy II is a U.S. citizen and a resident of Brunswick County. He is a 71-year-old registered voter in North Carolina and has several serious health conditions. In 2011, he received a kidney transplant. To ensure that his body does not reject the transplant, he takes medication that suppresses his immune system. The medication also causes borderline diabetic issues, so he receives treatment for diabetes. He has voted in numerous elections in North Carolina. In the 2020 general election, he voted by mail-in absentee ballot because of the pandemic and the health risks posed by in-person voting. He intends to continue voting in North Carolina's elections, either in person or by mail.

12.     Walter Hutchins is a U.S. citizen and a resident of Wilmington. He is a 92-year-old registered North Carolina voter who is eligible to vote. He is legally blind and lives in a nursing home. Mr. Hutchins has voted in numerous elections in North Carolina. His wife, who does not live at the nursing home, has helped him fill out his ballot in previous elections. The nursing home does not have procedures set up to assist voters who are blind. In the 2020 general election, he was able to request and cast a mail-in absentee ballot with the assistance of his wife and his nursing home staff, as permitted by the relief granted by this Court in its August 4, 2020 order granting in part Plaintiffs Amended Motion for a Preliminary Injunction. He intends to continue voting in North Carolina's elections, and wants his nursing home staff to continue to help him to vote even if his wife is able to also help him.

13.     Susan Schaffer is a U.S. citizen and a Durham County resident who volunteers in her community, and has assisted eligible people with registering to vote, requesting absentee

mail-in ballots, as well as completing their absentee ballots. In the past, Mrs. Schaffer has also assisted voters at assisted living facilities and other locations that are now prohibited spaces for people seeking to assist voters with their absentee ballot request forms if they are not a near relative or a member of a multi-partisan assistance team ("MAT"). Mrs. Schaffer serves as an intermediary for many voters who are not familiar with the absentee ballot process or who otherwise are not eligible for assistance under the current state of the law as created by Senate Bill 683. Thus, these prohibitions severely burden the right to vote of all of the voters that Mrs. Schaffer would otherwise be able to assist and prevent her from providing that assistance as a volunteer for an organization that has among its core missions helping voters gain access to the ballot box, thereby impairing her fundamental First Amendment right of association and right to free speech.

*Defendants*

14. Defendant North Carolina State Board of Elections is the agency responsible for the administration of the election laws of the State of North Carolina.

15. Defendant Damon Circosta is the Chair of the North Carolina State Board of Elections. Mr. Circosta is sued in his official capacity.

16. Stella Anderson is the Secretary of the North Carolina State Board of Elections. Ms. Anderson is sued in her official capacity.

17. Stacy Eggers IV is a Member of the North Carolina State Board of Elections. Mr. Eggers is sued in his official capacity.

18. Jeff Carmon III is a Member of the North Carolina State Board of Elections. Mr. Carmon is sued in his official capacity.

19. Tommy Tucker is a Member of the North Carolina State Board of Elections. Mr. Tucker is sued in his official capacity.

20.     Defendant Karen Brinson Bell is the Executive Director of the North Carolina State Board of Elections. Ms. Brinson is sued in her official capacity.

*Defendant-Intervenors*

21.     Philip E. Berger is the President Pro Tempore of the North Carolina Senate. Mr. Berger was joined as a defendant-intervenor in his official capacity by order of the Court. Order, ECF No. 26.

22.     Timothy K. Moore is the Speaker of the North Carolina House of Representatives. Mr. Moore was joined as a defendant-intervenor in his official capacity by order of the Court. Order, ECF No. 26.

## STATEMENT OF FACTS

### 1.     Restrictions on Assistance to Voters in Requesting an Absentee Mail-in Ballot

23.     North Carolina law has permitted all eligible citizens to vote by mail in all federal and state elections since 2001. *See* N.C. Gen. Stat. § 163-226(a). Voters must submit a completed State Absentee Ballot Request Form to their county board of elections in order to receive an absentee ballot. N.C. Gen. Stat. § 163-230.2(a). This request must be signed by the voter requesting the absentee ballot or that voter's near relative or verifiable legal guardian. *Id.* It also must include: (1) the name and address of the voter or the other individual making the request on behalf of the voter; (2) the address to which the application and absentee ballot are to be mailed if different from the voter's residence; (3) either the voter's North Carolina drivers license number, special identification card number, or last four digits of the voter's social security number; and (4) the voter's date of birth. *Id.* An absentee ballot request is deemed invalid if it is not on the form created by the State Board or it does not contain all of the information required. N.C. Gen. Stat. § 163-230.2(e)(3).

9

24.     In November 2019, North Carolina made it significantly more cumbersome for its voters to cast an absentee ballot by mail by enacting Senate Bill 683. *See* An Act to Amend the Laws Governing Mail-In Absentee Ballots ("SB 683"), S.L. 2019-239, § 1 (Nov. 6, 2019).[1] Among other provisions, SB 683 imposes restrictions on who can assist voters with completing mail-in absentee ballot request forms. *See* S.B. 683 § 1.3(a) (amending N.C. Gen. Stat. § 163-230.2(e), (e1)). Requests are invalid if "completed, partially or in whole, or signed by anyone other than the voter, or the voter's near relative or verifiable legal guardian." N.C. Gen. Stat. § 163-230.2(e)(2). Members of multi-partisan teams ("MATs") trained and authorized by county boards of elections may assist in completion of the request, *id.*, but in certain North Carolina counties, the availability of MATs has been inadequate. Additionally, voters requiring assistance to complete the written request form due to blindness, disability, or inability to read or write may request another person if "there is not a near relative or legal guardian available to assist that voter." N.C. Gen. Stat. § 163-230.2(e1).

25.     There are also restrictions on who may help return a completed absentee ballot request. Under N.C. Gen. Stat. § 163-230.2(c), the completed request form may only be delivered to the county board of elections by the voter, the voter's near relative or verifiable legal guardian, or a MAT team member. Voters may also submit the completed absentee ballot request form via an online request portal established by the State Board of Elections. N.C. Gen. Stat. § 163-230.3.

26.     Unlike for *completing* an absentee ballot request form, there is no exception in the statute for a voter who needs assistance with *returning* the request form by reason of their blindness, disability, or inability to read or write. *See* N.C. Gen. Stat. § 163-230.2(e)(4). This

---

[1]     *See* https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2019-2020/SL2019-239.pdf.

restriction also applies to requests for an absentee ballot made through the State Board of Election's online request portal, for which information may only be provided by the voter, the voter's near relative or verifiable legal guardian. N.C. Gen. Stat. § 163-230.3. Absentee ballots must be requested in compliance with these requirements, and it is a Class I felony for any State Board or county board of elections member or employee to send an absentee ballot to a voter who has not requested it in compliance with these requirements. N.C. Gen. Stat. § 163-237(d7).

27. By imposing these restrictions, SB 683 has effectively banned organizations like the Organizational Plaintiffs and individuals like Plaintiff Schaffer from assisting voters with requesting absentee ballots. This is especially damaging following the dramatic increase in voting-by-mail that occurred in the 2020 general election, after which it is reasonable to expect voters will continue to choose to vote by mail in greater numbers. Without assistance by organizations like the Organizational Plaintiffs or individuals like Plaintiff Schaffer, which was available up until SB 683's passage in late 2019, many of these voters will lack needed assistance to navigating the ballot request process in future elections.

### 2. Restrictions on Assistance to Voters In Voting an Absentee Mail-in Ballot

28. Once voters receive their absentee mail-in ballot, North Carolina election law requires that they complete this ballot "[i]n the presence of two persons who are at least 18 years of age." N.C. Gen. Stat. § 163-231(a).[2] To complete an absentee by-mail ballot, voters must mark, fold, and place folded ballots in the container return envelope and securely seal it, or cause the ballot to be marked at the voter's discretion and folded and placed in the container return

---

[2] There are restrictions on who may serve as a witness, including prohibitions on any candidate for nomination or election from serving as a witness unless the voter is the candidate's near relative, prohibitions on owners, managers, directors, employees of any hospital, clinic, nursing home, or rest home from witnessing for a voter who is a patient or resident, and certain office-holders. *See* N.C. Gen. Stat. §§ 163-226.3(a)(4) and 163-237(b)(1). The only alternative to obtaining two witnesses is to obtain the signature of a notary public. N.C. Gen. Stat. § 163-231(a).

envelope in the voter's presence. N.C. Gen. Stat. § 163-231(a)(1)-(3). The voter must then complete the voter certification of eligibility to vote on the container envelope and sign the container envelope. N.C. Gen. Stat. §§ 163-231(a)(4), 163-229(b)(1)-(2). The envelope must also include the name and address of any person who assisted the voter if the voter is unable to complete and sign the certification, and those assistants must sign the container envelope as well. N.C. Gen. Stat. § 163-229(b)(4). The voter must also require the two witnesses to sign the absentee ballot application and provide their addresses or, in the alternative, have the application notarized. N.C. Gen. Sta. § 163-231(a)(5)-(6).

29.     To successfully transmit an executed absentee ballot to a voter's county board of elections, the sealed container-return envelope with enclosed absentee ballots must be transmitted by mail or commercial courier service, at the voter's expense, or delivered in person by the voter's near relative or verifiable legal guardian and received by the county board by the statutory deadline. N.C. Gen. Stat. § 163-231(b)(1).

30.     People who require assistance with completing an absentee ballot by reason of their blindness, disability, or inability to read or write are still restricted to the voter's near relative or verifiable legal guardian, or a MAT team member. *See* N.C. Gen. Stat. §§ 163-226.3(a)(1), 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-231(b)(1). Under North Carolina law, it is a Class I felony for any person except a voter's near relative or the voter's verifiable legal guardian to assist the voter to vote an absentee mail-in ballot, unless a near relative or verifiable legal guardian is unavailable. N.C. Gen. Stat. § 163-226.3(a)(1). In all instances, it is a Class I felony for any owner, manager, director, employee, or other person, other than the voter's near relative or verifiable legal guardian, to "sign an application or certificate as a witness, on behalf of a registered voter, who is a patient in any hospital, clinic,

12

nursing home or rest home in this State or for any owner, manager, director, employee, or other person other than the voter's near relative or verifiable legal guardian, to mark the voter's absentee ballot or assist such a voter in marking an absentee ballot." N.C. Gen. Stat. § 163-226.3(a)(4).[3] Even if the voter's near relative or verifiable legal guardian is unavailable, and a MAT is not available within seven calendar days of a telephonic request to the county board of elections, the voter may still not have the assistance of an owner, manager, director, employee of the hospital, clinic, nursing home, or rest home in which the voter is a patient or resident. *Id.*

31.     Under North Carolina law, it is also a Class I felony for any person to take into their possession for delivery to a voter or for return to a county board of elections the absentee ballot of any voter, with the exception of a voter's near relative or the voter's verifiable legal guardian. N.C. Gen. Stat. § 163-226.3(a)(5). It is also a Class I felony for a voter to permit another person, including any owner, manager, director, employee of the hospital, clinic, nursing home, or rest home in which the voter is a patient or resident, to assist the voter in marking their absentee ballot, to be in the voter's presence when a voter votes an absentee ballot, or to observe the voter mark that voter's absentee ballot. N.C. Gen. Stat. § 163-226.3(a)(6).

### 3.     Lack of Uniform Cure Process

32.     Before the 2020 general election, there was no adequate statewide-mandated procedure in North Carolina for voters to cure deficient absentee ballot requests or the ballots themselves. In the March 2020 North Carolina primary, almost 15 percent of submitted absentee

---

[3]     This subdivision does not apply to members, employees, or volunteers of the county board of elections, if those members, employees, or volunteers are working as part of a multipartisan team trained and authorized by the county board of elections to assist voters with absentee ballots. N.C. Gen. Stat. § 163-226.3(a)(4).

13

mail-in ballots were rejected.[4] This number was even higher for voters of color, with 19 percent of mail-in ballots submitted by black voters rejected and almost 16 percent of mail-in ballots submitted by Latinx voters rejected.[5] Upon information and belief, a significant number of absentee ballot request forms submitted by voters in past elections have been rejected for material errors without notice or an opportunity to cure afforded to those voters.

33.    Pursuant to an August 4, 2020 Preliminary Injunction granted in this matter, the State Board issued several numbered memos that provided voters who had submitted mail-in absentee ballots notice of certain defects and, in some instances, the opportunity to cure these defects with an affidavit for the 2020 general election.[6]

34.    On June 11, 2021, and also pursuant to the Preliminary Injunction issued in this matter, the State Board issued Numbered Memo 2021-03 to provide a similar cure procedure in future elections.[7]

35.    The numbered memos providing the cure procedures for the November 2020 general election and for future elections were issued pursuant to the State Board's general supervisory authority over elections in N.C. Gen. Stat. § 163-22(a) and the authority of the Executive Director in N.C. Gen. Stat. § 163-26. Upon information and belief, other than the Preliminary Injunction currently in effect, there exists no other law, rule, or order in North

---

[4]    *See* N.C. State Bd. of Elections, *March 3, 2020 Absentee File*, https://s3.amazonaws.com/dl.ncsbe.gov/ENRS/2020_03_03/absentee_20200303.zip. This data file is accessible by going to https://dl.ncsbe.gov/ and navigating to "ENRS" → "2020_03_03" → "absentee_20200303.zip". The statistics generated from the absentee file do not include absentee by mail ballots that were either requested and not sent to the voter, or sent to the voter but not returned to the State Board of Elections.

[5]    *Id.*

[6] *See* N.C. State Bd. of Elections, *Numbered Memo 2020-19: Absentee Container-Return Envelope Deficiencies* (Aug. 21, 2020, revised Sept. 22, 2020), https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2020/Numbered%20Memo%202020-19_Absentee%20Deficiencies.pdf.

[7] N.C. State Bd. of Elections, *Numbered Memo 2021-03: Absentee Container-Return Envelope Deficiencies* (June 11, 2021), https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2021/Numbered%20Memo%202021-03_Absentee%20Deficiencies.pdf.

Carolina that would prevent the State Board from rescinding the cure process requirement going forward pursuant to its general supervisory authority over elections in N.C. Gen. Stat. § 163-22(a) and the authority of the Executive Director in N.C. Gen. Stat. § 163-26.

36. Following the dramatic increase in the use of absentee ballots in the 2020 general election, and the new restrictions under SB 683 on who may assist a voter to request an absentee ballot, there is a heightened risk that voters will fail to follow the proper procedures without being afforded any opportunity to cure any deficiencies. As it stands, North Carolina's election code risks disenfranchising vast numbers of voters attempting to submit mail-in absentee ballots.

## CLAIMS

## COUNT ONE

**(SBE Defendants)**
**(Violation of the Rights of Free Speech and Association in violation of the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983)**

37. Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

38. The First Amendment to the United States Constitution, as applied to the states through the Fourteen Amendment, prohibits an abridgment of the freedom of speech or associational rights. Any burden, regardless of how slight, must be justified by relevant and legitimate state interests "sufficiently weighty to justify the limitation*." Norman v. Reed*, 502 U.S. 279, 288-89 (1992).

39. The restrictions on who can assist voters with completing and returning mail-in absentee ballot request forms pursuant to N.C. Gen. Stat. § 163-230.2 effectively prohibit the Organizational Plaintiffs and their members from engaging in core political speech and expressive conduct in the form of assisting voters with requesting and submitting absentee ballot

15

request forms in an effort to engage potential voters and encourage them to vote. Developing the kind of relationship where voters trust LWVNC to turn in their forms is key to LWVNC's relationship and association with voters and the purpose of its members in their respective communities. It is less effective and creates less of a relationship with members and other voters to simply point to a blank form and no more. Similarly, Democracy NC is limited in its work to assist voters with their absentee ballot request forms where helping voters cast their ballots is central to its core mission and allows Democracy NC to communicate its core values of a participatory and inclusive democracy where hurdles do not impede political participation. Plaintiff Schaffer's individual speech and associational rights are also impaired by N.C. Gen. Stat. § 163-230.2, because she is no longer able to assist as she has in the past. These efforts are particularly important following the dramatic increase in voting-by-mail that occurred in the 2020 general election, after which it is reasonable to expect voters will continue to choose to vote by mail in greater numbers than prior elections. Because of this prohibition, the Organizational Plaintiffs and their members will not be able to effectively engage potentially eligible absentee voters, nor will they be able to effectively facilitate those eligible voters requesting absentee ballots.

40.     N.C. Gen. Stat. § 163-230.2 therefore chills the Organizational Plaintiffs' speech and associational rights, and Plaintiff Schaffer's individual speech and associational rights,[8] and does so without being narrowly-tailored to serve a compelling state interest. The restrictions on who can assist voters with completing and submitting absentee ballot requests are not justified by a state interest in preventing voter fraud, especially where other protections are in place in North

---

[8]     Plaintiffs contend that Schaffer's First Amendment right to free speech and association are restricted under the *Anderson/Burdick* test, or, alternatively, under exacting scrutiny similar to *Meyer v. Grant,* 486 U.S. 414, 422-23 (1988).

16

Carolina's administration of elections and processing of absentee ballots to prevent mail-in voter and election fraud.

## COUNT TWO

### (SBE Defendants)
### (Denial of Plaintiffs' Right to Procedural Due Process in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983)

41.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

42.     The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Where the government seeks to deprive someone of a liberty interest protected by due process, due process demands that certain procedural safeguards be provided." *United States v. Baker*, 45 F.3d 837, 843 (4th Cir. 1995). A liberty interest that is governed by due process can be created by the Constitution or "may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

43.     At a minimum, "procedural due process requires fair notice of impending state action and an opportunity to be heard." *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

44.     "Proper notice is 'an elementary and fundamental requirement of due process,' and must be reasonably calculated to convey information concerning a deprivation.'" *Snider Int'l*, 739 F.3d at 146 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 490 (4th Cir. 2006).

45.     As for the opportunity to be heard, "*Mathews* set forth the familiar three-step inquiry for determining the adequacy of the opportunity to be heard: a balancing of the private interest and the public interest, along with 'the risk of an erroneous deprivation of such interest

Case 1:20-cv-00457-WO-JLW   Document 208   Filed 07/08/21   Page 17 of 25

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" *Snider Int'l*, 739 F.3d at 146 (quoting *Mathews*, 424 U.S. at 335). "Fundamental to due process is an opportunity to be heard—'an opportunity which must be granted at a meaningful time.'" *Sciolino v. City of Newport News,* 480 F.3d 642, 653 (4th Cir. 2007) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

46.     Absent exigent circumstances, due process requires pre-deprivation procedures. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original)); *Sciolino*, 480 F.3d at 653 ("An opportunity to clear your name after it has been ruined by dissemination of false, stigmatizing charges is not 'meaningful.'").

47.     North Carolina law gives all registered North Carolina voters statutory rights to request and cast a mail-in absentee ballot that will be processed and counted, thereby vesting them with liberty interests. Eligible, registered voters enjoy an "individual and personal" right to vote under North Carolina law. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)).

48.     However, there is no requirement under North Carolina law for the SBE Defendants to afford mail-in absentee voters any notice of or opportunities to cure material defects in their absentee ballot request forms or absentee ballots including their certificate envelopes that will result in rejection. Before November 2020, there was no uniform process in North Carolina for voters to have notice and an opportunity to cure or be heard regarding material defects in their absentee ballot request forms or absentee ballot certificate envelopes.

18

The processes implemented in the November 2020 general election, and the process set forth in the numbered memo issued by Defendant Bell in June 2021, were issued pursuant to the preliminary injunction ordered in this matter and thus do not permanently remedy this violation and, at most, constitute a voluntary cessation of this violation that will reoccur absent permanent relief granted by this Court. The lack of any process, and the lack of any requirement under North Carolina law for the SBE Defendants to implement and enforce a process, to afford mail-in absentee voters any notice of or opportunities to cure material defects in their absentee ballot request forms or absentee ballots thereby deprives Plaintiffs and other registered North Carolina voters of their liberty interests in requesting and casting a mail-in absentee ballot and exercising their fundamental right to vote.

49.    The risk of erroneous deprivation is high, as these eligible, registered North Carolina voters are entitled by law to request an absentee ballot and to vote an absentee ballot and, therefore, must be provided with an additional procedural safeguard: the opportunity to timely cure any defect that would cause the absentee ballot request form's rejection or the absentee ballot's rejection.

50.    Plaintiffs Clark, Edwards, Priddy, Hutchins, and Bentley all intend to vote by mail-in absentee ballot in future elections and may well make errors on their absentee ballot request forms or absentee ballots and/or their certificate envelopes. Procedural due process requires a cure procedure for these defects. The lack of a cure procedure also frustrates the core mission of Plaintiffs LWVNC and Democracy NC to encourage voter participation because, without this safety net in place, any efforts spent encouraging voters to use absentee-by-mail voting could result in voters being inadvertently disenfranchised if they make a mistake. Furthermore, without being able to assure voters they will have notice of material defects and an

19

opportunity to fix absentee ballots, these Plaintiffs will have to dedicate significantly more resources and time toward explaining in greater detail the mail-in voting process so that they are more likely to submit it correctly, instead of the more general instructions typically provided.

51.     Defendants cannot advance any interests that outweigh the risk of erroneous deprivation. The threat of disenfranchising Plaintiffs and their members far outweighs any increased administrative burden in affording voters an opportunity to cure their absentee ballot request form defects or their absentee ballot defects, including any defects on the certificate envelope. Defendants' interest in conducting fair election administration and preserving election integrity would not be compromised in the slightest, and they would satisfy their weighty interest in abiding by federal constitutional requirements.

52.     For the foregoing reasons, SBE Defendants have violated and will continue to violate Plaintiffs Clark, Edwards, Priddy, Hutchins, and Bentley's federal constitutional rights to procedural due process.

53.     At all relevant times, Defendants have acted under color of state law.

54.     Defendants have deprived and will continue to deprive Plaintiffs Clark, Edwards, Priddy, Hutchins, Bentley and all voters seeking to vote by mail of their right to adequate notice and a meaningful opportunity to be heard in order to cure deficiencies with their absentee ballot request forms and their absentee ballots. This wholly fails to meet these minimum requirements of procedural due process, as guaranteed to Plaintiffs by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

## COUNT THREE

### (SBE Defendants)
### (Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508)

55.     Plaintiffs reallege and reincorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

56.     Section 208 of the Voting Rights Act of 1965 (VRA), 52 U.S.C. § 10508, provides: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."

57.     The word "vote" is expressly defined in 52 U.S.C. § 10310(c)(1) as follows: The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election. *OCA-Greater Houston v. Texas,* 867 F.3d 604, 614-15 (5th Cir. 2017) (quoting 52 U.S.C. § 10310(c)(1)) ("'To vote,' therefore, plainly contemplates more than the mechanical act of filling out the ballot sheet.").

58.     Under Section 208, a voter who is blind, disabled, or unable to read or write ("208-covered voter") possesses the right to choose *any* person other than their employer/union representative—regardless of whether the person is a near relative or legal guardian—to assist them with the voting process, including the steps necessary to obtain, cast, and submit an absentee ballot. *See* 52 U.S.C. § 10508; *OCA-Greater Houston*, 867 F.3d at 614-15.

21

59. North Carolina restricts absentee voters to only assistance from their near relatives, verifiable legal guardians, or MAT team members, for absentee ballot request return, absentee ballot marking and completion, and absentee ballot return. Unlike for *completing* an absentee ballot request form, there is no similar exception for any of these steps for absentee voters who need assistance by reason of their blindness, disability, or inability to read or write. *See* N.C. Gen. Stat. §§ 163-226.3(a)(1), 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-230.2, 163-231(b)(1).

60. By imposing additional restrictions on who can assist a Section 208-covered voter who needs assistance with requesting, marking and completing their absentee ballots, and returning their absentee ballots, specifically, by limiting valid assistors to the voter's near relative, legal guardian, or MAT team members, N.C. Gen. Stat. §§ 163-226.3(a)(1), 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-230.2(e1), and 163-231(b)(1) violate Section 208 of the VRA by failing to allow these voters to choose any assistor who is not their employer or union representative.

61. Defendants' failure to allow eligible voters who need assistance by reason of their blindness, disability or ability to read or write in any part of the absentee voting process, from any person of their choice, other than their employers or union officials, as described herein, is a violation of Section 208. Plaintiff Walter Hutchins is harmed by these restrictions on assistance with absentee ballot request, marking and completion, and absentee ballot submission, and the corresponding lack of any disability-based exceptions. Plaintiff Hutchins is blind and requires assistance in requesting, reading, marking, and submitting his ballot according to his preferences.

22

62.     By depriving Plaintiff Hutchins of rights and privileges under Section 208 of the VRA under the color of state law, Defendants have violated and are liable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

(a)     Assume jurisdiction over this matter;

(b)     Declare that Plaintiffs' First Amendment associational rights are violated by N.C. Gen. Stat. §§ 163-230.2;

(c)     Declare that the lack of any requirement under North Carolina law for a uniform cure mechanism for Plaintiffs' mail-in absentee ballot request forms and mail-in absentee ballots violates their rights to procedural due process;

(d)     Declare that N.C. Gen. Stat. §§ 163-226.3(a)(1), 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-230.2(e1), and 163-231(b)(1) violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508;

(e)     Preliminarily and permanently enjoin Defendants from administering and enforcing:

      i.      N.C. Gen. Stat. §§ 163-226.3(a)(1), 163-226.3(a)(4), 163-226.3(a)(5), 163-226.3(a)(6), 163-230.2, and 163-231(b)(1), imposing restrictions on assistance for absentee ballot request return, absentee ballot marking and completion, and absentee ballot submission;

(f)     Preliminarily and permanently enjoin Defendants from violating Plaintiffs' constitutional and federal statutory rights with respect to any election in the state.

(g)     Order Defendants to implement measures to ensure eligible North Carolinians are able to vote absentee by mail, including:

   i.  Establishing mechanisms to cure deficient absentee ballot requests and absentee ballots;

   ii.  Permitting voters who for reason of blindness, disability, or an inability to read or write, require assistance to return an absentee ballot request form, mark and complete an absentee ballot, and/or submit an absentee ballot, to obtain assistance from anyone who is not their employer or union representative.

  (h)  Order Defendants to implement a remedial plan to educate voters regarding their options to vote and obtain and cast a ballot.

  (i)  Retain jurisdiction to monitor Defendants' compliance with this Court's judgment;

  (j)  Grant Plaintiffs their reasonable costs and attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law; and

  (k)  Grant such other relief as this Court deems just and proper.

Dated:  July 8, 2021

Respectfully submitted,

*/s/Allison Riggs*

/s/ *Jon Sherman*

Jon Sherman
D.C. Bar No. 998271
Michelle Kanter Cohen
D.C. Bar No. 989164
Cecilia Aguilera
D.C. Bar No. 1617884
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 450
Washington, D.C. 20006
Telephone: (202) 331-0114
Email: jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org

Allison J. Riggs (State Bar #40028)
Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942 Email:
Allison@southerncoalition.org
jeff@southerncoalition.org

/s/ *George P. Varghese*

George P. Varghese (Pa. Bar No. 94329)
Stephanie Lin (MA Bar No. 690909)
Rebecca Lee (DC Bar No. 229651)

24

Richard A. Ingram (DC Bar No. 1657532)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000 Email:
george.varghese@wilmerhale.com
stephanie.lin@wilmerhale.com
rebecca.lee@wilmerhale.com
richard.ingram@wilmerhale.com