IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


DEMOCRACY NORTH CAROLINA,      )
THE LEAGUE OF WOMEN VOTERS OF   )
NORTH CAROLINA, JOHN P. CLARK,  )
LELIA BENTLEY, REGINA WHITNEY   )
EDWARDS, ROBERT K. PRIDDY II,   )
SUSAN SCHAFFER, and WALTER      )
HUTCHINS,                       )
                                )
          Plaintiffs,           )
                                )
      v.                        )          1:20CV457
                                )
THE NORTH CAROLINA STATE BOARD  )
OF ELECTIONS, DAMON CIRCOSTA,   )
in his official capacity as     )
CHAIR OF THE STATE BOARD OF     )
ELECTIONS, STELLA ANDERSON, in  )
her official capacity as        )
SECRETARY OF THE STATE BOARD    )
OF ELECTIONS, STACY EGGERS IV,  )
in his official capacity as     )
MEMBER OF THE STATE BOARD OF    )
ELECTIONS, JEFF CARMON III, in  )
his official capacity as        )
MEMBER OF THE STATE BOARD OF    )
ELECTIONS, TOMMY TUCKER, in his )
official capacity as MEMBER OF  )
THE STATE BOARD OF ELECTIONS,   )
and KAREN BRINSON BELL, in her  )
official capacity as EXECUTIVE  )
DIRECTOR OF THE STATE BOARD OF  )
ELECTIONS,                      )
                                )
          Defendants,           )
                                )
      and                       )
                                )
PHILIP E. BERGER, in his        )
official capacity as            )
PRESIDENT PRO TEMPORE OF THE    )
NORTH CAROLINA SENATE, and      )

TIMOTHY K. MOORE, in his         )
official capacity as SPEAKER     )
OF THE NORTH CAROLINA HOUSE      )
OF REPRESENTATIVES,              )
                                 )
        Defendant-Intervenors.   )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court on Defendant-Intervenors Philip E. Berger and Timothy K. Moore's (together, "Legislative Defendants") Motion to Dismiss Plaintiffs' Fourth Amended Complaint, (Doc. 209), and Defendants the North Carolina State Board of Elections ("State BoE"), Damon Circosta, Stella Anderson, Stacy Eggers IV, Jeff Carmon III, Tommy Tucker, and Karen Brinson Bell's (together, "State Board Defendants") Motion to Dismiss, (Doc. 211). For the reasons that follow, this court will grant in part and deny in part the motions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs originally brought this suit in May 2020 in anticipation of the 2020 general election, alleging "North Carolina's election code impose[d] numerous restrictions" on voting "that, in light of the COVID-19 pandemic, unduly burden[ed] Plaintiffs' right to vote in violation of the First

-2-

and Fourteenth Amendments." (Compl. (Doc. 1) ¶ 3.)[1] Plaintiffs
have amended their complaint several times during this
litigation, (First Am. Compl. (Doc. 8); Second Am. Compl.
(Doc. 30); Third Am. Compl. (Doc. 192)), and have now filed a
Fourth Amended Complaint, (Fourth Am. Compl. (Doc. 208)),
challenging North Carolina's laws against requesting, marking
and completing, and delivering absentee ballots for others, and
the absence of a statutory procedure "by which voters . . .
receive notice and an opportunity to be heard regarding any
perceived material errors on their absentee ballot application
envelopes," (id. ¶ 1).

A.    **Parties**

Plaintiffs League of Women Voters of North Carolina and
Democracy North Carolina (together, "Organizational Plaintiffs")
are both nonpartisan organizations dedicated to encouraging
voting and voter education. (See id. ¶¶ 6-7.) Individual
Plaintiffs John P. Clark, Lelia Bentley, Regina Whitney Edwards,
and Robert K. Priddy II are North Carolina citizens who voted by
mail-in absentee ballot out of necessity for their health in
2020 and intend to continue voting by mail in future North

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

Carolina elections. (Id. ¶¶ 8-10.) Individual Plaintiff Walter Hutchins is a North Carolina citizen who is legally blind and lives in a nursing home. (Id. ¶ 11.) In the 2020 election, Plaintiff Hutchins "request[ed] and cast a mail-in absentee ballot with the assistance of his wife and his nursing home staff," and "[h]e intends to continue voting in North Carolina's elections, and wants his nursing home staff to continue to help him to vote even if his wife is able to also help him." (Id. ¶ 12.) Individual Plaintiff Susan Schaffer lives in North Carolina and volunteers in assisting people with registering to vote as well as completing absentee ballots. (Id. ¶ 13.)

Defendant State BoE is the executive agency responsible for administering election laws in North Carolina. (Id. ¶ 14.) State Board Defendants are all associated with the State BoE. (Id. ¶¶ 15-20.) Defendant-Intervenor Philip E. Berger is the President Pro Tempore of the North Carolina Senate, and Defendant-Intervenor Timothy K. Moore is the Speaker of the North Carolina House of Representatives. (Id. ¶¶ 21-22.)

B.   **Changes to North Carolina Absentee Ballot Voting**

Since 2001, "North Carolina law has permitted all eligible citizens to vote by mail in all federal and state elections." (Id. ¶ 23.) In November 2019, the North Carolina General Assembly enacted Senate Bill 683, An Act to Amend the Laws

Governing Mail-In Absentee Ballots ("S.B. 683"). (Id. ¶ 24.) "SB 683 imposes restrictions on who can assist voters with completing mail-in absentee ballot request forms. . . . There are also restrictions on who may help return a completed absentee ballot request." (Id. ¶¶ 24-25.) Plaintiffs allege "SB 683 has effectively banned organizations like the Organizational Plaintiffs and individuals like Plaintiff Schaffer from assisting voters with requesting absentee ballots." (Id. ¶ 27.)

C. **House Bill 1169**

On June 11, 2020, the North Carolina General Assembly passed House Bill 1169, An Act to Make Various Changes to the Laws Related to Elections and to Appropriate Funds to the State Board of Elections in Response to the Coronavirus Pandemic ("H.B. 1169"), signed into law on June 12, 2020, by Governor Roy Cooper, which amended several of North Carolina's election laws in response to the COVID-19 pandemic. 2020 N.C. Sess. Laws 2020-17 (H.B. 1169). Relevant to this lawsuit, H.B. 1169 amended several provisions relating to witness requirements, poll workers, and multipartisan assistance teams ("MATs"). H.B. 1169 added a provision allowing for MATs to assist registered voters in "hospitals, clinics, nursing homes, assisted living or other congregate living situations . . . ." Id. § 2.(b). H.B. 1169 also expanded voters' ability to request absentee ballots by

-5-

making it possible for voters to request absentee ballots online. Id. § 7.(a).

D.    **Laws at Issue**

Plaintiffs challenge several of North Carolina's voting and election laws. Specifically, Plaintiffs challenge N.C. Gen. Stat. §§ 163-230.2, (Fourth Am. Compl. (Doc. 208) ¶¶ 39-40), 163-226.3(a)(1), (4)-(6) and 163-231(b)(1), (id. ¶¶ 59-60), and the absence of a statutory process for curing defective absentee request forms and ballots, (id. ¶¶ 41-54).

1.    **Absentee Ballot Requests**

Plaintiffs challenge several restrictions on how a voter may request an absentee ballot. First, Plaintiffs seek to enjoin restrictions placed on who may assist a voter in filling out and returning an absentee ballot request and how they may assist a voter in doing so (the "Request Assistance Ban").

N.C. Gen. Stat. § 163-230.2(e)(2), (4) restricts who can assist in requesting an absentee ballot and how an absentee ballot request may be returned:

> (e) Invalid Types of Written Requests.--If a county board of elections receives a request for absentee ballots that does not comply with this subsection or subsection (a) of this section, the board shall not issue an application and ballots under [N.C. Gen. Stat.] 163-230.1. A request for absentee ballots is not valid if any of the following apply:
>
>          . . . .

-6-

> > (2) The completed written request is completed,
> >     partially or in whole, or signed by anyone
> >     other than the voter, or the voter's near
> >     relative or verifiable legal guardian. A
> >     member of a multipartisan team trained and
> >     authorized by the county board of elections
> >     pursuant to [N.C. Gen. Stat.] 163-226.3 may
> >     assist in completion of the request.
>
> > . . . .
>
> > (4) The completed written request is returned to
> >     the county board by someone other than a
> >     person listed in subsection (c) of this
> >     section,[2] the United States Postal Service,
> >     or a designated delivery service authorized
> >     pursuant to 26 U.S.C. § 7502(f)(2).

This law has been in effect since January 1, 2020. 2019 N.C.

Sess. Laws 2019-239 (S.B. 683) § 1.3(a).

H.B. 1169 also provides that a MAT may "assist any voter in

the completion of a request form for absentee ballots or in

delivering a completed request form for absentee ballots to the

---

[2] Subsection (c) provides:

(c) Return of Request.--The completed request form for
absentee ballots shall be delivered to the county
board of elections only by any of the following:

> (1) The voter.

> (2) The voter's near relative or verifiable legal
>     guardian.

> (3) A member of a multipartisan team trained and
>     authorized by the county board of elections
>     pursuant to [N.C. Gen. Stat.] 163-226.3.

N.C. Gen. Stat. § 163-230.2(c).

-7-

county board of elections and may serve as a witness for the casting of absentee ballots." 2020 N.C. Sess. Laws 2020-17 (H.B. 1169) § 1.(c).

N.C. Gen. Stat. § 163-230.2(e1) governs who may assist a voter who needs assistance "completing the written request form due to blindness, disability, or inability to read or write and there is not a near relative or legal guardian available to assist that voter."

### 2. <u>Absentee Ballots</u>

Plaintiffs also seek to enjoin several laws relating to the marking, completing, and delivering of absentee ballots themselves. Plaintiffs seek to enjoin Section 163-226.3(a)(1), (4)-(6), which makes the following acts unlawful:

> (1) For any person except the voter's near relative or the voter's verifiable legal guardian to assist the voter to vote an absentee ballot when the voter is voting an absentee ballot other than under the procedure described in [N.C. Gen. Stat.] 163-227.2, 163-227.5, and 163-227.6; provided that if there is not a near relative or legal guardian available to assist the voter, the voter may request some other person to give assistance
>
> . . . .
>
> (4) For any owner, manager, director, employee, or other person, other than the voter's near relative or verifiable legal guardian, to (i) make a written request pursuant to [N.C. Gen. Stat.] 163-230.1 or (ii) sign an application or certificate as a witness, on behalf of a registered voter, who is a patient in any hospital, clinic, nursing home or rest home in this State or for any owner, manager,

-8-

director, employee, or other person other than the voter's near relative or verifiable legal guardian, to mark the voter's absentee ballot or assist such a voter in marking an absentee ballot. This subdivision does not apply to members, employees, or volunteers of the county board of elections, if those members, employees, or volunteers are working as part of a multipartisan team trained and authorized by the county board of elections to assist voters with absentee ballots. Each county board of elections shall train and authorize such teams, pursuant to procedures which shall be adopted by the State Board of Elections. If neither the voter's near relative nor a verifiable legal guardian is available to assist the voter, and a multipartisan team is not available to assist the voter within seven calendar days of a telephonic request to the county board of elections, the voter may obtain such assistance from any person other than (i) an owner, manager, director, employee of the hospital, clinic, nursing home, or rest home in which the voter is a patient or resident; (ii) an individual who holds any elective office under the United States, this State, or any political subdivision of this State; (iii) an individual who is a candidate for nomination or election to such office; or (iv) an individual who holds any office in a State, congressional district, county, or precinct political party or organization, or who is a campaign manager or treasurer for any candidate or political party; provided that a delegate to a convention shall not be considered a party office. None of the persons listed in (i) through (iv) of this subdivision may sign the application or certificate as a witness for the patient.

(5) For any person to take into that person's possession for delivery to a voter or for return to a county board of elections the absentee ballot of any voter, provided, however, that this prohibition shall not apply to a voter's near relative or the voter's verifiable legal guardian.

(6) Except as provided in subsections (1), (2), (3) and (4) of this section, [N.C. Gen. Stat.] 163-231(a), and [N.C. Gen. Stat.] 163-227.2(e), for

-9-

> any voter to permit another person to assist the
> voter in marking that voter's absentee ballot, to
> be in the voter's presence when a voter votes an
> absentee ballot, or to observe the voter mark that
> voter's absentee ballot.

This law has been in force since 1979, 1979 N.C. Sess. Laws Ch. 799 (S.B. 519) § 4, https://www.ncleg.gov/enactedlegislation/sessionlaws/pdf/1979-1980/sl1979-799.pdf (last visited Mar. 4, 2022), and in its current form since 2013, 2013 N.C. Sess. Laws 2013-381 (H.B. 589) § 4.6.(a).

Plaintiffs further seek to enjoin Section 163-231(b)(1), which restricts who may transmit completed absentee ballots to the county boards of election (the "Ballot Delivery Restriction"). It reads:

> (b) Transmitting Executed Absentee Ballots to County
> Board of Elections.--The sealed container-return
> envelope in which executed absentee ballots have been
> placed shall be transmitted to the county board of
> elections who issued those ballots as follows:
>
> > (1) All ballots issued under the provisions of
> > this Article and Article 21A of this Chapter
> > shall be transmitted by mail or by commercial
> > courier service, at the voter's expense, or
> > delivered in person, or by the voter's near
> > relative or verifiable legal guardian and
> > received by the county board not later than
> > 5:00 p.m. on the day of the statewide primary
> > or general election or county bond election.
> > Ballots issued under the provisions of Article
> > 21A of this Chapter may also be electronically
> > transmitted.

N.C. Gen. Stat. § 163-231(b)(1). Subsection (b)(1) has been in force since 1967, 1967 N.C. Sess. Laws Ch. 775 (H.B. 146),

-10-

https://www.ncleg.gov/enactedlegislation/sessionlaws/pdf/1967-1968/sl1967-775.pdf (last visited March 4, 2022), and in its current form since 2013, 2013 N.C. Sess. Laws 2013-381 (H.B. 589) § 4.4.

### 3. <u>Cure Procedure</u>

After this court's preliminary injunction order, the BoE published "several numbered memos that provided voters who had submitted mail-in absentee ballots notice of certain defects and, in some instances, the opportunity to cure these defects with an affidavit for the 2020 general election." (<u>See</u> Fourth Am. Compl. (Doc. 208) ¶ 33.) On June 11, 2021, the BoE published Numbered Memo 2021-03 "to provide a similar cure procedure in future elections." (<u>Id.</u> ¶ 34.)

### E. <u>Procedural History</u>

Plaintiffs filed their original Complaint on May 22, 2020, (Compl. (Doc. 1)), and their First Amended Complaint on June 5, 2020, (First Am. Compl. (Doc. 8)). Also, on June 5, 2020, Plaintiffs filed a motion for a preliminary injunction, (Doc. 9), seeking to enjoin several North Carolina voting and election laws.

On June 10, 2020, Legislative Defendants moved to intervene in this case to oppose Plaintiffs' suit and to represent the

interests of the North Carolina General Assembly. (Docs. 16, 17.) This court granted the motion to intervene. (Doc. 26.)

Following the passage of H.B. 1169, Plaintiffs filed a Second Amended Complaint, (Second Am. Compl. (Doc. 30)), and an amended motion for a preliminary injunction, (Doc. 31). This court held an evidentiary hearing and oral argument from July 20 through July 22, 2020. This court granted in part and denied in part the preliminary injunction motion. (Doc. 124.)

Plaintiffs filed their Third Amended Complaint on March 18, 2021, (Third Am. Compl. (Doc. 192)), and their Fourth Amended Complaint on July 8, 2021, (Fourth Am. Compl. (Doc. 208)). Legislative Defendants moved to dismiss the Fourth Amended Complaint, (Doc. 209), and filed a brief in support of their motion, (Br. in Supp. of Legislative Defs.' Mot. to Dismiss Pls.' Fourth Am. Compl. ("Leg. Defs.' Br.") (Doc. 210)). State Board Defendants also moved to dismiss the Fourth Amended Complaint, (Doc. 211), and filed a brief in support, (Mem. of Law in Supp. of State Board Defs.' Mot. to Dismiss ("State Board Defs.' Br.") (Doc. 212)). Plaintiffs filed a consolidated response brief to both motions, (Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss ("Pls.' Resp.") (Doc. 216)), and Legislative Defendants and State Board Defendants replied, (Reply Br. in Supp. of Legislative Defs.' Mot. to Dismiss Pls.'

-12-

Fourth Am. Compl. (Doc. 218); Reply in Supp. of State Board
Defs.' Mot. to Dismiss (Doc. 219)).

## II. <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 570 (2007)). To be facially plausible, a claim
must "plead[] factual content that allows the court to draw the
reasonable inference that the defendant is liable" and must
demonstrate "more than a sheer possibility that a defendant has
acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556–57).
When ruling on a motion to dismiss, a court must accept the
complaint's factual allegations as true. <u>Id.</u> Further, the
complaint and facts alleged therein are viewed "in the light
most favorable to the plaintiff." <u>Burgess v. Goldstein</u>, 997 F.3d
541, 562-63 (4th Cir. 2021) (citation omitted).

Nevertheless, the factual allegations must be sufficient to
"raise a right to relief above the speculative level" so as to
"nudge[] the[] claims across the line from conceivable to
plausible." <u>Twombly</u>, 550 U.S. at 555, 570; <u>see also</u> <u>Iqbal</u>, 556
U.S. at 680. A court cannot "ignore a clear failure in the
pleadings to allege any facts which set forth a claim." <u>Estate</u>

-13-

of <u>Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). Consequently, even given the deferential standard allocated to the pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." <u>Iqbal</u>, 556 U.S. at 678.

## III. <u>ANALYSIS</u>

Plaintiffs' Fourth Amended Complaint alleges three claims: a First Amendment claim, a Fourteenth Amendment Due Process claim, and a Voting Rights Act ("VRA") Section 208 claim. (Fourth Am. Compl. (Doc. 208) ¶¶ 37-62.) Defendants challenge Plaintiffs' standing to seek a permanent injunction regarding their due process claim and VRA claim. (Leg. Defs.' Br. (Doc. 210) at 17-23; State Board Defs.' Br. (Doc. 212) at 17, 19.) Defendants also argue Plaintiffs' due process claim is moot, and in the alternative challenge the ripeness of that claim. (Leg. Defs.' Br. (Doc. 210) at 14-17; State Board Defs.' Br. (Doc. 212) at 14-16.) Defendants also attack Plaintiffs' Fourth Amended Complaint on the merits. (Leg. Defs.' Br. (Doc. 210) at 23-32; State Board Defs.' Br. (Doc. 212) at 9-14, 17-19.)

-14-

## A.  First Amendment Claim (Count One)

Plaintiffs allege North Carolina's Request Assistance Ban, N.C. Gen. Stat. § 163-230.2, violates Plaintiff's First and Fourteenth Amendment rights. (Fourth Am. Compl. (Doc. 208) ¶¶ 37-40.) Section 163-230.2 limits who may request an absentee ballot on behalf of a voter, assist a voter in making such a request, and deliver such a request on behalf of a voter. N.C. Gen. Stat. § 163-230.2. It provides that only a voter, a voter's near relative or legal guardian, or a MAT may submit an absentee ballot request on a voter's behalf. (Fourth Am. Compl. (Doc. 208) ¶¶ 25-26.) Plaintiffs argue the Request Assistance Ban burdens "Plaintiffs' efforts to encourage voter participation" which "is core to [Plaintiffs'] fundamental missions." (Pls.' Resp. (Doc. 216) at 14-15; accord Fourth Am. Compl. (Doc. 208) ¶ 39.)

The parties disagree over whether Plaintiffs' proposed actions are expressive conduct implicating the First Amendment. Defendants argue the "Request Assistance Ban does not touch on protected speech or association, and even if it impacted some speech, it would easily withstand scrutiny." (Leg. Defs.' Br. (Doc. 210) at 24; see also State Board Defs.' Br. (Doc. 212) at 9-11.) In response, Plaintiffs contend that encouraging voter

-15-

participation is expressive activity. (<u>See</u> Pls.' Resp. (Doc. 216) at 16.)

Although the "First Amendment literally forbids the abridgment only of 'speech,'" the Supreme Court "ha[s] long recognized that its protection does not end at the spoken or written word." <u>Texas v. Johnson</u>, 491 U.S. 397, 404 (1989). "[C]onduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[].'" <u>Id.</u> (quoting <u>Spence v. Washington</u>, 418 U.S. 405, 409 (1974)). As the Supreme Court has noted, however, this court "cannot accept the view that an apparently limitless variety of conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." <u>Spence</u>, 418 U.S. at 409 (internal alterations and quotation marks omitted) (quoting <u>United States v. O'Brien</u>, 391 U.S. 367, 376 (1968)).

To determine whether conduct is sufficiently communicative to implicate the First Amendment, the court must determine "[1] whether [a]n intent to convey a particularized message was present, and [2] whether the likelihood was great that the message would be understood by those who viewed it." <u>Johnson</u>, 491 U.S. at 404 (internal quotation marks omitted) (quoting <u>Spence</u>, 418 U.S. at 410–11). Such conduct has included the wearing of black armbands to protest the Vietnam war, <u>Tinker v.</u>

-16-

Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503 (1969), and
donating money to political campaigns, Buckley v. Valeo, 424
U.S. 1 (1976). Other courts have held that a person or
organization's "public endeavors to assist people with voter
registration are intended to convey a message that voting is
important, that the Plaintiffs believe in civic participation,
and that the Plaintiffs are willing to expend the resources to
broaden the electorate to include allegedly under-served
communities," and thus is expressive conduct which implicates
the First Amendment. Am. Ass'n of People with Disabilities v.
Herrera, 690 F. Supp. 2d 1183, 1215-16 (D.N.M. 2010), recons. on
separate grounds, No. CIV 08-0702 JB/WDS, 2010 WL 3834049
(D.N.M. July 28, 2010); see also Voting for Am., Inc. v. Steen,
732 F.3d 382, 389 (5th Cir. 2013) ("The state does not deny that
some voter registration activities involve speech—'urging'
citizens to register; 'distributing' voter registration forms;
'helping' voters to fill out their forms . . . ." (emphasis
added)); Tenn. State Conf. of NAACP v. Hargett, 420 F. Supp. 3d
683, 704 (M.D. Tenn. 2019) (finding voter registration
assistance regulations must be "substantially related to
important governmental interests" to survive "exacting scrutiny"
(internal quotation marks omitted) (quoting Buckley v. Am.
Constitutional L. Found., Inc., 525 U.S. 182 (1999))). Indeed,

-17-

the district court in <u>Herrera</u> found the "First Amendment protects not only the Plaintiffs' right to engage in incidental speech with prospective voters, but also their right to do so while engaging in the act of registration." <u>Herrera</u>, 690 F. Supp. 2d at 1217. Importantly, however, the <u>Herrera</u> court found that, despite implicating the First Amendment, the third-party registration law at issue was subject to the <u>Anderson</u>-<u>Burdick</u> balancing test, described <u>infra</u> Section III.A.1, rather than strict scrutiny. <u>Id.</u> at 1211–14.

Further, a district court in Michigan has dealt with a similar set of prohibitions on assisting voters in requesting, completing, and returning absentee ballots. <u>See</u> <u>Priorities USA v. Nessel</u>, 462 F. Supp. 3d 792, 810 (E.D. Mich. 2020). The laws at issue there prohibited third parties from "offering to assist voters with absentee ballot applications, [and] restrict[ed] possession of absentee ballot applications . . . ." <u>Id.</u> at 803. The court distinguished the challenged activities from "cases involving the mere administrative process or the mechanics of the electoral process," and found "little difference between discussions of whether to register to vote and discussions of whether to vote absentee." <u>Id.</u> at 812. The court rejected the argument that the plaintiffs' conduct was not expressive and held that the plaintiffs wanting to educate voters about their

-18-

options to use and request absentee ballot applications, offer to return absentee ballot applications, and return absentee ballot applications "necessarily involve[d] political communication and association," and thus strict scrutiny applied. Id.

However, several courts have found the collecting of ballots does not qualify as expressive conduct protected by the First Amendment. See Knox v. Brnovich, 907 F.3d 1167, 1181 (9th Cir. 2018) (finding the collection of absentee ballots is not expressive conduct); Feldman v. Ariz. Sec'y of State's Office, 843 F.3d 366, 392 (9th Cir. 2016) (holding that collecting ballots is not expressive conduct "[e]ven if ballot collectors intend to communicate that voting is important"); Voting for Am., 732 F.3d at 391 (collecting cases and finding the collection and delivering of voter-registration applications are not expressive conduct). But see League of Women Voters of Fla. v. Cobb, 447 F. Supp. 2d 1314, 1334 (S.D. Fla. 2006) (finding "the collection and submission of voter registration drives is intertwined with speech and association" and is thus expressive conduct protected by the First Amendment).

This court understands the logic of Priorities USA. However, this court is not persuaded at this preliminary stage that whether to register to vote and whether to vote absentee

-19-

are sufficiently similar to support the analysis in <u>Hargett</u> as held by the <u>Priorities USA</u> court. The right to vote is a fundamental matter in a free and democratic society, <u>Reynolds v. Sims</u>, 377 U.S. 533, 554–55 (1964), whereas this court has previously found there is no constitutional right to vote by absentee ballot, <u>see</u> <u>Democracy N.C. v. N.C. State Bd. of Elections</u>, 476 F. Supp. 3d 158, 226–27 (M.D.N.C. 2020).

This court declines to find, as a matter of law at this preliminary stage of the proceedings, that assisting voters in filling out a request form for an absentee ballot is expressive conduct which implicates the First Amendment as a matter of law. Relatedly, "[c]onstitutional challenges to specific provisions of a State's election laws . . . cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions. Instead, a court must resolve such a challenge by an analytical process." <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 789 (1983) (citation omitted). That analysis requires a careful balancing of "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." <u>Id.</u> This court is not

able to conduct any such balancing on the record presently before this court.[3]

Nevertheless, this court does find, in light of <u>Priorities USA</u>, that for purposes of the allegations contained in the Fourth Amended Complaint, Plaintiffs have plausibly alleged facts to support a claim that their advocacy includes assisting voters and is expressive speech under the First Amendment. Whether that is true, and whether, if true, First Amendment protection extends to assisting voters in filling out an absentee ballot and, if so, the balancing test applies are all questions more appropriately resolved at summary judgment or trial on a more complete record.

Therefore, this court will assume without deciding that assisting voters in filling out a request form for an absentee ballot is expressive conduct which implicates the First Amendment. <u>See</u> <u>Priorities USA</u>, 462 F. Supp. 3d at 812. Regarding the delivering of the absentee ballot requests, however, this court will follow the Fifth and Ninth Circuits and find that the

---

[3] This court recognizes that this analysis could be construed as contrary to this court's finding in its memorandum opinion on the motion for a preliminary injunction, <u>Democracy N.C.</u>, 476 F.3d at 224; however, that finding was made pursuant to different facts outlined in a prior, now superseded complaint, as well as evidence received during an evidentiary hearing. At this stage in the proceedings, this court is confined solely to the facts outlined in the Fourth Amended Complaint.

-21-

collecting and delivering of absentee ballot request forms is not expressive conduct and therefore does not implicate the First Amendment. This court will next examine each of these restrictions under the respective levels of scrutiny.

### 1. **Assistance in Filling Out a Ballot Request Form**

Although this court finds assisting voters in filling out ballot request forms is subject to the First Amendment, the Anderson-Burdick balancing test, see Anderson v. Celebrezze, 460 U.S. 780 (1983); Burdick v. Takushi, 504 U.S. 428 (1992), instead of strict scrutiny, likely applies.[4] See Thompson v. Dewine, 959 F.3d 804, 807-11 (6th Cir. 2020) (applying the Anderson-Burdick balancing test to Ohio's requirements for collecting signatures for ballot initiatives, which burdened the plaintiffs' First Amendment rights). But even applying the less

---

[4] The district court in Tennessee State Conference of NAACP, in the context of voter registration restrictions, observed that it is not explicitly clear that strict scrutiny applies to laws governing that activity, and compared voter registration expressive conduct to petition-drive activities, regulations of which the Supreme Court has subjected to strict scrutiny. 420 F. Supp. 3d at 701-04. The court recognized the difficulty in situating regulations of First Amendment activity in the context of voting and noted that it is "[l]eft with this sometimes bewildering array of standards to choose from," but applied the "exacting scrutiny" standard set forth in Buckley and Meyer v. Grant, 486 U.S. 414 (1988). Id. Nevertheless, the court finds the reasoning set forth in Herrera regarding what standard to apply persuasive and adopts it here. See 690 F. Supp. 2d at 1211-14.

exacting <u>Anderson</u>-<u>Burdick</u> standard, Plaintiffs have sufficiently stated a plausible First Amendment claim. The Fourth Circuit summarized the <u>Anderson</u>-<u>Burdick</u> framework as follows:

> In short, election laws are usually, but not always, subject to ad hoc balancing. When facing any constitutional challenge to a state's election laws, a court must first determine whether protected rights are severely burdened. If so, strict scrutiny applies. If not, the court must balance the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's interests in ensuring that "order, rather than chaos, is to accompany the democratic processes."

<u>Fusaro v. Cogan</u>, 930 F.3d 241, 257–58 (4th Cir. 2019) (quoting <u>McLaughlin v. N.C. Bd. of Elections</u>, 65 F.3d 1215, 1221 (4th Cir. 1995)). "Thus, while 'severe' restrictions 'must be narrowly drawn to advance a state interest of compelling importance,' a reasonable, nondiscriminatory restriction on voting rights is justified by a State's 'important regulatory interests.'" <u>Lee v. Va. State Bd. of Elections</u>, 843 F.3d 592, 606 (4th Cir. 2016) (quoting <u>Burdick</u>, 504 U.S. at 434). The court also notes that the Supreme Court does not "identify any litmus test for measuring the severity of a burden that a state law imposes on a political party, an individual voter, or a discrete class of voters." <u>Crawford v. Marion Cnty. Election Bd.</u>, 553 U.S. 181, 191 (2008). But, "[h]owever slight that burden may appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the

-23-

limitation.'" Id. (quoting Norman v. Reed, 502 U.S. 279, 288-89 (1992)).

Plaintiffs allege they are significantly burdened by North Carolina's absentee ballot statutes. Specifically, Plaintiffs allege that "[t]he restrictions . . . effectively prohibit the Organizational Plaintiffs and their members from engaging in core political speech and expressive conduct." (Fourth Am. Compl. (Doc. 208) ¶ 39.) Because of the restrictions, Organizational Plaintiffs are "limited in [their] work to assist voters . . . [which] is central to [their] core mission." (Id.) Plaintiffs allege they are no longer "able to effectively facilitate those eligible voters requesting absentee ballots." (Id.)

Plaintiffs maintain that the restrictions on assisting voters in requesting an absentee ballot are insufficiently tailored to address North Carolina's interest in combatting election fraud. (Id. ¶ 40.) Plaintiffs point out that "other protections are in place in North Carolina's administration of elections and processing of absentee ballots to prevent mail-in voter and election fraud." (Id.) Like this case, in Priorities USA, the plaintiffs argued "that Michigan has robust laws protecting absentee voting and also 'retains an arsenal of safeguards' to prevent voting fraud." 462 F. Supp. 3d at 814

-24-

(quoting Buckley, 525 U.S. at 204) (finding the plaintiffs sufficiently stated a plausible First Amendment claim where other avenues for addressing voter fraud existed in Michigan). The court thus found the plaintiffs had stated a plausible First Amendment claim. Id. at 815. Although Defendants argue that North Carolina "has a compelling interest in combating election fraud, especially given its recent history of ballot harvesting," (Leg. Defs.' Br. (Doc. 210) at 27; State Board Defs.' Br. (Doc. 212) at 13), at the motion to dismiss stage, this court accepts the complaint's factual allegations as true, Iqbal, 556 U.S. at 662. Because the burden on speech is "not justified" in light of the other protections already in place to protect against voter fraud in North Carolina, (Fourth Am. Compl. (Doc. 208) ¶ 40), this court finds Plaintiffs have sufficiently stated a plausible First Amendment claim.

### 2. Delivering Absentee Ballot Requests

Because delivering absentee ballot requests is not expressive conduct, it is subject only to rational basis review. See Johnson v. Robison, 415 U.S. 361, 375 n.14 (1974) (holding that since the challenged law did not infringe the appellee's First Amendment rights there was "no occasion to apply . . . a standard of scrutiny stricter than the traditional rational-basis test."); Voting for Am., 732 F.3d at 392 ("Because the

-25-

Non-Resident and County provisions regulate conduct only and do not implicate the First Amendment, rational basis scrutiny is appropriate.").

Rational basis review requires that legislative action, "[a]t a minimum, . . . be rationally related to a legitimate governmental purpose." Clark v. Jeter, 486 U.S. 456, 461 (1988). There is a "strong presumption of validity" when examining a statute under rational basis review, and the burden is on the party challenging the validity of the legislative action to establish that the statute is unconstitutional. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314–15 (1993). The party defending the constitutionality of the action need not introduce evidence or prove the actual motivation behind passage but need only demonstrate that there is some legitimate justification that could have motivated the action. See id. at 315.

Here, Defendants argue that the limitations on who may deliver absentee ballot requests "is a rational means of promoting the government's legitimate interest in combating election fraud." (Leg. Defs.' Br. (Doc. 210) at 26–27; see also State Board Defs.' Br. (Doc. 212) at 13–14.) On the other hand, Plaintiffs have alleged that "restrictions on who can assist voters with completing and submitting absentee ballot requests are not justified by a state interest in preventing voter fraud,

-26-

especially where other protections are in place in North
Carolina's administration of elections and processing of
absentee ballots to prevent mail-in voter and election fraud."
(Fourth Am. Compl. (Doc. 208) ¶ 40.) Taking the allegations in
the Fourth Amended Complaint as true, North Carolina's interest
in combatting election fraud has not been demonstrated as an
acceptable justification in the face of other protections
already in place based upon the facts alleged in the Fourth
Amended Complaint. Because, according to the allegations in the
Fourth Amended Complaint, North Carolina's restrictions on
delivering absentee ballot requests are not justified by the
threat of election fraud, this court finds Plaintiffs have
plausibly alleged facts tending to show that the limitations on
who can deliver an absentee ballot request violate Plaintiffs'
First and Fourteenth Amendment rights. Accordingly, this court
will deny Defendants' motions to dismiss as to Count One.

  **B.**  <u>**Procedural Due Process Claim (Count Two)**</u>

  Defendants contend that Plaintiffs' procedural due process
claim is moot, not ripe, and that Plaintiffs lack standing.
Because this court finds that Plaintiffs' procedural due process
claim is not ripe, this court will address ripeness first, and
decline to make further findings on mootness and standing.

Defendants argue Plaintiffs' procedural due process claim "is not ripe because it is 'wholly speculative.'" (Leg. Defs.' Br. (Doc. 210) at 15 (quoting Doe v. Va. Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013)); accord State Board Defs.' Br. (Doc. 212) at 15.) Defendants contend that because there is a cure procedure in place, any harm is speculative and hypothetical. (Leg. Defs.' Br. (Doc. 210) at 17; State Board Defs.' Br. (Doc. 212) at 15–16.)

"[R]ipeness derives from Article III," and "addresses 'the appropriate timing of judicial intervention.'" Deal v. Mercer Cnty. Bd. of Educ., 911 F.3d 183, 190 (4th Cir. 2018) (quoting Cooksey v. Futrell, 721 F.3d 226, 240 (4th Cir. 2013)). In reviewing a ripeness challenge, the court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Id. at 191 (internal quotation marks omitted) (quoting Cooksey, 721 F.3d at 240).

"A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Doe, 713 F.3d at 758 (internal quotation marks omitted) (quoting Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006)). Thus, "[a] claim should be dismissed as unripe if the plaintiff has not yet suffered injury

-28-

and any future impact 'remains wholly speculative.'" <u>Id.</u> (quoting <u>Gasner v. Bd. of Supervisors</u>, 103 F.3d 351, 361 (4th Cir. 1996)).

Here, Plaintiffs allege that some of the Individual Plaintiffs "intend to vote by mail-in absentee ballot in future elections and may well make errors on their absentee ballot request forms or absentee ballots and/or their certificate envelopes. The lack of a cure procedure also frustrates the core mission of [Organizational Plaintiffs] to encourage voter participation . . . . " (Fourth Am. Compl. (Doc. 208) ¶ 50.) This court finds that this claim is "based on hypothetical future harm that is certainly not impending," that is, the revocation of the cure procedure. <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 402 (2013). Plaintiffs have not alleged, for example, that Defendants are likely, as opposed to speculatively, to rescind the current cure procedure; such a proposition "remains wholly speculative" and relies upon "future

uncertainties."[5] <u>Doe</u>, 713 F.3d at 758 (internal quotation marks omitted) (quoting <u>Gasner</u>, 103 F.3d at 361).

Plaintiffs make three arguments in support of the ripeness of their procedural due process claim. First, Plaintiffs contend their claim is ripe "because there was no cure process in place when Plaintiffs first brought their due process claim," "and thus the amendments to this claim relate back to the original complaint." (Pls.' Resp. (Doc. 216) at 21, 30–31.) "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This court finds Plaintiffs amended claim does not relate back to the original claim because the amended claim arises out of different "conduct, transaction[s], or occurrence[s]." <u>Id.</u> While the original complaint alleged a lack of a cure procedure during the ongoing COVID-19 public health crisis, (Compl. (Doc. 1) ¶¶ 94–95), the Fourth Amended Complaint

_____

[5] To the extent Plaintiffs argue their due process rights are violated because of the lack of a statutory cure procedure, as opposed to the current cure procedure implemented by the BoE, this court finds that argument unavailing. The current cure procedure sufficiently protects voters' due process rights by providing notice and an opportunity to cure. (Doc. 169 at 14–18.) Thus, Plaintiffs have failed to allege a procedural due process injury under the current cure procedure.

alleges a lack of a <u>uniform</u> cure procedure, (Fourth Am. Compl.
(Doc. 208) ¶¶ 32-36), and does not allege the COVID-19 pandemic
as the reason for the need for a statutory cure procedure.[6]
Moreover, and importantly, the original complaint arose out of
the impending 2020 general election, while the Fourth Amended
Complaint is focused more generally on unspecified future
elections.

Second, Plaintiffs contend that "the current cure process
is only in place pursuant to the preliminary injunction in this
matter, [and] SBE Defendants retain the power to modify or
rescind this cure process." (Pls.' Resp. (Doc. 216) at 31.) On
June 11, 2021, the BoE published Numbered Memo 2021-03 to all
county boards of elections directing procedure county boards
must use to address deficiencies in absentee ballots. (Fourth
Am. Compl. (Doc. 208) ¶ 34.) Numbered Memo 2021-03 "provide[s] a
similar cure procedure in future elections." (<u>Id.</u>) Plaintiffs do
not allege that the BoE will likely rescind the current cure
procedure; in fact, they make no allegation regarding the

---

[6] "COVID-19" appears once in the Fourth Amended Complaint,
(Fourth Am. Compl. (Doc. 208) ¶ 8 ("Because the combination of
COPD and lung cancer made [Plaintiff Clark] more vulnerable to
severe complications or even death from COVID-19, he by
necessity voted by absentee ballot in the November 2020 general
election.")), and "pandemic" appears once, (<u>id.</u> ¶ 11 ("In the
2020 general election, [Plaintiff Priddy] voted by mail-in
absentee ballot because of the pandemic and the health risks
posed by in-person voting.")).

likelihood of the BoE rescinding the cure procedure. (See id. ¶¶ 32-36.) Plaintiffs allege that "other than the Preliminary Injunction currently in effect, there exists no other law, rule, or order in North Carolina that would prevent the State Board from rescinding the cure process requirement going forward . . . ." (Id. ¶ 35.) However, that the BoE could rescind the cure procedure "is not certainly impending." Clapper, 568 U.S. at 402. Taking the allegations in the Fourth Amended Complaint in the light most favorable to Plaintiffs, the only reasonable inference, if any, that can be drawn is that the BoE hypothetically could rescind the cure procedure. Such speculation is not ripe for adjudication. Doe, 713 F.3d at 758. Moreover, withholding court determination at this stage poses no undue hardship to Plaintiffs. This is not a case where Plaintiffs lack adequate time to participate in the election process, thus increasing the need for a final ruling. Cf. Miller, 462 F.3d at 321 (finding plaintiffs would suffer undue hardship without a final ruling). Should the BoE rescind the cure procedure, Plaintiffs may bring suit to enforce their procedural due process rights.

Finally, Plaintiffs contend "there is no evidence in the record of any pre-existing intent to implement a uniform cure process beyond the 2020 general election." (Pl.'s Resp.

-32-

(Doc. 216) at 31.) However, along those same lines, there is no allegation in the Fourth Amended Complaint of an intent to rescind the cure procedure. Without affirmative allegations that the BoE intends to rescind the current cure procedure, the likelihood of rescission is hypothetical and speculative and therefore not ripe for adjudication. Doe, 713 F.3d at 758.

Because there is a sufficient cure procedure currently in place in North Carolina, this court finds any injury to Plaintiffs is not ripe for review.[7] Accordingly, this court will grant Defendants' motions to dismiss as to Count Two.

---

[7] The cure process covers absentee ballots but not absentee ballot requests. Plaintiffs allege that "[u]pon information and belief, a significant number of absentee ballot request forms submitted by voters in past elections have been rejected for material errors without notice or an opportunity to cure afforded to those voters." (Fourth Am. Compl. (Doc. 208) ¶ 32.) As this court noted in its Preliminary Injunction Order, "[t]he potential future rejection of an absentee ballot request is . . . entirely speculative and cannot serve as the basis for . . . a procedural due process claim, as there is no evidence to suggest the existence of an injury in fact to any Plaintiff." Democracy N.C. v. N.C. State Bd. of Elections, 476 F. Supp. 3d 158, 187 (M.D.N.C. 2020). Taking the allegations in the Fourth Amended Complaint in the light most favorable to Plaintiffs, the risk of erroneous rejection of an absentee ballot request is hypothetical. Plaintiffs make no allegation that their absentee ballot requests were rejected in the past or likely are to be rejected in the future. Without allegations akin to the allegations of the prevalence of rejected absentee ballots, (see Fourth Am. Compl. (Doc. 208) ¶ 32 ("In the March 2020 North Carolina primary, almost 15 percent of submitted absentee mail-in ballots were rejected.")), this court is unable to reasonably infer an impending injury to Plaintiffs. Therefore, this court finds Plaintiffs' due process claim as to absentee ballot requests is similarly not ripe for review.

-33-

C.    **Section 208 Claim (Count Three)**

  1.    **Standing**

Defendants argue Plaintiff Hutchins lacks standing to bring a Section 208 claim. (Leg. Defs.' Br. (Doc. 210) at 22-23; State Board Defs.' Br. (Doc. 212) at 19.)[8]

To establish standing, Plaintiff Hutchins must show (1) that he has suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). And he must do so for each challenged statutory provision. CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that courts have an "'independent obligation' . . . to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute" (quoting FW/FBS, Inc. v. City of Dall., 493 U.S. 215, 231 (1990)). In the voting context, "voters who allege facts showing disadvantage to themselves as individuals have

_____

[8] As noted by Defendants, Organizational Plaintiffs "do not allege they have members who" qualify for assistance in voting under Section 208, and no other Individual Plaintiffs allege they qualify for such assistance. (Leg. Defs.' Br. (Doc. 210) at 21.) Plaintiffs frame their response around Plaintiffs Hutchins' Section 208 right, and this court will do the same. Accordingly, this court finds only Plaintiff Hutchins' standing is relevant as to the Section 208 claim.

-34-

standing to sue," <u>Baker v. Carr</u>, 369 U.S. 186, 206 (1962), so
long as their claimed injuries are "distinct from a 'generally
available grievance about the government,'" <u>Gill v. Whitford</u>,
138 S. Ct. 1916, 1923 (2018) (quoting <u>Lance v. Coffman</u>, 549 U.S.
437, 439 (2007) (per curiam)).

This court finds Plaintiff Hutchins, as a person covered by
Section 208, has standing, given the conflict between Section
208 and the North Carolina laws concerning who may assist
Hutchins in requesting, marking and completing, and returning
his absentee ballot, thus directly implicating his rights under
Section 208. This is a live controversy currently redressable by
this court. <u>See</u> <u>OCA-Greater Hous. v. Texas</u>, 867 F.3d 604, 610-14
(5th Cir. 2017) (finding plaintiffs had standing to challenge
the Texas interpreter assistance law under Section 208); <u>Ark.</u>
<u>United v. Thurston</u>, 517 F. Supp. 3d 777, 793-94 (W.D. Ark. 2021)
(finding plaintiffs had standing to challenge Arkansas law
governing voter assistance under Section 208); <u>Fla. State Conf.</u>
<u>of NAACP v. Lee Nat'l Republican Senatorial Comm.</u>, Case No.:
4:21cv187-MW/MAF, 2021 WL 4818913, at *5-12 (N.D. Fla. Oct. 8,
2021); <u>Priorities USA</u>, 462 F. Supp. 3d at 815-16 (addressing the
merits of plaintiffs' claim that Section 208 preempted
Michigan's absentee ballot assistance restrictions). Plaintiff
Hutchins alleges that he "intends to continue voting in North

Carolina's elections, and wants his nursing home staff to
continue to help him to vote even if his wife is able to also
help him." (Fourth Am. Compl. (Doc. 208) ¶ 12.) He further
alleges that he "is harmed by these restrictions on assistance
with absentee ballot request, marking and completion, and
absentee ballot submission, and the corresponding lack of any
disability-based exceptions." (Id. ¶ 61.) Because North
Carolina's absentee ballot laws prevent Plaintiff Hutchins from
choosing nursing home staff to assist him in voting, Plaintiff
Hutchins sufficiently alleges standing.

　　　Legislative Defendants argue that Plaintiff Hutchins
suffers no impending injury because "he nowhere alleges that he
would use [nursing home] staff help over his wife's." (Leg.
Defs.' Br. (Doc. 210) at 23.) Similarly, State Board Defendants
argue that "[b]ecause Mr. Hutchins has the ability to seek the
assistance of his wife, who he previously indicated was his
preferred choice, Plaintiff has not experienced an actual injury
sufficient to confer standing." (State Board Defs.' Br.
(Doc. 212) at 19.) But Section 208's unambiguous language does
not limit Plaintiff Hutchins from using more than one person's
help or changing his mind about who he would like to help him
vote. This court thus finds Plaintiff Hutchins has standing to
challenge North Carolina's absentee ballot laws, N.C. Gen. Stat.

§§ 163-226.3(a)(1), (4)-(6), 163-230.2, 163-231(b)(1), under the Voting Rights Act.

## 2. **Merits**

Under Section 208 of the Voting Rights Act, "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write [("208-voters")] may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

> The terms "vote" or "voting" shall include all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

Id. § 10310(c)(1).

This court is also mindful that the legislative history for what would become Section 208 reads, "State provisions would be preempted only to the extent that they unduly burden the right recognized in this section, with that determination being a practical one dependent upon facts." S. Rep. No. 97-417, at *63 (1982), as reprinted in 1982 U.S.C.C.A.N. 177, 241. However, a 208-voter's choice is not unlimited. See Ray v. Texas, Civil Action No. 2-06-CV-385 (TJW), 2008 WL 3457021, at *7 (E.D. Tex.

-37-

Aug. 7, 2008) ("The language of Section 208 allows the voter to choose a person who will assist the voter, but it does not grant the voter the right to make that choice without limitation.").

Plaintiff Hutchins contends Defendants are violating Section 208 by preventing him from selecting his assistor of choice who is not his employer or union representative to assist him in requesting, marking, completing, or submitting his absentee ballot. (Pls.' Resp. (Doc. 216) at 41-43; Fourth Am. Compl. (Doc. 208) ¶¶ 59-60.) In particular, Plaintiff Hutchins argues, as a voter in need of assistance in requesting, marking and completing, and delivering his absentee ballot, he is entitled to an assistor of his choice other than his employer or union representative. (Pl.'s Resp. (Doc. 216) at 42-43.) On the other hand, Legislative Defendants argue that Section 208 does not give the voter an unlimited right.[9] (Leg. Defs.' Br. (Doc. 210) at 29.)

The Fifth Circuit dealt with a similarly narrowed law in Texas, which dictated that a voter's chosen interpreter be registered to vote in the voter's county of residence. OCA-Greater Hous., 867 F.3d at 609. There, the outcome turned on the definition of "to vote" under Section 208. Texas contended that

_____

[9] State Board Defendants do not challenge Plaintiff Hutchins' Section 208 claim on the merits. (See State Board Defs.' Br. (Doc. 212) at 19-21.)

-38-

the term referred only to the literal marking of the ballot, so
the "assistance by a person of the voter's choice" did not apply
to the "supplemental interpreter right, which extends beyond the
ballot box," and therefore was "beyond Section 208's coverage."
Id. at 614. The Fifth Circuit disagreed, finding the definition
of "vote" under § 10310(c)(1) resolved the dispute, because
"'[t]o vote,' therefore, plainly contemplates more than the
mechanical act of filling out the ballot sheet. It includes
steps in the voting process before entering the ballot box,
'registration,' and it includes steps in the voting process
after leaving the ballot box, 'having such ballot counted
properly.'" Id. at 614-15. The Fifth Circuit held that Texas's
limitation on voter choice "impermissibly narrows the right
guaranteed by Section 208 of the VRA." Id. at 615.

    This court finds, as an initial matter, voting using an
absentee ballot constitutes "voting" under the VRA, which
defines "vote" or "voting" as including "all action necessary to
make a vote effective in any primary, special, or general
election, including, but not limited to, registration, listing
pursuant to this chapter, or other action required by law
prerequisite to voting, casting a ballot, and having such ballot
counted properly . . . ." 52 U.S.C. § 10310(c)(1). The court
further finds that "voting" includes the delivery of an absentee

-39-

ballot to a county board of elections as an action "necessary to make a vote effective"—an absentee ballot must be delivered in order to be counted.

Regarding the requesting and the marking and completing of absentee ballots, Plaintiff Hutchins alleges that North Carolina essentially <u>does not</u> allow him to choose the person who will assist him. (Fourth Am. Compl. (Doc. 208) ¶¶ 12, 59-61.) The Request Assistance Ban, N.C. Gen. Stat. § 163-230.2(e)(2), restricts who may request an absentee ballot for a voter to the voter's near relative, verifiable legal guardian, or a member of a MAT. The Request Assistance Ban also impermissibly restricts who may assist 208-voters who are patients "in any hospital, clinic, nursing home or rest home" by prohibiting anyone but a voter's near relative, legal guardian, or a member of a MAT, "to mark the voter's absentee ballot or assist such a voter in marking an absentee ballot." Section 163-226.3(a)(4) thus constricts who may assist a 208-voter: it provides that if neither a near relative nor a legal guardian nor a MAT is available to assist the voter within seven days of a request to the county board of elections, a voter may receive assistance from another constricted list of people, not including

> (i) an owner, manager, director, employee of the hospital, clinic, nursing home, or rest home in which the voter is a patient or resident; (ii) an individual who holds any elective office under the United States,

-40-

> this State, or any political subdivision of this
> State; (iii) an individual who is a candidate for
> nomination or election to such office; or (iv) an
> individual who holds any office in a State,
> congressional district, county, or precinct political
> party or organization, or who is a campaign manager or
> treasurer for any candidate or political party;
> provided that a delegate to a convention shall not be
> considered a party office.

208-voters must rely on either a near relative, a legal guardian, or a MAT if they are available before they may choose any other person to assist them.

Here, Plaintiff Hutchins has alleged that he wants the assistance of his nursing home staff, (Fourth Am. Compl. (Doc. 208) ¶ 12), but North Carolina does not allow his nursing home staff to assist, (id. ¶¶ 59–60). Because Plaintiff Hutchins has alleged that the "person of [his] choice," 52 U.S.C. § 10508, cannot assist him under North Carolina's statute, Plaintiff has sufficiently alleged a plausible claim that North Carolina's absentee ballot voting laws violate Section 208.[10]

---

[10] While these assertions may not be sufficient, without more, to create a genuine dispute of material fact at summary judgment, they are adequate to satisfy the Rule 12(b)(6) pleading standard and state a plausible claim. Indeed, "[t]he language of the [2008] Senate Report suggests that some legislation on the topic of voter assistance is permissible." Ark. United, 517 F. Supp. 3d at 796. However, "[g]iven the Committee's admonishment that the inquiry of whether a state provision unduly burdens the right to have the assistance of a person of the voter's choice is 'a practical one dependent upon the facts,' the Court finds it inappropriate at this juncture to take up whether the state laws challenged here impermissibly conflict with Section 208." Id.

-41-

Plaintiff Hutchins also challenges Sections 163-231(b)(1) and 163-226.3(a)(5), (Fourth Am. Compl. (Doc. 208) ¶ 60), both of which concern the transmission of an absentee ballot for delivery to a county board of elections. Section 163-231(b)(1) dictates that ballots can only be transmitted to the county board of elections by mail or commercial courier service, by the voter, by the voter's verifiable legal guardian, or the voter's near relative, and Section 163-226.3(a)(5) prohibits anyone but a voter's near relative or legal guardian from "tak[ing] into that person's possession for delivery to a voter or for return to a county board of elections the absentee ballot of any voter."

This court finds that Plaintiff Hutchins has sufficiently alleged that these restrictions violate "[t]he unambiguous language of the VRA." OCA-Greater Hous., 867 F.3d at 614. In this case, Plaintiff Hutchins alleges he is a 208-voter who has been denied the person of his choice—nursing home staff—to assist him in the absentee ballot voting process. (Fourth Am. Compl. (Doc. 208) ¶ 12, 59-61.) Because "[t]he standard applicable to a motion to dismiss is a generous one that assumes all facts pleaded are true and makes reasonable inferences in [the plaintiff's] favor," Ark. United, 517 F. Supp. 3d at 796, this court finds Plaintiff Hutchins has pled sufficient facts to

-42-

allow this court to make the reasonable inference that the North Carolina statutes may unduly burden Plaintiff Hutchins because he is prevented from selecting his preferred voter assistor, (Fourth Am. Compl. (Doc. 208) ¶¶ 12, 59–61). As set forth supra note 10, while this court has doubts about the sufficiency of this allegation to create a genuine dispute of material fact to survive summary judgment, at this preliminary stage in the proceedings this court finds Plaintiff has sufficiently pled facts that create a plausible claim under Section 208 of the VRA.

This court does not dispute that the state of the COVID-19 pandemic has changed since August 2020. Nursing homes are not under the same lockdowns as they were then, and vaccines are readily available. But Section 208 does not apply only in a pandemic, and indeed, none of Plaintiff Hutchins' allegations concerning his Section 208 claim hinge on the presence of COVID-19. Instead, Plaintiff Hutchins alleges he wants the assistance of his nursing home staff—even if his wife can help him too—in voting in future elections. (Fourth Am. Compl. (Doc. 208) ¶ 12.) Because Plaintiff Hutchins has alleged facts tending to show that North Carolina's laws conflict with Section 208, Plaintiff Hutchins has sufficiently pled a plausible claim for relief.

-43-

Accordingly, this court will deny Defendants' motions to dismiss Count Three.

IV.  **CONCLUSION**

For the foregoing reasons, this court will grant in part and deny in part Legislative Defendants and State Board Defendants' motions to dismiss, (Docs. 209, 211).

**IT IS THEREFORE ORDERED** that Defendants' motions to dismiss, (Docs. 209, 211), are **GRANTED** as to Count Two.

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss are **DENIED** as to Counts One and Three.

This the 10th day of March, 2022.

_____
United States District Judge